S. Ryan Patterson (State Bar No. 279474)
Adam Bialek (*pro hac vice*)
Sarah Fink (*pro hac vice*)
**WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
555 S. Flower, Ste. 2900
Los Angeles, CA 90071
Telephone: (213) 443-5100
Facsimile: (213) 443-5101
Email: ryan.patterson@wilsonelser.com
       adam.bialek@wilsonelser.com
       sarah.fink@wilsonelser.com

Attorneys for Defendants, Quizlet, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Barkley & Associates, Inc., a California Corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Quizlet, Inc., a Delaware Corporation registered in California<br><br>                    Defendants. | Case No. 2:24-cv-5964<br>Judge: Hon. Wesley L. Hsu<br>Magistrate Judge: Hon. Charles F. Eick<br><br>**MEMORANDUM OF POINTS AND AUTHROTIES IN SUPPORT OF DEFENDANT QUIZLET, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6)**<br><br>[*Filed concurrently with Notice of Motion; declarations of Sean Marrer, S. Ryan Patterson, and Sarah Fink; and Proposed Order*]<br><br>**Date:      November 1, 2024**<br>**Time:      1:30pm**<br>**Location:  Courtroom 9B** |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 6

II.     STATEMENT OF FACTS ............................................................................... 7

III.    LEGAL STANDARD FOR DISMISSAL UNDER FRCP 12(B)(6) ............... 9

IV.     ARGUMENT .................................................................................................. 10

    A.    Plaintiff Fails to Assert a Claim for Copyright Infringement Upon
         Which This Court May Grant Relief ..................................................... 11

         1.    Defendant cannot be liable for copyright infringement because
             it is protected by a safe harbor of the dmca ................................ 11

         2.    The complaint fails to properly plead a claim for copyright
             infringement ................................................................................ 14

    B.    Plaintiff Fails to Assert a Claim for Trademark Infringement Upon
         Which This Court May Grant Relief ..................................................... 17

         1.    The accused use would not cause a likelihood of confusion ....... 18

         2.    Any use of the unprotected word "barkley" was not "use" by
             defendant .................................................................................... 23

         3.    Any use of the unprotected term "barkley" is a fair use and not
             infringing ................................................................................... 24

    C.    Plaintiff Fails to Assert a Claim for Its Remaining Three Claims
         Upon Which This Court May Grant Relief ........................................... 24

         1.    Plaintiff fails to assert a claim for false designation of
             origin/unfair competition ........................................................... 25

         2.    Plaintiff fails to assert a claim for common law trademark
             infringement ............................................................................... 26

         3.    Plaintiff fails to assert a claim for unfair business practices ....... 26

V.      CONCLUSION ............................................................................................... 26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F.Supp.3d 1005, 1011 (S.D. Cal. 2017)........................................................................................................................ 19

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)............................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)................................................................ 9

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)............................... 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ........................................... 9, 14

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002) .................... 23

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) .......................... 15, 16

*Charisma Brands, LLC v. AMDL Collections, Inc.*, No. 8:19-cv-00312-JLS-KES, 2019 U.S. Dist. LEXIS 208192, at *10 (C.D. Cal. Sep. 3, 2019).......................... 24

*Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002)........................................ 17

*Entrepreneur Media v. Smith*, 279 F.3d 1135, 1152 (9th Cir. 2002) ........................ 22

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)...................... 13

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011).......... 18

*Fruit of the Loom, Inc., v. Girouard*, 994 F.2d 1359, 1362-63 (9th Cir. 1993)......... 19

*Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) .. 25

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999) 22

*Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132, 1151 (N.D. Cal. 2008) .. 12

*Jackson v. Netflix, Inc.*, 506 F.Supp.3d 1007, 1017 (C.D. Cal. 2020) ...................... 14

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F.Supp.2d 890, 897 (C.D. Cal. 2014)........................................................................................................................ 24

*Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 500 F.Supp.3d 1075, 1077 (C.D. Cal. 2020) ................................................................................................... 9

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013)..... 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

*Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017)
........................................................................................................................... 11

*Network Automation, Inc. v. Advanced Sys. Concepts,* 638 F.3d 1137, 1144 (9th Cir.
2011).................................................................................................................. 17

*Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) 19

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020)
........................................................................................................................... 13

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002).......... 24

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) ....................... 11

*Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006) ........................ 17

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012) ..... 17

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018)................................. 14

*Sid Avery & Associates, Inc. v. Pixels.com, LLC*, No. 18-cv-10232-CJC-JEMx, 2021
U.S. Dist. LEXIS 35620, at *4 (C.D. Cal. Feb. 24, 2021)................................... 12

*So. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014)........................... 25

*UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006,
1014 (9th Cir. 2013) ............................................................................................. 6

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019)............................. 13

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)...................... 26

*YZ Prods. v. Redbubble, Inc*., 545 F.Supp.3d 756, *passim* (N.D. Cal. 2021) ............ 22

**Statutes**

15 U.S.C. § 1114................................................................................... 16, 24, 25

15 U.S.C. § 1125................................................................................... 19, 23, 24

15 U.S.C. §§ 1115................................................................................................ 23

15 U.S.C. §1052................................................................................................... 18

17 U.S.C. § 107................................................................................................... 15

17 U.S.C. § 501................................................................................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

17 U.S.C. § 512 .................................................................................................. 10, 12

