Colin V. Quinlan (State Bar No. 332225)
Adam R. Bialek (*pro hac vice*)
Sarah Fink (*pro hac vice*)
**WILSON, ELSER, MOSKOWITZ,**
 **EDELMAN & DICKER LLP**
555 S. Flower Street, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 443-5100
Facsimile: (213) 443-5101
Email: colin.quinlan@wilsonelser.com
adam.bialek@wilsonelser.com
sarah.fink@wilsonelser.com

Attorneys for Defendant Quizlet, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARKLEY & ASSOCIATES, INC., A CALIFORNIA CORPORATION, | Case No.: 2:24-cv-5964 |
| PLAINTIFF, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT QUIZLET, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| QUIZLET, INC., A DELWARE CORPORATION REGISTERED IN CALIFORNIA, | |
| DEFENDANT. | Date: June 13, 2025 |
| | Time: 1:30 PM |
| | Location: Courtroom 9B |
| | Honorable Wesley L. Hsu |
| | [Filed concurrently with Notice of Motion and Motion, Declaration of Sarah Fink, and Proposed Order] |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 8

II. BACKGROUND FACTS ................................................................................. 10

III. PROCEDURAL HISTORY .......................................................................... 13

IV. STANDARD FOR DISMISSAL UNDER FRCP 12(b)(6) ........................ 13

V.  ARGUMENT – THERE IS NO COPYRIGHT INFRINGEMENT ............ 14

    a.  The Accused Works do not Copy any Protectable Elements of the Asserted Works .................................................................. 15

    b.  The Asserted Works are Subject to the Limiting Doctrines of Merger and Scènes à Faire ...................................................... 18

    c.  Quizlet is not Liable for Direct Copyright Infringement ................... 18

    d.  There is no Vicarious Infringement ...................................................... 19

    e.  The Accused Use is Fair Use ................................................................ 20

        i.    A detailed look at the accused uses ....................................... 22

        ii.   Factor 1: The purpose and character of the use .................... 25

            The accused use is "transformative" ...................................... 25

        iii.  Factor 2: the nature of the copyrighted work ....................... 26

        iv.   Factor 3: the amount and substantiality of the portion used ....................................................................................... 26

        v.    Factor 4: the effect of the use upon the market for or value of the copyrighted work ................................................ 27

        vi.   Weighing the Factors ............................................................. 28

VI. ARGUMENT – TRADEMARK AND RELATED CLAIMS ...................... 28

    a.  The Related Claims Rise and Fall with the Trademark Claims ........ 30

VII.    CONCLUSION ................................................................................................ 30

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

313153794v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. v. Canus Prods.*,
173 F. Supp. 2d 1044 (C.D. Cal. 2001)...............................................................20

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) ...............................................................................14, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................13, 14

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014) .................................................................................27

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*,
27 F.4th 313 (5th Cir. 2022).............................................................................20

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ...........................................................................................10

*Charisma Brands, LLC v. AMDL Collections, Inc.*,
2019 U.S. Dist. LEXIS 208192 (C.D. Cal. Sep. 3, 2019)...................................30

*Cohn v. Petsmart, Inc.*,
281 F.3d 837 (9th Cir. 2002).............................................................................29

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
256 F. Supp. 3d 1099 (S.D. Cal. 2017) .............................................................30

*Eddie-Alexander Banks v. Huehnerhoff*,
2021 U.S. Dist. LEXIS 1270 (W.D. Wash. Jan. 5, 2021) ..................................11

*Ernst v. Cate*,
2009 U.S. Dist. LEXIS 106207 (E.D. Cal. Nov. 13, 2009) ...............................11

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000)...........................................................................18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .............................................................8, 9, 17, 18, 23

4

*Fox Broad. Co. v. Dish Network LLC*,
   747 F.3d 1060 (9th Cir. 2014) ...................................................................... 18

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ....................................................................... 14

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021) .............................................................. 9, 25, 26, 27

*Harper & Row, Publrs. v. Nation Enters.*,
   471 U.S. 539 (1985) ....................................................................... 18, 20, 26

*Hughes v. Benjamin*,
   437 F. Supp. 3d 382 (S.D.N.Y. 2020) ....................................................... 21

*Jacquez v. Procunier*,
   801 F.2d 789 (5th Cir. 1986) ...................................................................... 16

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ....................................................... 24, 25, 26

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016) .................................................................................... 21

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2007) ...................................................................... 20

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352 (9th Cir. 1985) .................................................................... 12

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
   964 F.2d 965 (9th Cir. 1992) ................................................................ 25, 26

*Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*,
   710 F.3d 1068 (9th Cir. 2013) .................................................................... 20

*Marano v. Metro. Museum of Art*,
   472 F. Supp. 3d 76 (S.D.N.Y. 2020) ......................................................... 20

*Moss v. U.S. Secret Service*,
   572 F.3d 962 (9th Cir. 2009) ...................................................................... 14

*Network Automation, Inc. v. Advanced Sys. Concepts*,
   638 F.3d 1137 (9th Cir. 2011) .................................................................... 28

5

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    971 F.3d 1042 (9th Cir. 2020)................................................................18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007)................................................................20

