UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARKLEY & ASSOCIATES, INC., | Case No.: 2:24-cv-05964-WLH-E |
| Plaintiff, | **ORDER RE MOTION TO DISMISS FIRST AMENDED COMPLAINT [87]** |
| v. | |
| QUIZLET, INC., | |
| Defendants. | |

Before the Court is Defendant Quizlet, Inc.'s ("Quizlet") Motion to Dismiss ("Motion") Plaintiff Barkley & Associates, Inc.'s ("Barkley") First Amended Complaint ("FAC"). (Docket No. 87). The court heard oral argument on June 20, 2025. For the reasons set forth below, the Court **DENIES** Defendant's Motion.

## I.    BACKGROUND

### A. Factual Background

Barkley is a test preparation company that creates and sells proprietary study materials for nurse practitioner certification exams. (FAC ¶¶ 9–12). These materials include original multiple-choice questions, clinical case vignettes, and comprehensive study guides, which Barkley alleges are protected under U.S. copyright law. (FAC ¶¶ 16–19, 42–47).

Barkley alleges that Quizlet infringed its copyrights in four primary ways. First, Barkley claims that users uploaded its materials to Quizlet's platform, making them publicly accessible in violation of Barkley's rights. (FAC ¶¶ 21–31). Second, Barkley alleges that Quizlet itself directly copied Barkley's materials to develop and train "Quizlet+ AI," an artificial intelligence product that generates flashcards, summaries, and other derivative content that closely mimics Barkley's original works. (FAC ¶¶ 33–37, 54–61). Barkley contends that this copying and output generation occurred without authorization and for commercial gain. (FAC ¶¶ 56–61).

Barkley further alleges that Quizlet repeatedly failed to remove infringing content in response to Digital Millennium Copyright Act ("DMCA") takedown notices and implemented internal systems that obscured the continued availability of infringing materials on its platform. (FAC ¶¶ 22–27, 53–54). Barkley also claims that Quizlet used the "Barkley" name in connection with infringing content in a manner likely to confuse consumers about the source or sponsorship of the materials. (FAC ¶¶ 29–30, 68–73).

**B. Procedural Background**

Barkley filed its original Complaint on July 16, 2024. (Dkt. 1). Quizlet moved to dismiss the Complaint, and the Court denied that motion following a hearing on November 1, 2024. (Dkt. 36). On April 11, 2025, the Court granted Barkley's motion for leave to amend and accepted the FAC as the operative pleading. (Dkt. 80).

Quizlet filed the present Motion on May 14, 2025. (Dkt. 87). Barkley filed its opposition on May 30, 2025 (Dkt. 93), and Quizlet filed its reply on June 6, 2025. (Dkt. 96).

**II.   LEGAL STNADARD**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court, however, is not required to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.  A claim is considered to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

**III.   DISCUSSION**

In seeking to dismiss Barkley's FAC, Defendant Quizlet argues that (1) the asserted works are not protected by copyright because they consist of facts, short phrases, or unprotectable ideas; (2) any alleged copying is excused under the merger and scènes à faire doctrines; (3) Barkley fails to state a claim for direct copyright infringement; (4) Barkley fails to state a claim for vicarious copyright infringement; (5) the use of Barkley's materials constitutes fair use as a matter of law; and (6) Barkley's trademark and unfair competition claims fail because Quizlet did not use the full registered mark and there is no likelihood of confusion.  The Court addresses each argument in turn.

**A. <u>Copyright Infringement</u>**

*1. The Alleged Works Are Protectable Under Copyright Law*

To state a claim for copyright infringement, a plaintiff must plausibly allege (1) ownership of a valid copyright and (2) copying of protectable elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The originality standard is not demanding: "even a slight amount [of creativity] will suffice." *Id*. at 345. Works need not be novel or artistic to qualify. *Id*. at 345–46 ("[T]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."); *see also Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936).

While it is well-settled that facts and short phrases are not protectable in isolation, compilations of factual material may receive copyright protection if there is creativity in the selection, coordination, or arrangement of that material. *Feist*, 499 U.S. at 348; 17 U.S.C. § 101. As the Ninth Circuit emphasized in *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs., Inc.*, "selection is sufficiently creative when the compiler makes choices … independently … to select information from numerous and sometimes conflicting sources." 893 F.3d 1176, 1185 (9th Cir. 2018). Although compilations receive only "thin" protection, that protection still extends to the compiler's original selection and arrangement of facts. *Feist*, 499 U.S. at 349.