17 U.S.C. §§ 101-03 ............................................................................................... 14

47 U.S.C. § 230 ...................................................................................................... 25

California Business & Professions Code § 17200 .............................................. 24, 25

**Other Authorities**

S. Rep. No. 105-190, at 8 (1998) ............................................................................. 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 8, 14, 26

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In this purported copyright and trademark infringement suit, Plaintiff, Barkley & Associates ("Plaintiff"), attempts to manipulate the facts and the law to avoid a carefully crafted statute enacted by Congress to prevent exactly the kind of prosecution present in this case. Plaintiff alleges that it found its protected content on Defendant Quizlet's ("Defendant" or "Quizlet") website and wants that content removed. However, filing a lawsuit alleging infringement by Quizlet is a pointless endeavor—Quizlet, as a strict matter of law—cannot be liable for any infringement on its site if (1) the infringement was done at the direction and via the actions of a third-party; and (2) Quizlet puts in place statutory procedures designed to give content owners such as Plaintiff recourse if they detect infringement of their content. The accused content was posted at the direction and via the actions of third-parties, and Quizlet has followed the statutory procedures to the letter. Plaintiff's recourse here is to file a "takedown notice" under the Digital Millenium Copyright Act ("DMCA") with Quizlet, as it has done frequently and successfully in the past. Now, without any real hope of recovering damages, Plaintiff stopped participating in the DMCA procedure and instead filed this meritless lawsuit.

In the last decade of the 20th Century, as use of the internet was becoming widespread, Congress recognized that "[i]n the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability." S. Rep. No. 105-190, at 8 (1998). Although Congress was aware that the services provided by companies are capable of being misused to facilitate copyright infringement, it refused to permit the specter of liability to chill innovation that could also serve substantial socially beneficial functions. Congress determined that "by limiting [service providers'] liability," it would "ensure[] that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand." *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

To that end, Congress enacted Title II of the DMCA, the Online Copyright Infringement Liability Limitation Act (OCILLA), which created four safe harbors that preclude imposing monetary liability and injunctive relief on service providers for copyright infringement on their websites. *UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006, 1014 (9th Cir. 2013). Because Quizlet falls squarely into a safe harbor, it cannot be held liable for any copyright infringement that may be done at the direction and by the action of third-parties on its website. Plaintiff knows this.

The Court should recognize this lawsuit as Plaintiff's attempt to circumvent Congress' carefully crafted legal scheme by dressing up its allegations with all variations of legal theories. These allegations all boil down to allegations that cannot be maintained against Quizlet because of its protection via the safe harbor. The pled facts do not support these legal theories and, therefore, the Court should dismiss the Complaint in its entirety.

## II. STATEMENT OF FACTS

Quizlet provides online tools for memorization and study. Quizlet's services include a platform on which a suite of "study tools" is made available to students and teachers via desktop and mobile app. One of the primary tools includes digital flashcards created and/or uploaded by third-parties, predominantly students or teachers. This service is provided free on Quizlet's website.[1] Marrer Aff. at ¶ 9-10. Quizlet's service is available for any field of study, including math, literature, languages, science, social science, arts and humanity, and many more. It does not target nursing students (Plaintiff's target audience), and does not offer the type of products offered by Plaintiff.

Plaintiff "is an international nurse practitioner ("NP") continuing education company dedicated to providing…NP continuing education and certification

---

[1] Some features of the flashcard service are paid; these are not relevant to this matter. Marrer Aff. at ¶ 10.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

review/clinical update courses." *See* www.npcourses.com/about-us/. Plaintiff "specializes in creating test preparation materials for graduate nursing students studying to become certified nurse practitioners. Plaintiff creates a variety of study materials including printed study manuals, practice questions, digital study materials, recorded courses and more." Compl., ¶ 1.

At least as early as February 2020, Plaintiff began notifying Quizlet that content posted on the Quizlet website, quizlet.com, infringed Plaintiff's copyrights. Marrer Aff. at ¶ 30. The notices sent by Plaintiff were of the form required by the DMCA which provides a "takedown" procedure that copyright owners should employ when they detect content displayed online that they believe infringes their copyrights. Plaintiff has engaged in the DMCA process with Quizlet at least fifteen times between 2020 and 2023. *Id.* at 31.

Each time Quizlet received a proper and complete DMCA takedown notice from Plaintiff, Quizlet expeditiously removed the accused content from its website. *Id*. at 32. Quizlet recently reviewed each of these takedown notices and has confirmed that they were directed to URLs that corresponded to their primary solution—free flashcards—and were materials that were uploaded by third parties.[2] Marrer Aff. at ¶¶ 35-36. To the extent that the materials uploaded by third-parties infringed any Barkley content (which Quizlet does not concede), they were uploaded against the express prohibition of uploading unlicensed content that is clearly stated in Quizlet's Terms of Service. *See*, https://quizlet.com/tos.