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017)................................................................20

*Rassamni v. Fresno Auto Spa, Inc.*,
    365 F. Supp. 3d 1039 (E.D. Cal. 2019)................................................18

*Scott v. Harris*,
    550 U.S. 372 (2007) ..............................................................................11

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir.1990)................................................................16

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................9, 19, 25

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)................................................................14

*VHT Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019).........................................................18, 19

*Whiddon v. Buzzfeed, Inc.*,
    638 F. Supp. 3d 342 (S.D.N.Y. 2022)..................................................20

**Statutes**

15 U.S.C. § 1115(a) ....................................................................................12

17 U.S.C. § 101...........................................................................................17

17 U.S.C. § 107(1)......................................................................................25

**Rules**

Fed. R. Civ. P. § 12(b)(6) ...........................................................................30

6

**Other Authorities**

37 C.F.R. § 202.1(a) ................................................................................. 16

3 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.).................. 30

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff cannot monopolize the test preparation market for nursing practitioner exams, as it seems to request this Court to Order. Plaintiff does not and cannot own this market, the material included on the national exams, or the vast majority of the purely factual material included in its preparation content. Plaintiff cannot prevent others from creating study materials for these exams or students from incorporating study information into the student's own study materials. And, Plaintiff cannot prevent innovation in the nursing studies market. The Court should accordingly dismiss this matter with prejudice as there is no actionable conduct.

Plaintiff publishes test preparation materials for nurse practitioner exams written by third-parties and claims to own those materials. Quizlet provides an online platform on which users may create and upload flashcards on any topic to aid in memorization. Plaintiff alleges that (1) some users upload content that infringes its copyrights; (2) Quizlet's platform displays that allegedly infringing content; (3) Quizlet uses the content in an artificial intelligence ("AI") model that outputs allegedly infringing products; and (4) Quizlet is responsible for that alleged infringement.

Plaintiff is wrong. There is no copyright infringement here, and, even if there were, Quizlet cannot be held responsible. Indeed, the foundational copyright cases handed down by the Supreme Court may be read as if they were speaking directly to and providing a roadmap for dismissal of this case.

*First*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*. explains that facts and ideas are not subject to copyright protection. A compilation of facts may be subject to copyright protection, subject to two limitations: (1) the copyright in the compilation is protected only to the extent that the party asserting ownership has collected and selected the facts and arranged them into an original work of authorship; and (2) any

8

copyright to a compilation of facts is "thin," limited to the expression of the facts in the asserted work. 499 U.S. 340, 349-51 (1991).

Here, the asserted test preparation materials, designed to prepare students for certification examinations in nursing, are, by definition, factual. Any protection in the compilations is therefore "thin" and limited to the exact expression in the materials. Further, Plaintiff does not "select" which facts to include in its compilations. Those facts are dictated by the material selected by the licensing organizations that is tested in the third-party-written exams.

**Second**, in *Sony Corp. of Am. v. Universal City Studios, Inc.*, the Court held that a party which offers a product that may be used for infringing purposes is not liable for any infringing uses by its users when the product is capable of commercially significant non-infringing uses. 464 U.S. 417, 436, 442-43 (1984).

Here, Quizlet designed, offers, and markets a platform for significant non-infringing uses. Quizlet contractually obligates its users not to use the platform for infringing purposes. To the extent that some users may do so, Quizlet is not liable.

**Third**, *Sony* also addresses the "fair use" defense to copyright infringement, giving an example of fair use as a "teacher who copies for the sake of broadening his personal understanding of his specialty," a use nearly identical to that accused. *Id*. at 455 n.40. *Sony* further adds that the underlying direct infringement must be analyzed, not the use of any accused secondary infringer. Here, the underlying use is non-commercial (students use the platform to study), and the use is therefore presumptively fair. *Id.* at 449.

**Fourth**, in *Google LLC v. Oracle Am., Inc.*, the Court held that fair use may apply even if a portion of a copyrighted work is copied wholesale, so long as the use is transformative. 593 U.S. 1, 34 (2021). In this case, even if any small excerpt of a compilation is copied, the use is transformative, enhancing static, generic, limited, and non-interactive content by converting it into dynamic, personalized, unlimited,

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

and interactive content. Students use Quizlet.com to provide different study modes than those available from Plaintiff. Any copying is fair use.

*Fifth*, *Campbell v. Acuff-Rose Music, Inc.*, explains that the fair use inquiry regarding the effect on the market asks whether the accused use merely "replaces" or "supersedes" the purpose of the asserted work. 510 U.S. 569, 591 (1994). The asserted work here serves as a study resource for students. The accused work is another resource, different in kind, scope, and comprehensiveness. Students' use of the AI features on Quizlet when they allegedly have access to Plaintiff's works on Quizlet.com without such features demonstrates that students view Quizlet's study modes as different from Plaintiff's works, not a substitute.

The Court need look no further than these bedrock principles of copyright infringement to find that there is none—and certainly none that can be attributed to Quizlet.