Quizlet argues that only the "story" portions of Barkley's materials, the clinical vignettes that introduce patients, could potentially satisfy this low originality threshold, while the remainder (e.g., the terms, diagnoses, and answer choices) are unprotectable. (Mot. at 15–18). But this framing ignores the theory pled in the FAC. Barkley does not rely on isolated short phrases like "Total Iron Binding Capacity (TIBC)" (FAC, Ex. A at 2) or course names like "AGMP Test 2." Instead, it claims that the expressive substance lies in the way it has curated, selected and organized its materials to serve an educational function. (Opp'n at 7; FAC ¶¶ 1, 17–19, 34–37, 55, 133–138).

Quizlet contends that any "selection" by Barkley is not original because the content is dictated by external licensing exams and consists of public-domain medical knowledge.  (Mot. at 17).  But that argument conflates facts with expression.  The fact that Barkley draws from commonly tested material does not preclude copyright protection if Barkley made original choices about how to present that material—such as which facts to emphasize, how to frame them in clinical vignettes and how to arrange answer options.  *Experian*, 893 F.3d at 1185.  At this stage, Barkley plausibly alleges expressive choices, including that its materials were curated and organized with instructional intent.  (FAC ¶¶ 1, 17–19, 34–37, 55; Opp'n at 6–8).

The FAC also plausibly alleges that Quizlet copied protectable elements of Barkley's works.  Specifically, Barkley claims that Quizlet's AI tools replicated the selection and arrangement of Barkley's curated educational content, including its clinical scenarios.  (FAC ¶¶ 55, 114–124).  Those allegations are sufficient to support a plausible inference that Quizlet copied protected expression, not merely unprotectable facts or formats.

The Motion is **DENIED** as to Quizlet's argument that the asserted works are not protectable under copyright law.

> ### 2. *The Merger and Scènes à Faire Doctrines Do Not Warrant Dismissal*

Under the merger doctrine, copyright protection does not extend to expression that is inseparable from the underlying idea, where there are only a limited number of ways to express that idea.  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000).  The scènes à faire doctrine similarly precludes protection for elements that necessarily follow from common ideas or standard techniques.  *Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1047 (E.D. Cal. 2019).  These are both limiting doctrines grounded in the principle that copyright does not protect ideas, but only their original expression.

Here, Quizlet argues that these doctrines bar Barkley's claims because there are only so many ways to list symptoms and ask for a diagnosis, and because multiple-choice questions and study guide formats are common. (Mot. at 18). But the FAC alleges more than the use of generic test formats or unadorned factual questions. Barkley identifies specific scenarios framed around fictional patient encounters, crafted with particular symptoms, detail and tone. (*See* FAC ¶¶ 56, 116, 120, 123, Ex. A). These scenarios do not "necessarily flow" from the underlying idea. *Rassamni*, 365 F. Supp. 3d at 1047.

The decision in *Rassamni* does not support dismissal. There, the court denied a motion to dismiss even assuming the plaintiff's work merited only thin protection, holding that the complaint plausibly alleged the works were "virtually identical, if not wholly identical." *Id.* at 1049 ("Even if the Copyrighted Material is a functional work, or merger or scènes à faire applied, it is still entitled to thin protection…A reasonable finder of fact could conclude that the disclaimer of liability contained within Defendants' form is virtually identical to its opposite number in the Copyrighted Material."). The same reasoning applies here. The merger and scènes à faire doctrines do not warrant dismissal at the pleading stage, where Barkley alleges copying of specific expressive choices—not merely ideas or facts—in a way that could be found "virtually identical." (FAC, Exs. A, D). The Motion is **DENIED** as to Quizlet's merger and scènes à faire arguments.