On May 2, 2024, Plaintiff sent a demand letter to Quizlet regarding alleged copyright and trademark infringement. Fink Aff. at ¶ 4. This was the first time that Plaintiff contacted Quizlet regarding any alleged infringement outside the context of

---

[2] Since Plaintiff began submitting DMCA notices, Quizlet received only one DMCA "counternotification," from a user whose content was the subject of a DMCA notice submitted by Plaintiff in 2020. The material was not related to Plaintiff's content and could not easily have been mistaken for nursing studies; it was related to learning an indigenous language. Plaintiff's sworn DMCA notice was incorrect and improper. Marrer Aff. at ¶ 33.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

the established DMCA takedown procedure, and the first time that Plaintiff complained in any way about alleged trademark infringement. Marrer Aff. at ¶ 42. That letter demanded that Quizlet immediately take down all allegedly infringing materials and pay $240,000 to compensate it for prior infringement. Fink Aff. at ¶ 5.

On May 17, 2024, Quizlet responded to Plaintiff's letter explaining that the flashcards on its site, including the accused flashcards, are created and uploaded by third-party users, not by Quizlet. Quizlet also asserted that, under the DMCA, it cannot be liable for copyright infringement based on posts by third-parties, that at least some of the accused content may not be infringing due to the doctrine of fair use, and that Quizlet does not control or gain any financial benefit from any of the accused materials. Quizlet further asked Plaintiff why it did not engage in the DMCA process as it had done successfully in the past but received no response. Fink Aff. at ¶ 6.

Two months later, Plaintiff filed this action. Without explanation or support, Plaintiff increased its initial demand of $240,000 to over $1,000,000. Quizlet, after suggesting that Plaintiff use the statutorily prescribed takedown process, still has not received the required DMCA certification for the accused content. Quizlet repeatedly suggested that the parties engage in mediation as directed by the Court, in the hope that there could be a meeting of the minds on how quizlet.com works and how Plaintiff could use the DMCA process to remove the content from the site it believed was infringing, but Plaintiff refused. *Id*. at ¶ 8.

Quizlet moves this Court to dismiss all causes of action alleged in Plaintiff's Complaint.

## III.    LEGAL STANDARD FOR DISMISSAL UNDER FRCP 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

*Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 500 F.Supp.3d 1075, 1077 (C.D. Cal. 2020). In analyzing a motion to dismiss for failure to state a claim, the district court "must accept all material allegations in the complaint as true and construe them in light most favorable to the non-moving party." *Id.* at 1077. "However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (courts "are not about to accept as true a legal conclusion couched as a factual allegation."). Dismissal of a complaint is proper where a plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In line with the Supreme Court's ruling in *Twombly* and the 9th Circuit's interpretation thereof, this Court should grant Defendant's motion to dismiss Plaintiff's Complaint.

## IV.    ARGUMENT

The Complaint alleges five causes of action; each fails to state an actionable claim, and all should be dismissed by this Court.

As to copyright infringement, Quizlet qualifies for a safe harbor under the DMCA, and, as a strict matter of law, cannot be held liable for any injunctive relief or monetary damages for any copyright infringement committed by third-parties on its website. Plaintiff can allege no facts that changes this unavoidable conclusion. Further, Plaintiff did not provide copies of the allegedly infringed materials with the Complaint, making it impossible to analyze whether there is any basis for the claims, falling short of the pleading requirements.

As to trademark infringement, any use of Plaintiff's marks by Quizlet does not create a likelihood of confusion, the touchstone for a claim of trademark infringement. The accused materials use only the term "Barkley," while the asserted marks are directed to "Barkley & Associates."  "Barkley" alone, to the extent it is protectable, is a weak, descriptive, mark that signifies a surname. And, Quizlet itself did not upload any of the accused material.

As to the remaining claims concerning false designation of origin, unfair competition, common law trademark infringement, and unfair business practices, these are meritless, concerning the same set of facts and subject to the same defenses presented for trademark infringement.

**A.    Plaintiff Fails to Assert a Claim for Copyright Infringement Upon Which This Court May Grant Relief**

**1.    Defendant Cannot Be Liable for Copyright Infringement Because it is Protected by a Safe Harbor of the DMCA**

At the outset, Quizlet cannot be held liable for monetary damages or subjected to injunctive relief for copyright infringement by third-parties because it is protected by the "safe harbor" provisions of the DMCA, 17 U.S.C. § 512(c), created by Congress to ensure the proper functioning of the internet. *UMG Recordings,* 718 F.3d at 1014.[3]  Quizlet qualifies for this safe harbor.

The U.S. Copyright Office provides an Overview of the Safe-Harbor and the Notice-and-Takedown System. *See* https://www.copyright.gov/dmca/. It provides:

> In the late 1990s, Congress recognized the legal uncertainty facing the nascent internet industry resulting from online service providers' potential legal liability for copyright infringement that occurred on their services. To address this issue, Congress enacted section 512 of the Copyright Act, which (1) enabled copyright owners to have infringing online content removed without the need for litigation, and (2) facilitated the development of the internet industry by providing legal certainty for participating online service providers. Section 512 shields online service providers from monetary liability and limits other forms of liability for copyright infringement—referred to as safe harbors—in exchange for cooperating with copyright owners to expeditiously remove infringing content if the online service providers meet certain conditions.

At the threshold, to be eligible for the § 512(c) safe harbor, a service provider must show that the infringing material was stored "at the direction of the user."

---

[3] Filing suit instead of following the DMCA procedure subverts the intent of Congress. *See e.g., Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013). Plaintiff's proper course of action is to file a DMCA notice.

*Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017). It must then show that (1) it complied with § 512(i)'s notice and takedown procedure; (2) "it lacked actual or red flag knowledge of the infringing material" and, if it did gain such knowledge, "act[ed] expeditiously to remove, or disable access to, the material;" and (3) "it did not receive a 'financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity.'" *Id*.

Quizlet has established a system and platform whereby third-parties create and upload materials directed to any field or endeavor. Quizlet does not actively participate in or supervise the creation or uploading of the content, nor does it preview, select, or edit content uploaded by third-parties. Rather, the content creation and upload are initiated entirely at the volition and at the direction of Quizlet's users (who agree to abide by the requirement not to upload copyrighted materials of others). Marrer Aff. at ¶ 36. This establishes the threshold for Quizlet to be eligible for the safe harbor.

Next, a defendant must show that "it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and [that] it does not actively prevent copyright owners from collecting information needed to issue such notifications" to comply with the "notice and takedown" requirement. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007).

Quizlet fulfills its obligations to remove material where it had actual knowledge of infringement, both as a general matter and specifically with respect to Plaintiff. At least as early as February 2020, Plaintiff began notifying Quizlet of the infringing content. Most of the notices sent by Plaintiff were of the form required by the DMCA. Plaintiff has engaged in the DMCA process with Quizlet regarding allegedly infringing materials at least fifteen times between 2020 and 2023. Each time that Quizlet receives a proper and complete DMCA takedown notice from any party, including Plaintiff, Quizlet removes the accused content expeditiously from its

website. Marrer Aff. at ¶ 32. Quizlet complies in all respects with this requirement under the DMCA, and has complied with the DMCA specifically based on notices from Plaintiff.[4]  This establishes the second factor for Quizlet to be eligible for the safe harbor.

Finally, the defendant must show that "it did not receive a 'financial benefit directly attributable to the infringing activity'" if it had "the right and ability to control such activity." *Mavrix*, 873 F.3d at 1052. "To have the 'right and ability to control,' the service provider must exert substantial influence on the activities of users." *UMG*, 718 F.3d at 1030. "The pertinent inquiry is not whether [the service provider] has the right and ability to control [its] *system*, but rather, whether it has the right and ability to control the *infringing activity*." *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132, 1151 (N.D. Cal. 2008).

The accused material on Quizlet's website was created and uploaded by third-parties. While Quizlet monitors and controls its *systems* as a service provider, Quizlet does not exert "substantial influence" on the allegedly infringing activity of its users. *See, e.g., Sid Avery & Associates, Inc. v. Pixels.com, LLC*, No. 18-cv-10232-CJC-JEMx, 2021 U.S. Dist. LEXIS 35620, at *4 (C.D. Cal. Feb. 24, 2021) (citing *UMG Recordings*, 718 F.3d at 1030) (holding Pixels' activity operating its website, processing payments, and transmitting order information to third-party printers showed only that it controls its operations, not the infringing activity, and therefore did not have the requisite "substantial influence on the activities of its users" to disqualify it from safe harbor protection). Further, Quizlet's flashcard service is free, *see*,  https://help.quizlet.com/hc/en-us/articles/360041181691-Subscribing-to-Quizlet,

---

[4] Plaintiff alleges that Quizlet "allows users to post copyright protected Barkley material on the Quizlet website." Compl., ¶ 14. However, Quizlet has no responsibility to monitor its platform. 17 U.S.C. § 512(m). When a defendant is informed of infringing material, it is obligated to take the material down, but it is not obligated to "investigate" to find more potentially infringing material. *UMG Recordings*, 718 F.3d at 1014. Further, Quizlet's Terms of Service specifically prohibit users from posting unlicensed third-party content, underscoring the lack of any "allowance." *See* https://quizlet.com/tos.

and Quizlet receives no financial benefit from that service.[5]  This establishes the third factor for Quizlet to be eligible for the safe harbor.

Quizlet satisfies all the requirements for protection from liability under the DMCA safe harbor. There can be no properly pled cause of action for copyright liability against Quizlet because this is a pure matter of law, and, accordingly, the Court should dismiss this claim.

### 2.    The Complaint Fails to Properly Plead a Claim for Copyright Infringement

Even assuming, *arguendo*, that a claim for copyright infringement is not entirely foreclosed (although, as explained, it is) the Complaint is insufficiently pled to support this claim.

Plaintiff, alleging copyright infringement under 17 U.S.C. § 501, must show that (1) it owns a valid copyright, and (2) the defendant copied the protected work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). A plaintiff must show causation ("volitional conduct") by the defendant, requiring "conduct by the defendant that can reasonably be described as the direct cause of the infringement." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020). Plaintiff's allegations fail on every requirement.

### a)    Quizlet Has Not Engaged in Any Volitional Conduct

To show volitional conduct, a plaintiff must provide evidence "showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019). Here, as a matter of absolute fact, Quizlet did not engage in volitional conduct (the accused content was uploaded by third-parties).

---

[5] That Quizlet offers this service for free refutes Plaintiff's allegation that Quizlet is "soliciting people to create Quizlet accounts and pay for study materials…" Compl., ¶ 16.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

**b)**    **The Complaint Does Not Identify What, Specifically, Is
Allegedly Being Infringed Upon**

The Complaint, not providing copies of the allegedly infringing materials, is further deficient on its face, and, therefore, fails to state a claim. Fed. R. Civ. P. 12(b)(6). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In this situation, Courts may dismiss a copyright claim at the pleading stage. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018).