Plaintiff's First Amended Complaint ("FAC") alleges no facts that may give rise to a reasonable inference that there has been copyright infringement, and, indeed, there is no infringement as a matter of law. The Court should, accordingly, dismiss this matter with prejudice.

## II. BACKGROUND FACTS

Quizlet provides online tools for memorization and study. One tool enables users (predominantly students and teachers) to create and upload digital flashcards. Plaintiff alleges that Quizlet "created", "makes", and "sells" copies of Plaintiff's material (FAC ¶¶10, 11, 12, 17, 18, 25, 45, 47, ), but Plaintiff knows, and has admitted, that nursing students create the alleged "unlicensed copies of these textbooks and exams and then post them to the Quizlet.com website"—not Quizlet itself.[1] *See,* Plaintiff's Opposition to Defendant Quizlet Inc.'s Motion to Quash

---

[1] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

Plaintiff's DMCA § 512(h) Subpoena, Case No.: 25-mc-0010-WLH(Ex). *See,* Exhibit 1.

Quizlet's service is available for any field of study, including math, literature, languages, science, social science, arts and humanity, and many more. Quizlet does not purport to provide comprehensive study materials for any topic. Quizlet does not review content uploaded by its users and has no knowledge of whether content infringes any third-party copyright.

Quizlet also provides interactive features, some of which incorporate the use of AI. The platform allows students to customize study materials with, theoretically, unlimited variations of factual content. Upon the user's request, one feature collects flashcards (the number chosen by the student) on a topic (chosen by the student) and provides personalized "Tests." Each time a student asks for this type of "Test," the order of flashcards is different, providing students the chance to learn facts, not just to memorize the sequence of answers in static exams. FAC ¶¶119-124. Another feature, "Qchat," engages students in "conversation," providing facts and explanations of those facts, and responding to queries. FAC ¶¶112-116. Yet another feature creates "Games" based on facts. FAC ¶¶125-126.

Plaintiff "is an international nurse practitioner (NP) continuing education company dedicated to providing… NP continuing education and certification review/clinical update courses." *See* www.npcourses.com/about-us/. Plaintiff

_____

summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Courts apply this holding to motions to dismiss. *See, e.g., Eddie-Alexander Banks v. Huehnerhoff*, 2021 U.S. Dist. LEXIS 1270, at *7 (W.D. Wash. Jan. 5, 2021) (citing *Scott*); *Ernst v. Cate*, 2009 U.S. Dist. LEXIS 106207, at *13 (E.D. Cal. Nov. 13, 2009) (citing *Scott*). Plaintiff has already had the benefit of substantial discovery and made admissions in sworn statements to the Court contrary to statements made in the FAC, including the admission referenced in the text accompanying this note. This sworn statement, against the interest of the speaker, has further indicia of reliability, and should therefore be credited by the Court. However, the Court could easily dismiss this case even without reliance on this statement.

11

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

"creates a variety of study materials including printed study manuals, practice questions, digital study materials, recorded courses and more." FAC ¶1.

The FAC alleges that Plaintiff owns US trademark registrations of the wordmark BARKLEY & ASSOCIATES (U.S. Registration Number 6,270,781) and the stylized mark BARKLEY & ASSOCIATES (U.S. Registration Number 6,272,223). The trademark registration certificates list the goods claimed by Plaintiff to be sold under those marks. *See*, FAC, Exhibit C. This description of goods creates a presumption that Plaintiff has exclusive rights to market these types of goods under its trademarks; the presumption does not apply to other goods or services. 15 USC § 1115(a); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).

Since Plaintiff claims that it "meticulously protects" its intellectual property through registrations in the U.S. Copyright Office and in the United States Patent and Trademark Office ("U.S.P.T.O") (FAC ¶¶1, 8, 9), a reasonable inference can be drawn that the goods recited in its trademark registrations represent the entire universe of goods and services Plaintiff offers. These goods do not include those offered by Quizlet: flashcards or personalized, dynamic, or interactive study materials. Thus, Quizlet and Plaintiff are not competitors.

The FAC alleges that Plaintiff's "certificates of copyright registrations were made within five years of the first publication, so they are *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificates." FAC ¶43. However, Exhibit B of the FAC includes copies of twelve copyright registrations; *all but one* of these show on their face that the copyright was NOT registered within five years of first publication. *See*, FAC, Exhibit B. Eleven of these copyright registrations show a registration date in 2023, with dates of first publication in 2013, ten years earlier. Thus, the materials purportedly covered by these copyright registrations do NOT enjoy a *prima facie* presumption of protection.

### III. PROCEDURAL HISTORY

Plaintiff filed the original complaint in this matter on July 16, 2024. Dkt. 1. Defendant moved to dismiss, primarily asserting "safe harbor" protection under the Digital Millenium Copyright Act ("DMCA"). Dkt. 27. After full briefing of the motion and a hearing, the Court declined to dismiss the case, holding that Plaintiff was entitled to discovery on the issue of safe harbor protection as an affirmative defense. Following discovery, the Court would permit Quizlet to file a motion for summary judgment. The Parties engaged in the Court-Ordered limited discovery. When discovery was concluded (aside for a single deposition for which Plaintiff had not produced an appropriately prepared witness), Plaintiff amended the complaint, adding causes of action directed to the AI features on Quizlet.com.