### 3. Barkley Sufficiently Alleges Direct Copyright Infringement

To state a claim for direct copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) copying of constituent original elements of the work. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Copying may be shown directly or circumstantially by alleging access and substantial similarity. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). A plaintiff must also allege that the defendant engaged in "volitional conduct," that is,

6

conduct that can reasonably be described as the direct cause of the copying. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020). Volition is required because copyright law does not impose strict liability; merely operating a system that responds automatically to user input is generally insufficient. *See VHT Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019); *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014).

Quizlet argues that it does not engage in volitional conduct because users upload the content and choose how to interact with the platform's features such as "Learn," "Test," "Match" and "Blast." (Mot. at 18). Quizlet also contends that any display of uploaded content results from "an automated process without human intervention or control." (Mot. at 19). In support, Quizlet cites *VHT*, where the Ninth Circuit held that the defendant's passive storage and display of real estate photos— submitted by third parties through licensed intermediaries—was insufficiently volitional. *Id.* (citing *VHT*, 918 F.3d at 732, 737).

Here, the FAC alleges more than passive hosting or automated processing. Barkley claims that Quizlet "obtained copies of multiple different Barkley study resources," "created unauthorized copies," "plasters the Quizlet name" on the copied content and "used Barkley's copyrighted materials to train Quizlet+ AI." (FAC ¶¶ 10– 12, 45–47, 133–138). These allegations suggest affirmative acts of reproduction and use by Quizlet itself. Unlike in *VHT*, the FAC alleges that Quizlet did not merely operate a platform, but directly participated in creating and distributing infringing material.

The Motion is **DENIED** as to Quizlet's argument that the FAC fails to state a claim for direct copyright infringement.

### 4. Barkley Plausibly Alleges Vicarious Copyright Infringement

To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant "has the right and ability to supervise the infringing conduct" and "a direct financial interest in the infringing activity." *Tremblay v. OpenAI, Inc.*, 716

F. Supp. 3d 757, 777 (N.D. Cal. 2024) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007)).

Quizlet argues that Barkley's theory lacks legal support and that, under *Sony Corp. of Am. v. Universal City Studios, Inc.*, there is "no precedent" for vicarious liability in this context. (*See* Mot. at 19 (citing *Sony*, 464 U.S. 417, 439 (1984)). But *Sony* addressed contributory liability for a manufacturer that merely sold home recording equipment capable of both lawful and unlawful uses—not a defendant who directly used copyrighted works, integrated them into a product and profited from their exploitation. *See id.* at 439 (rejecting contributory liability where manufacturer "sold equipment with constructive knowledge" but had no control over or benefit from users' infringing conduct). The FAC, unlike in *Sony*, alleges that Quizlet itself used Barkley's copyrighted materials to train its AI, designed tools to reproduce similar output, and reaped financial benefits from those features. (FAC ¶¶ 114–124).

Quizlet also argues it lacks the ability to stop or control infringing uploads and that any infringing content is not a significant driver of its business. (Mot. at 20). But the FAC alleges more than passive hosting of third-party uploads. It asserts that Quizlet "obtains Barkley's copyrighted works, sells them and uses them to train Quizlet+ AI," and that Quizlet has integrated this content into a paid product it controls and operates. (FAC ¶¶ 114, 119, 122–124). These allegations are sufficient to infer both the ability to supervise the use of the materials and a financial interest in doing so.

The Motion is **DENIED** as to the vicarious copyright infringement claim.

### 5. *The Fair Use Defense*

The Copyright Act of 1976 provides that "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means … for purposes such as criticism, comment, news reporting, teaching, … scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Courts assess fair use by weighing the following factors: "(1) the purpose and character of the use,

8

including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.*

Although fair use may be raised on a motion to dismiss in rare cases, courts generally decline to adjudicate the defense at the Rule 12(b)(6) stage because it requires resolving factual questions that are not amenable to resolution on the pleadings. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) (fair use is a "mixed question of law and fact"); *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009) ("[I]n order to undertake the fair use analysis, a court usually must make factual findings, or rely on undisputed or admitted material facts."); *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985); *see also Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997).