The allegedly copyrighted materials are not identifiable simply by their registration numbers provided in the Complaint and there is no way to ascertain which of Plaintiff's allegedly protected materials are the subject of the claim. *See Jackson v. Netflix, Inc.*, 506 F.Supp.3d 1007, 1017 (C.D. Cal. 2020) ("Plaintiffs instead identify registration numbers and aver legal conclusions concerning Netflix's infringement of the 'Publication,' […] Plaintiffs inexplicably fail to provide cogent details concerning what works their registrations cover, or allege which parts of the copyrights Netflix infringed, when, and through what conduct"). The claim, insufficiently pled, must be dismissed.

**c)**    **No Protectable Copyright of Facts**

Facts cannot be protected by copyright. *Feist Publications*, 499 U.S. at 344. Only the collections or compilations of facts may possess the originality necessary for copyright protection. 17 U.S.C. §§ 101-03. A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id*.

"Test preparation materials for students studying to become nurse practitioners," as the allegedly protected content is described by Plaintiff, Compl., ¶ 7, must be factual and therefore not protectable. Assuming, *arguendo*, that Plaintiff's

materials qualify as a "compilation," which Plaintiff does not allege, any possible protection will be only in the compilation and how the facts are assembled.[6]  The accused materials are flashcards, not assembled as "home courses, study manuals, textbooks, recordings of classes, and other study materials…in both digital and print form." Compl., ¶ 7. For this reason, too, the Court should dismiss this claim.

### d)    There Is No Copyright Infringement Because Any Use of Materials Falls into The Fair Use Exception

Plaintiff's claim of copyright infringement also fails because any use of the copyrighted material is fair use, as a matter of law. Plaintiff has not alleged any facts to the contrary, and, since no such facts exist, they cannot be revealed by discovery.

The fair use doctrine "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Under 17 U.S.C. § 107, "the fair use of a copyrighted work…for purposes such as criticism, comment, news reporting, teaching…, scholarship, or research, is not an infringement of copyright."  Courts weigh four factors in a fair use determination; here, each of these factors dictates that the accused activity is fair use.

The first factor, the purpose and character of the use, analyzes "whether and to what extent the new work is transformative," adding "something new" to the first work. *Id.* at 579. Plaintiff's products are designed to teach nursing studies; the content on quizlet.com transforms this long form content to flashcards, designed for memorization and studying, and tailored for individual students' needs.

The second factor, the nature of the copyrighted work, recognizes that some works—generally creative works, like fictional stories—"are closer to the core of intended copyright protection than others." *Id.* at 586. Works that are largely fact-based have only "thin" copyright protection. Plaintiff's content is factual.

---

[6] Even the selection of the facts to include in the study materials are not at the discretion of Plaintiff—the materials are dictated by third-party-designed board exams.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

The third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, looks to the quantitative amount and qualitative value of the original work used in relation to the defendant's justification for the use. *Id*. at 586-88. Flashcards are short and succinct and include a few short sentences. They highlight core facts only, without any of the surrounding material.

The fourth factor, the effect of the use upon the potential market for or value of the copyrighted work, considers "the extent of market harm caused by the particular actions of the alleged infringer [and] also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Id* at 590. Flashcards cannot replace long-form teaching materials, such as textbooks, study manuals, entire courses, or full classes. Indeed, Quizlet first began offering its flashcard tool in 2015, Marrer Aff. at ¶ 14, yet Plaintiff has not pled any appreciable decline in the market for textbooks.

The accused uses are fair uses as a matter of law, and, for this reason too, the Court should dismiss this claim.

## B.    Plaintiff Fails to Assert a Claim for Trademark Infringement Upon Which This Court May Grant Relief

Plaintiff alleges trademark infringement of the marks with (1) U.S. Registration Number 6,272,223, a stylized mark that includes the words "Barkley & Associates;" and (2) U.S. Registration Number 6,270,781, a word mark "Barkley & Associates." Compl., ¶ 8. Plaintiff has never, prior to filing this lawsuit, approached Quizlet with any concern regarding trademark infringement even though it has expressed concerns about copyright infringement, underscoring the manufactured and baseless premise for this claim.

To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must prove: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."

17

*Network Automation, Inc. v. Advanced Sys. Concepts,* 638 F.3d 1137, 1144 (9th Cir. 2011). The "likelihood of confusion" inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing the mark. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). The inquiry is whether confusion is "probable, not simply a possibility." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).

Here, the accused products were created and uploaded by third-parties, who, by the very act of uploading materials extraneous to Quizlet, inherently know that the materials' source is not Quizlet. The relevant consumers are not likely to be confused.

### 1.    The Accused Use Would Not Cause a Likelihood of Confusion

The test for determining a likelihood of confusion considers eight factors (the "*Sleekcraft* Factors"): (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). An analysis of each of these factors shows the lack of any possibility (let alone probability) of confusion as to the source of the materials.