Prior to the filing of the FAC, Quizlet was prepared to file its motion for summary judgment, as the limited discovery revealed that Quizlet was entitled to safe harbor protection. Quizlet has stated this on the record. Transcript from 4/11/25, hearing, 17:3-17:11; Defendant's Opposition to Plaintiff's Motion to File First Amended Complaint, Dkt. 59-2, p.12. The Court predicted that Quizlet would be so entitled, having noted its concern that "this lawsuit may not actually have any legs." *Id*., 9:6-9:11; Transcript from 4/11/25, hearing 17:24-18:4.

The FAC alleges (1) federal trademark infringement, (2) direct copyright infringement, (3) false designation of origin/unfair competition, (4) common law trademark infringement, (5) unfair business practices, and (6) vicarious copyright infringement. Quizlet now moves to dismiss the FAC with prejudice.

### IV. STANDARD FOR DISMISSAL UNDER FRCP 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.

*Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). A court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The process of determining whether a plaintiff has "nudged [its] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679-80. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

## V. ARGUMENT – There Is No Copyright Infringement

The alleged copyright infringement may be divided into three categories for ease of analysis: (1) content that is uploaded to and available on Quizlet.com; (2) use of that uploaded content to train and "feed" an AI model; and (3) output of the AI model in response to user queries. The FAC alleges facts and includes screenshots regarding the first and third category, but is short on facts regarding the alleged training of the AI. Plaintiff alleges only that either Quizlet or a third party does the training, and that the content uploaded to Quizlet.com is used in the training. These pled facts are not robust enough to support any allegations (and are subject to dismissal for that reason alone) or meaningfully contest.

Regardless, this category of alleged infringement must be dismissed along with the other two. The alleged "training" of the AI allegedly "necessarily" requires making a copy of works that were uploaded to Quizlet.com. FAC ¶55. Since those works are not infringing, copying those works cannot be infringing. Additionally, the alleged training of the AI must be analyzed in the context of the ultimate use and purpose of the downstream product. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023). ("The fair use provision, and the first factor

14

in particular, requires an analysis of the specific 'use' of a copyrighted work that is alleged to be an 'infringement.'"). Here, the ultimate "use" of the output of the AI model is the creation of new, unlimited, interactive, and dynamic ways to study, which is non-commercial and highly transformative.

For these reasons, this category of accused use falls with the other categories of alleged infringement.

    a. *The Accused Works do not Copy any Protectable Elements of the Asserted Works*

The asserted works enjoy thin, if any, copyright protection. The works included in the FAC consist of (1) multiple-choice questions seeking factual answers, (2) single words or short phrases, and (3) compilations of those (and output from the AI, discussed below). Any theoretically protectable elements are minimal.

The first screenshot, in ¶116, is a flashcard with a grammatically incorrect multiple-choice question that Plaintiff claims was copied from its protected works:

> A 25 year old woman comes into your practice complaining of recurring headaches as well as fatigue and difficulty breathing during exercise. A physical examination reveals tachycardia and pallor and lab results show a low mean. corpulskiller volume, Low mean caporscular hemoglobin concentration. concentration low serum ferritin and high red cell distribution with what is the best treatment for the patient's most likely condition. Hydroxyurea folate ferrous sulfate cyanocobalamin

Aside from the "creativity" of the "story" of a patient coming to a practice, this question states only: what is the best treatment for a 25-year-old female patient with a given collection of symptoms? Four choices are given.[2] This boils down to a list of symptoms and the question of how to treat those symptoms. This is factual.

---

[2] It may reasonably be inferred that the original question included in Plaintiff's materials was grammatically correct, did not include extra words or repeated spelling errors, and included numbers (or letters) before each choice. This

Plaintiff also boxed in red the words "AGMP Test 2." That term cannot be protected by copyright. Titles, short phrases, and names are not copyrightable. 37 C.F.R. § 202.1(a); *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir.1990). Any connection between that term and the question is also not protected.

The questions contained within the flashcards in the FAC ¶¶120 and 123, Exhibit A pages 4, 6 (top), 7, 8 (bottom), and Exhibit D are all in the form of the question described above. The "creativity", if any, is limited to the "story" of a visit of a person to a nurse. The list of symptoms, choices, and the name of the test are not protectable. Some of these flashcards include the word "Barkley," a word not protectable by copyright. Many include student-created shorthand.

The content of other flashcards in Exhibit A (page 5 (top), 6 (bottom), 8 (top), 9, 10, 11 (bottom)) are even less "creative," disposing of the "story" and, in some cases, of the choices.

The remaining flashcards of content allegedly owned by Plaintiff, Exhibit A (pages 2, 3, and 11 (top)) are non-copyrightable phrases, such as "Total Iron Binding Capacity (TIBC)" (page 2).