Here, the FAC alleges that Quizlet copied Barkley's copyrighted works—including entire curated question sets—and used them to train an AI tool offered as part of a paid subscription. (FAC ¶¶ 45–47, 114–124). Quizlet counters that any use of Barkley's works is highly transformative and non-commercial. (Mot. at 25–26). But whether the accused uses are transformative, whether they serve a different function than Barkley's materials and whether they target the same market are all fact-intensive questions. *Four Navy SEALS v. Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005); *Bell v. Eagle Mountain-Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) ("When discovery is needed to flesh out how these factors tilt, a ruling at the pleading stage is premature."). Each factor raises factual questions that preclude dismissal at this stage.

Under Factor One (purpose and character), Barkley alleges that Quizlet's AI-generated outputs closely resemble its proprietary test prep materials and serve the same pedagogical function for the same student audience. (FAC ¶¶ 47, 124–128).

9

Although the use of copyrighted works for AI training may in some cases be transformative, transformation alone does not end the inquiry.  As noted in *Kadrey v. Meta Platforms, Inc.*, "there is certainly no rule that when your use of a protected work is 'transformative,' this automatically inoculates you from a claim of copyright infringement."  No. 23-CV-03417-VC, 2025 WL 1752484, at *2 (N.D. Cal. June 25, 2025).  There, the court emphasized that even a transformative large language model "involves the creation of a product with the ability to severely harm the market for the works being copied," and that market harm remains "more important than the purpose for which the copies are made."  *Id*.  The allegations here place Quizlet's alleged use closer to *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc*., 765 F. Supp. 3d 382, 401 (D. Del. 2025), motion to certify appeal granted, No. 1:20-CV-613-SB, 2025 WL 1488015 (D. Del. May 23, 2025), where the court held that copying Westlaw's headnotes to power a directly competing AI tool was not transformative.

Quizlet invokes *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), arguing that any use by students is non-commercial and therefore presumptively fair.  (Mot. at 24).  But Sony involved private time-shifting of broadcast television for personal home viewing.  Unlike in Sony, this use is not private consumption but alleged commercial replication.

Under Factor Two (nature of the copyrighted work), Barkley alleges that its materials are not mere compilations of facts, but original works tailored to professional exams.  (FAC ¶¶ 39–44).  Such expressive educational content is entitled to protection.  Quizlet argues that any protection is "thin" and limited to exact phrasing.  (Mot. at 23–24).  But courts have rejected similar arguments where AI systems ingest expressive text to learn patterns of word choice, syntax and structure.  *See Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 1752484, at *13 (N.D. Cal. June 25, 2025) ("So even though LLMs [large language models] may only learn about 'statistical relationships,' those relationships are the product of creative expression.  This is true even though, as discussed earlier, [LLM] consumes that

10

expression in a different way than a person would."); *see also Harper & Row*, 471 U.S. at 548 (discussing how "ordering and choice of words" are expression under even a narrow interpretation of what counts as expression).  Much like the curated legal headnotes at issue in *Thomson Reuters*, Barkley's content, as alleged, falls squarely within copyright's core.

Factor Three (amount and substantiality) "asks whether 'the amount and substantiality of the portion used' " are "reasonable in relation to the purpose of the copying." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. at 586, 114 S.Ct. 1164 (quoting 17 U.S.C. § 107(3)).  "The relevant consideration ... is not the amount of copyrighted material used by the copier, but 'the amount of copyrighted material made available to the public.' " *Fox News Network, LLC v. TVEyes*, 883 F.3d 169, 179 (2d Cir. 2018).  Here, the FAC alleges that Quizlet copied entire question sets or substantial portions thereof, allowing Quizlet subscribers to access to that content. (FAC ¶¶ 46–47, 122-124).  While wholesale copying may be permissible where the purpose is transformative, such copying cuts against fair use where the outputs directly compete with the original and perform the same pedagogical function.