### a)    *Sleekcraft* Factor 1: Plaintiff's Mark is Not Strong

A strong mark is inherently distinctive—for example, "arbitrary or fanciful"— and is afforded the widest ambit of protection from infringing uses. *AMF, Inc.*, 599 F.2d at 349. Here, the asserted marks, formed of the surname "Barkley," are, as matter of law, not distinctive. *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006).[7] These marks are, instead, descriptive, not protectable unless they

---

[7] The Examining Attorney for U.S. Trademark Registration No. 6,270,781 initially refused registration, in part, because the term "Barkley" is primarily merely a surname and is therefore

have acquired "secondary meaning," such that buyers and potential buyers associate the mark with the source, not as a description, of the product. *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011).

The term "Barkley" has not gained any secondary meaning. Whether a mark has gained secondary meaning is often determined by marketplace studies and polls. Here, however, the existing evidence speaks for itself, and no study or poll is needed.

First, Plaintiff does not rely on its mark to gain visitors to its website: its domain, "npcourse.com," describes nurse practitioner studies, underscoring the fact that the use "Barkley & Associates" itself would not inform a nursing student that the content of the website was relevant to that student.

Further, in a Google search conducted in New York in or around August 2024, for the term "Barkley," the search results include no reference to Plaintiff or its materials in at least the first two pages. "Charles Barkley" dominates the search results, and both "Barkley the Dog" (a Sesame Street Muppet) and "The Barkley Restaurant" in Pasadena (far from the New York searcher) are higher in the results than "Barkley & Associates." Fink Aff. at ¶¶ 11-13.

These search results indicate that Plaintiff's product is neither "relevant" nor "useful" to the average user, two elements that help Google's algorithm return search results:

> To return relevant results, we first need to establish what you're looking for—the intent behind your query. To do this, we build language models to try to decipher how the relatively few words you enter into the search box match up to the most useful content available.[8]

---

descriptive. 15 U.S.C. §1052(e)(4). Plaintiff overcame the refusal by claiming the "mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce…for at least five years." https://tsdr.uspto.gov/documentviewer?caseId=sn90042228&docId=ROA20201024184816&linkId=10#docIndex=9&page=1  Yet, Plaintiff's use of this surname was not exclusive and Plaintiff did not have substantially exclusive use. *See* above.

[8] https://www.google.com/intl/en/search/howsearchworks/how-search-works/ranking-results/#:~:text=To%20give%20you%20the%20most,the%20nature%20of%20your%20query

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

As applied to the instant case, this means that Google's algorithm, refined over at least five years (*see id*.), and ratified by billions of users, considers Charles Barkley, a Muppet, and a restaurant in Pasadena more "relevant" and "useful" to a typical internet user in New York than Barkley & Associates, which, based on its late appearance in this list, is hardly "relevant" or "useful" at all. With respect to secondary meaning, this strongly suggests that the term "Barkley" is not associated with Plaintiff.

Plaintiff alleges that its marks are "famous."[9] Compl., ¶ 20. Plaintiff is wrong. "Fame" requires a showing greater than mere distinctiveness or secondary meaning. *See, e.g.*, *Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F.Supp.3d 1005, 1011 (S.D. Cal. 2017).

A "famous" mark is one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Fame is a very high bar - even very old and commercially successful marks are not "famous." *See, e.g., Avery Dennison*, 189 F.3d at 873, 876-77 ("Avery" and "Dennison" marks are not famous despite decades of use, $3 billion in annual sales, and $5 million in advertising); *Fruit of the Loom, Inc., v. Girouard*, 994 F.2d 1359, 1362-63 (9th Cir. 1993) (finding the "FRUIT" mark was "far from being in the class" of the famous marks "TIFFANY," "POLAROID," "ROLLS ROYCE," "KODAK," "CENTURY 21," and "OSCAR.").

Plaintiff's mark is a surname. It is not associated with Plaintiff to the general consuming public. Factually and legally, the mark cannot cause a likelihood of confusion.

### b)    *Sleekcraft* Factor 3: The Marks Are Not Similar

---

[9] Plaintiff alleges that Quizlet's services "dilute Barkley's famous brand." Compl., ¶ 20. However, there can be no claim of dilution without fame. *See, e.g., Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004). There can be no dilution here.

Similarity of the marks is tested on three levels: sight, sound, and meaning; each must be considered *as they are encountered in the marketplace*. *See AMF, Inc.*, 599 F.2d at 351. Here, Plaintiff's website uses the two asserted marks as they are registered, *i.e.*, "Barkley" along with the words "& Associates."[10]  Plaintiff's website does not use the word "Barkley" alone, as that word is used in the accused uses. Accordingly, use of the single word "Barkley" in the accused materials is unlikely to cause consumer confusion.

### c)  *Sleekcraft* Factor 4—No Evidence of Actual Confusion

"[L]ack of evidence about actual confusion after an ample opportunity for confusion 'can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Cohn*, 281 F.3d at 843. The Complaint alleges actual confusion based on an email sent from Rebecca.martin@ua.edu to barkley@npcourses.com and bianca@npcourses.com. The email states:

> I had a student email me today regarding the 3ps test taken last Friday. The student said they were looking into the Barkley 3Ps and stumbled upon "Quizlet."  The student went on to say that they reviewed the information on the site without knowing it was a direct quote from the '3Ps.'  I google 3ps Barkley and saw Quizlet listed on the first page. *** You may be aware of the site but I appreciate all of your help with preparing our students.