Plaintiff did not include other allegedly protected content in the FAC. The only reasonable inference is that Plaintiff has pled its "*best case,*" and, therefore, any other alleged infringement fares no better under this analysis. *See, e.g., Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (when a "plaintiff had had a fair opportunity to make out their case in their supplemental complaint" the court can conclude that "the specific allegations in the amended complaint constitute the plaintiff's *best case*" (emphasis added)). Plaintiff was on notice that the validity of its copyrights was at issue; the matter was briefed in the initial Motion to Dismiss

---

shorthand was created by the user who uploaded the question, *i.e.*, the user transformed the formal question into an informal study tool for personal use.

("MTD"). (Dkt. 27-1, pp.15-16.) Plaintiff did not contest this assertion in its Opposition to the Initial MTD and did not address it in its FAC.

Plaintiff's works shown in the FAC are alleged to be part of larger study materials. These may be considered "compilations," which is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 USCS § 101. There was no selection by Plaintiff here; the selection of facts was dictated by exams written by third-parties, which limits any copyright protection that the asserted works may merit. *Feist Publ'ns, Inc.*, 499 U.S. at 348-49.

*Feist* guides: "The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. . . . This inevitably means that the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement. . . . 'The very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers.'" *Id*.

Plaintiff alleged that its works consist of "printed study manuals, practice questions, digital study materials, recorded courses, and more." FAC ¶1. Plaintiff's trademark registrations add similar content. FAC, Exhibit C. Here, the accused uses are none of these. They are individual cards that have been "restated or reshuffled".

To the extent there has been any copying, it is not directed to any protectable elements of Plaintiff's works. The "story" element is only minimally creative and has thin protection. The format of study guides is also not protectable.

Plaintiff may have expended significant resources into compiling its works and believe it unfair that "much of the fruit of [its] labor may be used [by others]

without compensation." *Harper & Row, Publrs. v. Nation Enters*., 471 U.S. 539, 589 (1985). However, copyright does not reward the "sweat of the brow." *Feist Publ'ns, Inc*., 499 U.S. at 354. The protection here, if any, is thin.

> b. *The Asserted Works are Subject to the Limiting Doctrines of Merger and Scènes à Faire*

Merger limits copyright protection for the expression of facts that may be expressed in only a few ways. *Ets-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1082 (9th Cir. 2000). *Scènes à faire* limits copyright protection when the expression embodied in the work necessarily flows from a commonplace idea. These doctrines are "prophylactic device[s] to ensure that courts do not unwittingly grant protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea." *Rassamni v. Fresno Auto Spa, Inc*., 365 F. Supp. 3d 1039, 1047 (E.D. Cal. 2019).

Here, since there are only so many ways to list symptoms and ask for a diagnoses or treatment, the expression of the facts is limited by the merger limitation. The presentation of questions as multiple choice and the format of study guides are limited by the *scènes à faire* doctrine.

> c. *Quizlet is not Liable for Direct Copyright Infringement*

"A direct infringement claim turns on who made the copies. A plaintiff must show causation (also referred to as volitional conduct) by the defendant. This requires conduct by the defendant that can reasonably be described as the direct cause of the infringement." *Oracle Am., Inc. v. Hewlett Packard Enter. Co*., 971 F.3d 1042, 1053 (9th Cir. 2020). *See also, Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014).

Here, as Plaintiff acknowledged, Quizlet's users, not Quizlet, uploaded the accused content. Quizlet is therefore not liable for direct infringement. *See, VHT Inc. v. Zillow Grp., Inc*., 918 F.3d 723, 737 (9th Cir. 2019) (finding that users select and upload all content and, therefore, there was no volitional conduct by the accused

18

platform). Quizlet is also not liable for direct infringement because any display of the uploaded content is the result of its users' conduct followed by an automated process without human intervention or control. *Id.* at 737-38 (finding that "Zillow's automated processes storing or caching VHT's photos are insufficiently volitional" to constitute direct infringement and noting that "courts have found no direct liability where an online system responds automatically to users' input . . . without intervening conduct by the website owner" (omission in original)).

The FAC also alleges direct infringement based on the AI output. However, the FAC itself concedes that the *user* chooses from many options ("Learn," "Test," "Match" and "Blast") to generate output. FAC ¶119. Quizlet does not engage in volitional conduct related to the AI output.

### d. There is no Vicarious Infringement[3]

The FAC asserts that the content uploaded by users to Quizlet.com infringes Plaintiff's copyrights; therefore, if that content is used to train an AI model, and the AI outputs infringing material, Quizlet is liable for vicarious infringement. However, "there is no precedent in the law of copyright for the imposition of vicarious liability on such a theory." *Sony Corp. of Am.*, 464 U.S. at 439.

Quizlet provides a platform "that is generally capable of copying the entire range of [information in the world]: those that are uncopyrighted, those that are copyrighted but may be copied without objection from the copyright holder, and those that the copyright holder would prefer not to have copied." *Id.* at 436. Quizlet forbids posting infringing content and has no actual knowledge of infringing instances. Under long-standing Supreme Court precedent, there is no vicarious infringement.

---

[3] The original complaint did not allege vicarious infringement and therefore it was not addressed in the first MTD. In addition to the defenses presented here, Quizlet's DMCA safe harbor protection preempts liability for vicarious infringement.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

Courts consider two factors for a vicarious infringement analysis. Following a showing of direct infringement by a third-party, a plaintiff must show that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *See, Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*, 710 F.3d 1068, 1071 (9th Cir. 2013).