Factor Four (market effect) is "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.  Barkley alleges that Quizlet's use displaces its own products in the nursing exam prep market.  (FAC ¶¶ 31, 48-49, 122–138).  Courts have consistently found that when AI-generated outputs substitute for the original and compete in the same commercial space, the market harm weighs heavily against fair use.  *See Thomson Reuters*, 765 F. Supp. 3d 382, at 400 (competitive displacement precludes fair use).  Unlike in *Kadrey*, where the court granted summary judgment after finding no evidence that large language model outputs resembled the plaintiffs' works or caused substitution, Barkley plausibly alleges both substitution and market harm, rendering this issue inappropriate for resolution on the pleadings.  *See Kadrey*, No. 23-CV-03417-VC, 2025 WL 1752484, at *3 ("This ruling does not stand for the proposition that Meta's use of copyrighted

materials to train its language models is lawful. It stands only for the proposition that these plaintiffs made the wrong arguments and failed to develop a record in support of the right one."). While Quizlet conceded at oral argument that its platform targets the same market as Barkley—nurse practitioner students—it argued that users upload materials to supplement, not replace, Barkley's products.  But it is equally, if not more, plausible that subscribers are paying for access to Barkley's proprietary content that they otherwise lack, using Quizlet as a lower-cost alternative to Barkley's offerings.

Quizlet's fair use defense depends on how its AI model was trained, what it outputs, and whether those outputs replicate Barkley's materials or compete with them in the same market.  Those questions are not amenable to resolution at the Rule 12(b)(6) stage. *Bell*, 27 F.4th at 320.  The Motion is **DENIED** to the extent it seeks dismissal based on fair use.

### 6.  Trademark and Unfair Competition Claims

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege (1) ownership of a valid, protectable mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).  Likelihood of confusion is typically analyzed under the eight-factor test from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), which includes: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care; (7) defendant's intent; and (8) likelihood of expansion.

When a defendant uses a plaintiff's mark to describe the plaintiff's own product, rather than the defendant's, courts apply the nominative fair use test. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  Under *New Kids*, nominative fair use applies where: (1) the product or service in question is not readily identifiable without using the trademark; (2) the defendant uses only so

much of the mark as is reasonably necessary; and (3) the defendant does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id.* This test replaces the usual *Sleekcraft* confusion analysis where it applies. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002).

Dismissal at the pleading stage is generally disfavored because both the *Sleekcraft* and *New Kids* inquiries are fact-intensive. *See Dr. Seuss Enters., L.P.*, 256 F. Supp. 3d at 1112 (considering nominative fair use on a motion to dismiss, but only where no material facts were in dispute); *Belin v. Starz Ent., LLC*, 2024 WL 4720795, at *6 (C.D. Cal. Sept. 20, 2024) ("The existence of consumer confusion is a fact-intensive analysis that does not lend itself to a motion to dismiss").

Here, Barkley alleges it owns two registered trademarks for "Barkley & Associates," covering educational and test preparation materials. (FAC ¶¶ 8, 23 & Ex. C). The FAC alleges that Quizlet retained Barkley's trademark on copied materials "to fool consumers into thinking they were purchasing legitimate Barkley products" (FAC ¶ 25), and that Quizlet's conduct caused and is likely to cause confusion as to the source of the content. (FAC ¶ 48). One consumer allegedly contacted Barkley to thank it for materials they encountered on Quizlet, which Barkley offers as evidence of source confusion. (FAC ¶ 88).

Quizlet does not engage with all the *Sleekcraft* factors but instead argues that it has not "used" Barkley's mark and that any references to "Barkley" constitute nominative fair use. (Mot. at 30). But nominative fair use is a limited defense. Here, the third prong under *New Kids* is especially important: the defense fails if the alleged use implies that the plaintiff endorses or is affiliated with the defendant's product. 971 F.2d at 308. The FAC alleges that Quizlet did more than merely reference Barkley's name—it "retained Barkley's trademark" on copied materials to mislead consumers into believing the content was authorized or originated from Barkley. (FAC ¶¶ 25, 48, 88). The allegation that at least one consumer reached out to thank Barkley for materials found on Quizlet supports a plausible inference that users

perceived an affiliation between the two.  At the pleading stage, this is sufficient to preclude dismissal under the nominative fair use doctrine.

To the extent Barkley's related claims, such as unfair competition, are based on the same alleged unauthorized use of its mark, they rise and fall with the trademark claim.  *Charisma Brands, LLC v. AMDL Collections, Inc.*, 2019 WL 6218786, at *4 (C.D. Cal. Sep. 3, 2019).

Accordingly, the Motion to dismiss the trademark and related claims is **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Quizlet's Motion in full.

**IT IS SO ORDERED.**

Dated:  September 11, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

14