For context, "3Ps" is the name of a nursing qualifying exam, not the name of Plaintiff's material, and not owned by Plaintiff. This email does not show actual confusion as to the source of the information on quizlet.com—it shows that the student found a direct quote from an exam, not owned by Plaintiff, on Quizlet's

---

[10]                                https://www.npcourses.com/certification-review-courses/?specialty=AGACNP&utm_term=&utm_campaign=Search-+Dynamic+%7C+All+except+PNP&utm_source=adwords&utm_medium=ppc&hsa_acc=1247175 319&hsa_cam=20785233301&hsa_grp=157195582298&hsa_ad=696738845882&hsa_src=g&hsa_ tgt=dsa-2261946580035&hsa_kw=&hsa_mt=&hsa_net=adwords&hsa_ver=3&gad_source=1&gclid=CjwK CAJw6c63BhAiEiwAF0EH1JZphYols9svVDwbgunVfdYnK6N9PvGlWnirJ3itfsspNxLAEqZjpxo CbhoQAvD_BwE&type=live-course.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

website. The student was not confused as to whether the content on Quizlet's site came from Barkley, but instead pointed out that quizlet.com, in addition to Plaintiff (and many other companies that provide study materials for the "3Ps" exam), contained some study materials for the exam. The teacher wondered if Barkley was aware of the Quizlet site—indicating her knowledge that the site was not affiliated with or endorsed by Barkley (*i.e.*, showing the exact opposite of confusion of the source). Far from evidencing actual confusion, this email correspondence instead evidences no confusion. Thus, the fourth *Sleekcraft* factor favors Defendant.

> **d)    The Remaining *Sleekcraft* Factors Show that there is No Likelihood of Confusion**

The second *Sleekcraft* factor considers the proximity of the goods, the fifth factor considers the marketing channels in which the products are offered, and the eighth factor asks whether there is a strong possibility of expansion into competing markets. For related goods, the danger presented by use of similar trademarks is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. *AMF, Inc.*, 599 F.2d at 350, 353. Here, Plaintiff offers digital courses and hardcopy materials for teaching nurse practitioners. Quizlet operates solely online, and does not offer any courses to teach content, but offers the ability for the user to make their own flashcards to be used to memorize and study content of any topic desired by a user. These factors, accordingly, cannot support a likelihood of confusion.

The sixth *Sleekcraft* factor considers types of goods and the degree of care likely to be exercised by the purchaser. When a product is expensive, consumers are likely to exercise caution before purchasing the product, resulting in a smaller chance of confusion. *See Entrepreneur Media v. Smith*, 279 F.3d 1135, 1152 (9th Cir. 2002). Here, Plaintiff's courses and materials can cost upwards of $589,[11] a high price for

---

[11] *See, e.g.*, https://www.npcourses.com/45-hour-advanced-pharmacology-course/.

the targeted consumers—students—who would therefore exercise great care before purchasing these materials. This factor does not support a likelihood of confusion.

The seventh *Sleekcraft* factor considers the defendant's intent, important because "[a]dopting a designation with knowledge of its trademark status permits a presumption of intent to deceive," and such intent is "strong evidence of a likelihood of confusion." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). Here, since the accused material was posted by third-parties on Defendant's service against the express prohibition set forth in the Quizlet Terms of Service, Quizlet had no nefarious intent (or any intent). Accordingly, this factor cannot support a likelihood of confusion.

Not a single *Sleekcraft* Factor suggests any likelihood of confusion. As this is a Motion to Dismiss, the Court may accept the Plaintiff's allegations as true. However, Plaintiff has failed to identify with particularity any facts that would support a finding in favor of Plaintiff. The Court should accordingly find that there is no likelihood of confusion and therefore no trademark infringement can result.

## 2.    Any Use of the Unprotected Word "Barkley" Was Not "Use" by Defendant

It is well established that an internet platform that merely hosts content that may infringe a trademark is not liable for trademark infringement. *See e.g., YZ Prods. v. Redbubble, Inc.*, 545 F.Supp.3d 756, *passim* (N.D. Cal. 2021). Quizlet.com is such a platform. It does not, as part of its regular business, create or upload flashcards and merely hosts the online platform for third_-parties to post content. Marrer Aff. at ¶¶ 13, 39. Oddly, Plaintiff alleges that Quizlet has violated its rights by relying on a screenshot from an unrelated, third-party website, studypool.com. Compl., ¶ 12. Quizlet has no affiliation or association with this site. Marrer Aff. at ¶ 38. Plaintiff points to the phrase, "Study online at https://quizlet.com/..." written in small letters on a flashcard that was found on studypool.com to assert an association between Quizlet and this post on a completely unrelated site. This phrase, however, is

standard on all user-created materials that are printed from quizlet.com, is directed to
the user itself and does not evidence any malfeasance by Quizlet. Marrer Aff. at ¶ 12.
There is no evidence alleged to suggest that Quizlet "created" the materials or
"plastered the Quizlet name" on materials to "entice users to visit the Quizlet site
instead of Barkley." Compl., ¶¶ 11-12. And, indeed, there can be no evidence of this
because the allegations are false.

Therefore, the trademark infringement claim fails also because Quizlet has not
in any way directly used the trademarks.