A defendant exercises control over a direct infringer when he has the right and ability to stop or limit the directly infringing conduct. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Here, Quizlet cannot "stop or limit the directly infringing conduct" and therefore there is no vicarious infringement. *Id.*

A financial benefit exists where the availability of infringing material acts as a "draw" for customers, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017). The allegedly infringed content, directed to one field of study, is not the "draw." Quizlet's service is provided and used for unlimited fields of study, with millions of flashcards uploaded to Quizlet to-date. The tiny percentage of that content that is possibly infringing is not the "draw." *Adobe Sys. v. Canus Prods.*, 173 F. Supp. 2d 1044, 1053 (C.D. Cal. 2001) (implying that the small number of infringing articles was insufficient to support a conclusion that these items provided "a significant draw").

### e. The Accused Use is Fair Use

"Fair use is a mixed question of law and fact." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2007). When, taking all allegations in a complaint as true and no material facts are in dispute, a district court is free to decide the issue of fair use on a motion to dismiss. *Id.* at 529 (citing *Harper & Row*, 471 U.S. at 560). Accordingly, courts around the country routinely decide a motion to dismiss based on copyright fair use. *See, e.g., Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 322 (5th Cir. 2022); *Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 88 (S.D.N.Y. 2020); *Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342,

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

356 (S.D.N.Y. 2022); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 395 (S.D.N.Y. 2020).

The well-settled objectives of the Copyright Act are to enrich the general public through access to creative works "by striking a balance between . . . encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016). The fair use doctrine 'permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Andy Warhol Found. for the Visual Arts, Inc.*, 598 U.S. at 547. Additionally, "in applying the fair use provision, 'copyright's protection may be stronger where the copyrighted material . . . serves an artistic rather than a utilitarian function.'" *Id.* (omission in original).

In this case, to the extent there has been copying of any protectable elements, this copying constitutes fair use. Plaintiff's asserted content is compilations of factual study material, presented in a static manner, that provides students with (perhaps) comprehensive but limited study material. The material is generic, not customizable, and not interactive.

In contrast, the accused uses are different compilations of facts, "restated and reshuffled" (and changed in other ways, too) in a different format and arrangement. The content is personalized by students to meet and accommodate their individual studying styles. The content is dynamic, and students have many choices on how the content is presented. The content is interactive; questions are asked to the student in a conversational style, and students have options to generate games to aid in their study. The study modes are theoretically unlimited.

Taking all allegations of fact in the FAC as true and drawing all reasonable inferences, there can be no dispute regarding facts material to a determination of fair use, and the issue is therefore ripe for decision.

### i. A detailed look at the accused uses.

The FAC first addresses a product called QChat. FAC ¶13. The FAC itself explains how QChat is highly transformative: "the AI may not always present the same examples or topics when Q-chat is activated, whether through a shared link or by pasting the Internet web address. This means the AI generates different topics each time. Q-chat is designed to evolve continuously, starting with a randomly selected flashcard topic and then providing definitions and guidelines before leading into a question." In other words, the AI provides unlimited modes of study based on definitions, guidelines, and questions on a "different topic[] each time." This ability to provide unlimited and "different each time" topics differs from Plaintiff's static, limited, and always-the-same content.

The FAC purports to show an example of QChat in ¶166 by reproducing two screenshots. The first is the flashcard reproduced above regarding a 25-year-old woman with, *inter alia*, fatigue, headaches, and difficult breathing. The next screenshot is:



MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

313153794v.1

This screenshot shows a conversational-style output asking an open-ended question about a 42-year-old patient with back pain. This includes nothing that Plaintiff has ever claimed to own. The expression is conversational and engages students in "fun" and "more effective" study. Plaintiff's asserted content does not engage students in conversation. Plaintiff has not alleged what content may have been copied by this output or what elements of this output may have any copyright protection. In this case, there is no copying at all. A fair use determination is not required to find non-infringement (although, to the extent there is any copying, it is fair use).

Plaintiff illustrates other alleged infringement via different AI modes in ¶¶119-126. These modes, according to the FAC, are called "Learn," "Test," "Match," and "Blast." The FAC alleges that the process to generate output begins with a flashcard. FAC ¶120. Students are then presented with a series of two questions, each with five choices: "How do you want to practice?" and "Set up your test." Quick math yields a minimum of 25 different combinations of choices. Further, each choice has at least two options—aside for the choice regarding number of questions, which has 100 options—creating at least 10,000 different study modes. Plaintiff's product does not come close to offering this type of personalized study experience.

Plaintiff then includes a screenshot (and Exhibit D) which purports to be an output when, after the student selects the choices, the student hits "Start Test." FAC ¶123. This test is generated by questions alleged to have been written by Plaintiff. In other words, they were not generated by AI. However, as explained above, any "creativity" in these factual questions is minimal and is subject to the doctrines of merger and *scènes à faire*. Any protection for these flashcards is thin. Further, since the student choose the topic, the number of questions, the type of question, and the difficulty level, this output, "restated and reshuffled" (*Feist,* 499 U.S. at 349) is transformed into a personalized study mode for the student. The process of a search

engine in bringing up content related to a query is not infringing. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003).