### 3.    Any Use of the Unprotected Term "Barkley" is a Fair Use and Not Infringing

The doctrine of fair use provides an affirmative defense to a defendant accused
of federal trademark infringement. 15 U.S.C. §§ 1115(b)(4), 1125(c)(3)(A). To
successfully assert this defense, a defendant must show it is (1) not using the term as
a trademark or service mark; (2) using the term fairly and in good faith; and (3) using
the term only to describe its goods or services. *Cairns v. Franklin Mint Co.*, 292 F.3d
1139, 1150-51 (9th Cir. 2002).

Here, the use of the asserted marks is descriptive fair use, used only to identify
the source of the materials to the their-party who used the materials. Any use was in
good faith, done by a third-party as a study aid.

For all these reasons, Plaintiff's claim for trademark infringement fails and
should be dismissed.

### C.    Plaintiff Fails to Assert a Claim for Its Remaining Three Claims Upon Which This Court May Grant Relief

Plaintiff alleges false designation of origin/unfair competition under 15 U.S.C.
§ 1125(a), trademark infringement under California common law, and unfair
business practices under California Business & Professions Code § 17200. These
claims all fail as they rise and fall with the federal trademark infringement claim
since they are analyzed in the same way. "To prove trademark infringement under 15

U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125, and by extension, the related unfair business practices and common law infringement claims, a plaintiff must prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion." *Charisma Brands, LLC v. AMDL Collections, Inc.*, No. 8:19-cv-00312-JLS-KES, 2019 U.S. Dist. LEXIS 208192, at *10 (C.D. Cal. Sep. 3, 2019). Since there can be no likelihood of consumer confusion, as noted above after evaluating the *Sleekcraft* factors, these claims must fail.

### 1.    Plaintiff Fails to Assert a Claim for False Designation of Origin/Unfair Competition[12]

To prevail on a claim of false designation of origin under 15 U.S.C. § 1125(a), a plaintiff "must prove that [the] [d]efendant used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of original, false or misleading description of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [d]efendant with [p]laintiffs, or as to the origin, sponsorship, or approval of his goods by [p]laintiffs." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002); *see also Kythera Biopharmaceuticals, Inc. v. Lithera*, *Inc*., 998 F.Supp.2d 890, 897 (C.D. Cal. 2014) ("A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114.").

Quizlet has not used any term owned by Plaintiff. The accused uses on quizlet.com specifically state the source of the material. Further, as explained, there is no likelihood of confusion. Quizlet's liability and defense for this claim are, therefore, substantially the same as those discussed in the section of the claim for

---

[12] Quizlet is also not liable for this claim under the Communications Decency Act (CDA), Section 230, which protects internet platforms from liability based on content posted on the platform by others. 47 U.S.C. § 230. Section 230 is applicable for claims of false designation of origin/unfair competition. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).

trademark infringement under 15 U.S.C. § 1114, and the court should, accordingly, find that Quizlet is not liable for false designation origin or unfair competition.

## 2. Plaintiff Fails to Assert a Claim for Common Law Trademark Infringement

Trademark claims under California law are "substantially congruent" with federal claims and thus lend themselves to the same analysis. *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004).

A claim under California common law for trademark infringement applies only to unregistered marks. *Id*. To prevail on this claim, "a plaintiff must allege two elements: first, that the plaintiff owns a valid and protectible trademark; and second, that a defendant used, in commerce, a similar mark without authorization in a manner that is likely to cause consumer mistake, confusion, or deception." *So. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014). Plaintiff here fails to describe any alleged common law marks and none are readily discernible. Quizlet has not used the mark. As explained, there is no likelihood of confusion. Therefore, Plaintiff fails to successfully assert any claim for trademark infringement in accordance with the laws of the State of California, there is no common law trademark infringement and the Court should, accordingly, dismiss this claim.

## 3. Plaintiff Fails to Assert a Claim for Unfair Business Practices

A claim for unlawful conduct under Cal. Bus. & Prof. Code § 17200 "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). This claim rises and falls along with the other claims and, therefore, Quizlet has no liability for this claim.[13]

## V. CONCLUSION

---

[13] Plaintiff alleges that Quizlet misappropriated and used "Barkley's protected marks, trade dress, copyrights, label, artwork, design, and related protected works…" Compl., ¶ 101. However,

For the foregoing reasons, Quizlet respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety for failing to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:        September 30, 2024

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: /s/ Ryan Patterson
Ryan Patterson

Wilson Elser Moskowitz Edelman & Dicker LLP
555 S. Flower Street – Suite 2900
Los Angeles, California 90071-2407
ryan.patterson@wilsonelser.com

Adam R. Bialek
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017
adam.bialek@wilsonelser.com

---

Plaintiff does not identify these, nor can Quizlet identify them, foreclosing the possibility of infringement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF COMPLIANCE</u>

### PURSUANT TO LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendant Quizlet, Inc., certifies that this brief contains six thousand, nine hundred, ninety-five words, which complies with the word limit of L.R. 11-6.1.

Dated:          September 30, 2024

                                        Respectfully submitted,

                              By:  /s/ Ryan Patterson
                                        Ryan Patterson

1

2

## <u>CERTIFICATE OF SERVICE</u>

3      The undersigned hereby certifies that counsel of record who are deemed to

4

5   have consented to electronic service are being served with a copy of the foregoing

6   via the Court's CM/ECF system on September 30, 2024.

7

8                                                         <u>/s/ Ryan Patterson</u>
                                                            Ryan Patterson
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF DEFENDANT'S MOTION TO DISMISS