The FAC then describes the "Blast" function. After a student directs the platform to "play a game of Blast," the output is:



Plaintiff claims that this "game" is "derived from" its "exam questions." However, there is no discernable relationship between this "game" and anything that Plaintiff claims to own. The expression is not remotely similar. Plaintiff cannot own the term, for example, "OTC analgesics relaxation". Fair use need not even be considered.

The FAC then moves on to a feature called "Combine Sets." FAC ¶132. This is no more than a search engine bringing up relevant results when a search query in entered. This is not infringing. *Kelly*, 336 F.3d at 822.

Finally, Quizlet.com permits a student to "generate a practice test." FAC ¶133. The included screenshot states that this test is "designed for you.," *i.e.*, it is personalized to the preferences and needs of the user. This is transformative use.

An in-depth look at the four statutory fair use factors shows, as a matter of law, that the accused uses are fair and not infringing.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

### ii. Factor 1: The purpose and character of the use

This factor looks to whether the use is of a commercial nature and whether it is "transformative," "add[ing] something new, with a further purpose or different character" to the asserted use. 17 U.S.C. § 107(1); *Google,* 593 U.S. at 44.

The accused use is non-commercial: Under *Sony,* to determine whether the accused use is commercial, the relevant use is the original infringing use, not any downstream use. *Sony,* 464 U.S. at 442. Sony provided a device that was capable of recording content that was shown on TV, such that viewers were able to "time shift," that is, to watch the content at any time. The Court found the use was for a personal, non-commercial entertainment purpose. That Sony's downstream use—selling the devices—was commercial, was not relevant. *Id.* at 442-43.

The Ninth Circuit held similarly in *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.* (*Galoob*), 964 F.2d 965 (9th Cir. 1992). Galoob was accused of making a device that changed the output from a game cartridge when used with Nintendo's Entertainment System. The court explained that the inquiry should be directed to the alleged direct infringement—by consumers who purchase and use Galoob's product to create alleged derivative works—and not to Galoob's provision of the device. *Id.* at 970. Galoob's device was useless by itself; it could only enhance the video games' output.

Here too, the underlying accused infringement is the non-commercial use by students to help them study. Any commercial benefit that Quizlet receives from the use is not relevant, even "if the platform is obviously acting in its own commercial self-interest". *Id.* at 970. Quizlet's platform is "useless by itself"; it can only be used to enhance content uploaded by third-parties. The accused use is therefore presumptively fair.

The accused use is "transformative."

In *Kelly v. Arriba,* Arriba had an internet platform onto which it, with commercial intent and purpose, uploaded images from other websites. Users could

25

use Arriba's platform to search for images. The court held that Arriba's uploading of content for the purpose of providing search tools to users was transformative because it "improv[ed] access to information." *Kelly*, 336 F.3d at 819. Quizlet's platform is similarity transformative, providing a search engine by which students may upload content and gain access to information uploaded by others.

In *Google* too, the Supreme Court held that Google's use of the plaintiff's code was transformative because it sought "to expand the use and usefulness of Android-based smartphones." 593 U.S. at 30. Here, Quizlet's users use of the copyrighted content likewise "seeks to create new products"; "seeks to expand the use and usefulness of [static test preparation materials]"; and thus "offers [students and teachers] a highly creative and innovative tool for [studying]." *Id*.

Each accused use is non-commercial and highly transformative. This factor weighs heavily toward a finding of fair use.

### iii.  Factor 2: the nature of the copyrighted work

Plaintiff's asserted content has thin, if any, protection. See *supra*, Section V(a). Copyright is intended to protect creative works. Here, the works are fact-based, arranged in conventional ways with no creativity, and therefore not of the type with which copyright is concerned.

Further, this factor leans toward fair use when the asserted works were published before the accused works, as they were here. *Harper & Row*, 471 U.S. at 539 (1984).

This factor favors a finding of fair use.

### iv. Factor 3: the amount and substantiality of the portion
### used

This factor considers whether the protected elements of the portion used is reasonably relative to purpose of the use. *Galoob*, 964 F.2d at 970. Even where large portions of a work are copied wholesale, so long as that portion is reasonable, this factor weighs in favor of fair use. *Google*, 593 U.S. at 49.

Here, there is no copying of possibly protected elements, *i.e.*, the compilation. Students may find it helpful to copy questions onto flashcards as part of their personal study routine. Thus, students have copied no more than is necessary for the transformative purpose. This factor weighs in favor of fair use.

### v.    Factor 4: the effect of the use upon the market for or value of the copyrighted work

Plaintiff's entire pleading regarding the alleged economic harm is: "Because of Quizlet's copyright infringement, Barkley suffered damages and Quizlet earned profits Quizlet otherwise would not have earned." FAC ¶49. This is a recitation of a legal conclusion without any facts.

The relevant inquiry for factor 4 is "not just the amount of the loss, but also the source of the loss." *Google*, 593 U.S. at 35. Courts must limit their analysis to "harm that results because the secondary use serves as a substitute for the original work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014). Additionally, courts "must take into account the public benefits the copying will likely produce." *Google*, 593 U.S. at 35.

Here, the market to be considered is "test preparation materials for nursing practitioner exams"—the only market in which Plaintiff participates. For Plaintiff to succeed in showing any economic harm that would weigh against fair use, it would need to show that:

1) The only competition in that market is from Quizlet, such that any student who does not study with Plaintiff's materials must be using Quizlet and not a third-party test preparation provider;

2) Students who purchase content from Plaintiff and also upload it to Quizlet consider Quizlet to be a "substitute" for Plaintiff's works;

3) Students who search for "Barkley", "nursing studies", or a term relevant to nursing studies on Quizlet.com rely solely on the content included in the results to prepare for their exams, without concern that the content may not be

27

comprehensive or may have been copied incorrectly by the user who uploaded that material;

4) Students who employ the AI tools available on Quizlet.com do not do so for additional modes of studying and consider those modes a "substitute" for the content that is, allegedly, already found on Quizlet.com in a manner identical to Plaintiff's content; and

5) The public benefit to advancing the test preparation market and providing individuals with personalized study content is outweighed by Plaintiff's interest in protecting a thin copyright to factual content.

If the Court were to make these inferences, it would be handing Plaintiff a monopoly over the test preparation materials market for nursing studies, a perversion of the law. There is no precedent in copyright law for such a monopoly.

### vi. Weighing the Factors:

Each factor weighs in favor of fair use. Taking every pled fact as true, making every reasonable inference that may benefit Plaintiff, and applying common sense, any copying in this case is non-actionable fair use. The Court should, accordingly, dismiss this case with prejudice.

### VI. ARGUMENT – Trademark and Related Claims

Plaintiff alleges trademark infringement of its marks BARKLEY & ASSOCIATES. Plaintiff must prove that: "(1) it has a protectible ownership interest in the mark; and (2) the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011).

First, there is no volitional conduct by Quizlet. Quizlet does not itself use Plaintiff's mark. Moreover, there has been no use of any protected mark, which includes the words "& Associates." Plaintiff has not alleged any use of the mark "Barkley & Associates" together. "Barkley" alone does not identify Plaintiff as a source; this is demonstrated in the screenshot included in the FAC at ¶132:



This screenshot displays the results for search of the word "Barkley" on Quizlet.com. Quizlet has no information to discern whether the two results listed in the center of the page refer to Plaintiff, but the five results on the right side of the page are not related to nursing studies and cannot be referring to Plaintiff. The word "Barkley" alone, then, does not indicate that the source of any content is Plaintiff.

Further, Plaintiff cannot establish a likelihood of confusion. "[L]ack of evidence about actual confusion after an ample opportunity for confusion 'can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion.'" *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002). Here, Plaintiff's sole attempt to identify an instance of actual confusion is an email that states: "Consumers are also becoming confused and reaching out to Barkley thanking them for materials posted to Quizlet." FAC ¶¶88. That the consumers reached out to Barkley to thank them for materials posted to Quizlet illustrates that there is no confusion as to source: consumers are aware that the content comes from Barkley.

To the extent there has been any use of Plaintiff's mark, that use is nominative fair use. Nominative fair use "is a use of another's trademark to identify the trademark owner's goods or services. This is not an infringement so long as there is no likelihood of confusion. This has been dubbed a non-confusing 'nominative use' because it 'names' the real owner of the mark." 3 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.). Trademark infringement claims are routinely dismissed on nominative fair use grounds at the motion to dismiss stage. *See, e.g.*, *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1112 (S.D. Cal. 2017) (collecting cases).

A user who uploads content to Quizlet may include, for his own reference, a note as to where he first saw the content. He therefore knows the source of the content. A user who searches for the term "Barkley" is looking for content that is sourced from Barkley. This is nominative fair use.

Accordingly, the Court should dismiss the trademark infringement claims.

### a. *The Related Claims Rise and Fall with the Trademark Claims*

Plaintiff alleges other competition claims that rise and fall with the federal trademark infringement claim. To prove these claims, Plaintiff "must prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion." *Charisma Brands, LLC v. AMDL Collections, Inc.*, 2019 U.S. Dist. LEXIS 208192, at *10 (C.D. Cal. Sep. 3, 2019). Therefore, these claims fail with the trademark infringement claim.

### VII.  CONCLUSION

For the foregoing reasons, Quizlet respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety for failing to state claims upon

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1

which relief may be granted pursuant to FRCP 12(b)(6).

Dated: May 14, 2025                    WILSON, ELSER, MOSKOWITZ,
                                             EDELMAN & DICKER LLP

                                       /s/ Colin V. Quinlan
                                       Colin V. Quinlan
                                       Attorneys for Defendant Quizlet, Inc.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

313153794v.1

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Quizlet, Inc., certifies that this brief contains 6,703 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 14, 2025                    */s/ Colin V. Quinlan*
                                       Colin V. Quinlan

32

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
313153794v.1