TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
NICHOLAS A. SANTOS (CSB No. 335767)
nsantos@fenwick.com
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

DIANA C. BUCK (CSB No. 339314)
dbuck@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendant
QUIZLET, INC.

BRIAN S. TAMSUT (No. 322780)
btamsut@socalip.com
MICHAEL D. HARRIS (No. 59470)
mharris@socalip.com
JONATHAN P. PEARCE (No. 245776)
jpearce@socalip.com
SOCAL IP LAW GROUP LLP
310 N. Westlake Boulevard, Ste 120
Westlake Village, CA 91362
Telephone: 805.230.1360
Facsimile: 805.230.1355

Attorneys for Plaintiff
BARKLEY & ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

BARKLEY & ASSOCIATES, INC.,

Plaintiff,

v.

QUIZLET, INC.,

Defendant.

Case No.: 2:24-cv-5964-WLH-E

**JOINT BRIEF ON QUIZLET, INC.'S MOTION FOR SUMMARY JUDGMENT**

Date: July 10, 2026
Time: 11:00 a.m.
Ctrm.: 9B, 9th Floor
Judge: Hon. Wesley L. Hsu

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL



FENWICK & WEST LLP

# TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

I. QUIZLET'S INTRODUCTION .......... 1

II. BARKLEY & ASSOCIATES' INTRODUCTION .......... 2

STATEMENT OF FACTS .......... 4

I. QUIZLET'S STATEMENT OF FACTS .......... 4

A. The Parties .......... 4

1. Barkley & Associates .......... 4

2. Quizlet .......... 5

a. Quizlet's AI-Enhanced Study Tools .......... 6

b. Quizlet's DMCA Compliance .......... 7

3. Plaintiff Failed to Identify Alleged Instances of Infringement and the Infringed Works. .......... 8

II. BARKLEY & ASSOCIATES' STATEMENT OF FACTS .......... 9

A. The Parties and Barkley's Intellectual Property Catalog .......... 9

B. Quizlet now is a copyright infringer because it became an autonomous AI publisher. .......... 10

C. Quizlet's Active Co-Branding, Monetization, and Interactive Exploitation .......... 11

D. Quizlet's DMCA record does not cover every infringement of Barkley's intellectual property, and it still does not comply. .......... 13

THE SUMMARY JUDGMENT STANDARD .......... 13

ANALYSIS .......... 14

QUIZLET'S ARGUMENT 1: QUIZLET IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT. .......... 14

I. QUIZLET DID NOT DIRECTLY INFRINGE B&A'S COPYRIGHTS .......... 14

A. Quizlet did not engage in the volitional conduct required to prove direct infringement. .......... 14




FENWICK & WEST LLP

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**


B. There is no evidence that Quizlet trained AI models using Plaintiff's copyrighted works. .......... 16

II. SECTION 512(C) SHIELDS QUIZLET FROM LIABILITY .......... 17

III. QUIZLET DID NOT VICARIOUSLY INFRINGE B&A'S COPYRIGHTS .......... 20

A. Quizlet does not receive a direct financial benefit from any alleged infringement. .......... 20

B. Quizlet does not have the right or ability to supervise its users' content. .......... 21

IV. PLAINTIFF SHOULD BE PROHIBITED FROM PRESENTING EVIDENCE OF INFRINGEMENT DUE TO ITS VIOLATION OF A COURT ORDER. .......... 23

BARKLEY & ASSOCIATES' RESPONSE .......... 24

I. QUIZLET DIRECTLY INFRINGED BARKLEY'S COPYRIGHTS THROUGH AUTONOMOUS VOLITIONAL CONDUCT .......... 24

II. QUIZLET GENERATIVE AI EXPLOITATION OF BARKLEY'S WORKS INFRINGES. .......... 25

III. THE DMCA SAFE HARBOR DOES NOT PROTECT QUIZLET'S AI PUBLISHER MODEL .......... 26

IV. QUIZLET IS VICARIOUSLY LIABLE FOR PROFITING FROM AND CONTROLLING THE INFRINGEMENT. .......... 27

A. Quizlet generates a direct financial benefit via Barkley's commercial draw. .......... 27

B. Quizlet has the practical right and ability to supervise platform content. .......... 28

V. SANCTIONS PRECLUDING BARKLEY'S EVIDENCE UNDER RULE 37 ARE FACTUALLY AND LEGALLY UNWARRANTED .......... 28

QUIZLET'S ARGUMENT 2: QUIZLET IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL AND STATE TRADEMARK, TRADE DRESS AND UNFAIR COMPETITION CLAIMS .......... 29

I. THERE IS NO EVIDENCE THAT QUIZLET USED PLAINTIFF'S MARKS OR TRADE DRESS IN COMMERCE. .......... 29


FENWICK & WEST LLP

**TABLE OF CONTENTS (CONTINUED)**

**Page**

II. *DASTAR* PRECLUDES PLAINTIFF'S LANHAM ACT, STATE COMMON LAW INFRINGEMENT, AND STATE UNFAIR COMPETITION CLAIMS. .......... 32

BARKLEY & ASSOCIATES' RESPONSE: .......... 34

I. TRIABLE ISSUES OF FACT EXIST REGARDING QUIZLET'S OWN AFFIRMATIVELY VOLITIONAL USE OF BARKLEY'S MARKS AND TRADE DRESS IN COMMERCE .......... 34

II. DASTAR DOES NOT PRECLUDE BARKLEY'S TRADEMARK AND UNFAIR COMPETITION CLAIMS BECAUSE QUIZLET'S AI-DRIVEN CONDUCT EXTENDS FAR BEYOND MERELY COPYING FACTUAL CONTENT .......... 37

QUIZLET'S ARGUMENT 3: THE COPYRIGHT ACT PREEMPTS PLAINTIFF'S COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION LAW CLAIMS. .......... 38

QUIZLET'S CONCLUSION .......... 39

BARKLEY & ASSOCIATES' CONCLUSION .......... 40

FENWICK & WEST LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853 (N.D. Cal. 2023) .......... 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 13

*Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089 (N.D. Cal. 2021), *aff'd in part, appeal dismissed in part*, No. 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023) .......... 30, 36

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (1999) .......... 34

*Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78 (2d Cir. 2016) .......... 19, 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 14

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) .......... 31

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007) .......... 23, 29

*CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004) .......... 15, 16, 26

*Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026) .......... *passim*

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) .......... *passim*

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) .......... 20, 21, 27

*Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048 (9th Cir. 2023) .......... 10

*Evox Prods., LLC v. Verizon Media, Inc.*, No. 21-56046, 2022 WL 17430309 (9th Cir. Dec. 6, 2022) .......... 33

*Freeplay Music Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259 (S.D.N.Y. 2005) .......... 33

*Gibralter, LLC v. DMS Flowers, LLC*, No. 1:24-cv-00174-CDB, 2025 WL 2623293 (E.D. Cal. Sept. 11, 2025) .......... 30

*Hudson v. Universal Studios, Inc.*, No. 04-CV-6997 (GEL), 2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008) .......... 33



FENWICK & WEST LLP

*Hunley v. Instagram, LLC*,
73 F.4th 1060 (9th Cir. 2023) .......... 14

*Jordan-Benel v. Universal City Studios, Inc.*,
859 F.3d 1184 (9th Cir. 2017) .......... 4

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) .......... 38, 39

*Laws v. Sony Music Ent., Inc.*,
448 F.3d 1134 (9th Cir. 2006) .......... 39

*Lopez v. Bonanza.com, Inc.*,
No. 1:17-cv-08493-LAP, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) .......... 30

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) .......... 38

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
873 F.3d 1045 (9th Cir. 2017) .......... 18, 28

*Miller v. Glenn Miller Prods., Inc.*,
454 F.3d 975 (9th Cir. 2006) .......... 14

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) .......... 23

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) .......... 29

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997) .......... 23

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 14, 20

*Perfect 10, Inc., v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) .......... 19

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... *passim*

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV11-07098 AHM SHX, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) .......... 30

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .......... 20, 22

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
845 F.3d 1246 (9th Cir. 2017) .......... 33, 34, 37, 38

FENWICK & WEST LLP

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .................... 16, 20

*Sony Music Ent. v. Cox Commc'ns*, 93 F.4th 222 (4th Cir. 2024), and *cert. granted*, 145 S. Ct. 2841 (2025), and *cert. denied*, (145 S. Ct. 2844, 222 L. Ed. 2d 1130 (2025), *rev'd and remanded*, 146 S. Ct. 959 (2026) .................... 3, 16, 20

*Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755 (C.D. Cal. 2015).................... 34

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022 (9th Cir. 2011).................... 17

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013).................... 18, 26

*Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018).................... *passim*

*VHT, Inc. v. Zillow Group, Inc.*, 69 F.4th 983 (9th Cir. 2023).................... 24

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019).................... 15, 24, 27

*Viacom Int'l, Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y. 2010) (*remanded for factual determination*, 676 F.3d 19 (2d Cir. 2012)) .................... 17

*Yellow Cab Co. of Sacramento v. Yellow Cab Co. of N. California*, 410 F.3d 535 (9th Cir. 2005).................... 37

**STATUTES**

15 U.S.C. § 1057.................... 36

15 U.S.C. § 1065.................... 37

15 U.S.C. § 1125(a) .................... 32

15 U.S.C. § 1127.................... 30

17 U.S.C. § 101.................... 10

17 U.S.C. § 102.................... 38, 39

17 U.S.C. § 103.................... 38

17 U.S.C. § 106.................... 14, 38, 39

17 U.S.C. § 512.................... 2, 17

17 U.S.C. § 512(i).................... 18

FENWICK & WEST LLP

17 U.S.C. § 512(c) ........ *passim*
17 U.S.C. § 512(m)(1) ........ 19
Cal. Bus. & Prof. Code § 17200 ........ *passim*
Copyright Act ........ 2, 4, 20, 38
DMCA ........ 3, 10, 13, 26
Lanham Act ........ *passim*

**RULES**

Fed. R. Civ. P. 30(b)(6) ........ 8
FED. R. CIV. P. 37(b) ........ 28
Fed. R. Civ. P. 37(b)(2) ........ 23
Fed. R. Civ. P. 37(b)(2)(A)(ii) ........ 23
Fed. R. Civ. P. 56(a) ........ 13

**OTHER AUTHORITIES**

2 McCarthy on Trademarks and Unfair Competition § 10:26 (5th ed. 2024) ........ 32

FENWICK & WEST LLP

# INTRODUCTION

## I. QUIZLET'S INTRODUCTION

As the Supreme Court recently affirmed, "a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 964 (2026). Quizlet provides online study tools on its website and mobile app that students and educators use to learn and teach content that users add to Quizlet's platform. Plaintiff Barkley & Associates, Inc. ("B&A") alleges that Quizlet is liable for copyright and trademark infringement and related claims because B&A's content, logo, and part of its name appear on Quizlet's platform in materials added by its users. But no facts support B&A's claims that Quizlet has done anything other than provide content-agnostic software tools that let users create study material from user-added content. While Plaintiff's *allegations* were sufficient to state a claim, the *facts* do not support its allegations. Summary judgment should be granted to Quizlet for the following reasons.

First, B&A's direct copyright infringement claims fail because there is no evidence that Quizlet engaged in volitional conduct. Quizlet provides content-agnostic software tools with which users can create flashcards, study guides, practice tests, and other learning aids from the content they or other Quizlet users add. Quizlet's users supply the content, not Quizlet. The absence of volitional conduct means that Quizlet does not infringe, either by allowing users to create flashcards from user-generated content, or by allowing users to input content to AI tools.

Second, there is no evidence that Quizlet has used B&A content to train AI models. The evidence is undisputed that Quizlet does not develop large language AI models ("LLMs") of its own. Instead, Quizlet uses OpenAI and Google LLMs to support its AI-enhanced study tools. Quizlet's contracts with those companies prohibit them from training on content submitted by Quizlet's users through Quizlet, and there is no evidence that they have done so.



FENWICK & WEST LLP

Third, B&A's direct infringement claims fail because Quizlet is entitled to the safe harbor afforded to online service providers by Section 512(c) of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 512(c). Quizlet removed Plaintiff's notices of claimed infringement that complied with the DMCA's takedown notice requirements. And even though Plaintiff submitted non-compliant notices that did not identify its copyrighted works many times, Quizlet removed most content identified in those notices.

Fourth, no facts support Plaintiff's vicarious copyright infringement claim. There is no evidence showing that Quizlet received a *direct* financial benefit from its users' alleged infringement. To the contrary, all content that users add to Quizlet is available to all users, whether those users have paid or free accounts. Paid subscriptions afford users the ability to use certain study tools more often, not the underlying content. There are also no facts showing that Quizlet has the right or ability to control its users' uploads of allegedly infringing B&A content.

Fifth, Quizlet does not use B&A's marks or trade dress in commerce for its own services. Any appearance of Plaintiff's marks on Quizlet's website exists only because they are part of the larger textual material that users post to Quizlet's website. And because Plaintiff bases its trademark, trade dress infringement, and unfair competition claims on its marks appearing in alleged infringing copies of its copyrighted content, rather than on tangible goods, *Dastar Corp. v. Twentieth Century Fox Film Corp.* precludes those claims.

Finally, the Copyright Act preempts Plaintiff's state law trademark and unfair competition claims, which are based on its copyright infringement claims.

Accordingly, Defendant Quizlet, Inc. requests that this court enter summary judgment in its favor on each of Plaintiff's causes of action.

## II. BARKLEY & ASSOCIATES' INTRODUCTION

Defendant Quizlet seeks summary judgment by mischaracterizing itself as a passive, neutral utility provider that merely provides a "content-agnostic" bulletin

board for user-uploaded text. Relying heavily on the Supreme Court's recent decision in *Cox Commc'ns, Inc. v. Sony Music Ent.,* 146 S. Ct. 959 (2026), Quizlet incorrectly argues that it cannot be held liable for secondary copyright infringement, trademark infringement, or unfair competition because it lacks volitional conduct and operates solely at the direction of its users. Though the entire record is still disputed because there has been no expert testimony regarding AI tools and how they work, the undisputed facts show Quizlet's infringement went beyond what the DMCA allows. Quizlet crossed the line from a passive hosting service into an active, commercial content creator and brand co-opter.

First, Quizlet's own corporate admissions contradict its "no volitional conduct" defense. Quizlet's corporate representative, Sean Marrer, testified Quizlet's AI-powered study guide summaries are not user-generated. JAF 81. Rather, Quizlet takes user-ingested notes, processes them through its proprietary algorithms, and actively commands artificial intelligence systems to generate new, derivative summaries. This affirmative, autonomous synthesis of text into standalone platform content satisfies the volitional conduct requirement for direct copyright infringement.

Second, Quizlet cannot rely on *Cox Communications*. While *Cox* shields internet service providers who passively transmit or host data from contributory liability, it explicitly preserves liability where a platform provides a service "tailored to infringement" or actively induces it. *Id.* at 964. But Quizlet does not merely host raw data. It systematically funnels users into an interactive, monetized ecosystem built explicitly around Barkley's protected trade identity.

Third, Quizlet cannot hide behind the DMCA's safe harbor provisions because the provision is strictly reserved for storage "at the direction of a user." Because Quizlet uses its automated AI engines to alter, arrange, and generate new summary content from the files it receives, its operations fall outside the scope of passive user storage. Quizlet's vicarious infringement is established by its leveraging these advanced, infringing AI study tools from the draw of Barkley's famed exam

Fenwick & West LLP

preparatory materials while maintaining control over its underlying platform features. And its premium subscribers pay Quizlet for this material. It is not a passive hosting service.

Fourth, neither *Dastar Corp. v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23, 34–36 (2003) nor federal preemption preclude Barkley's trademark and unfair competition claims. Quizlet's discovery responses admitted that it generates co-branded downloadable PDF study packets that place Barkley's registered trademarks side-by-side with Quizlet's own brand name (e.g., "Barkley & Associates 3Ps FNP Study Guide Overview | Quizlet"). JAF 87. That creates consumer confusion, the hallmark of trademark infringement. This deceptive commercial exploitation of Barkley's trade identity to drive consumer traffic into Quizlet's AI provides the distinct "extra element" of consumer deception required to sustain Barkley's claims under the Lanham Act and California's Unfair Competition Law. *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1191 (9th Cir. 2017) (holding an extra element avoids preemption from the Copyright Act).

Because extensive and highly material issues of fact remain regarding Quizlet's direct involvement in AI content creation, platform monetization, and trademark manipulation, summary judgment must be denied on all counts.

## STATEMENT OF FACTS

## I. QUIZLET'S STATEMENT OF FACTS

### A. The Parties

#### 1. Barkley & Associates

Plaintiff is a continuing education publisher that provides "test preparation materials for graduate nursing students studying to become certified nurse practitioners," including live courses, at-home audio-visual courses, study manuals, practice questions, textbooks, and other study materials. Dkt. 57-2 ¶¶ 1, 7; ("First Amended Complaint" or "FAC"); Joint Appendix of Facts ("JAF") 1 & 2. The FAC attaches 12 copyright registrations B&A claims it owns and that Quizlet infringes.



FENWICK & WEST LLP

FAC ¶¶ 42-44; Dkt. 57-3; JAF 3; Joint Appendix of Evidence ("JAE") 1. Of these, only three were registered within five years of first publication, and only one was registered within three months of its first publication. JAF 4; JAE 1. All were registered in August 2023, more than three years after Plaintiff began submitting takedown requests to Quizlet. JAF 5; JAE 1. While paragraph nine of the FAC also lists a "sampling" of 14 of Plaintiff's copyrighted works, eight of which are sound recordings, Plaintiff has not alleged or provided evidence of how these were infringed on Quizlet. JAF 6 & 7.

B&A has two trademarks that are federally registered with the United States Patent and Trademark Office. U.S. Reg. No. 6,270,781 is a word mark for "Barkley & Associates." JAF 8. U.S. Reg. No. 6,272,223 is a design mark for "Barkley & Associates" in a set of concentric ovals. *Id.* B&A does not have a registered trademark for the word "Barkley" in isolation. JAF 9. The U.S. Patent & Trademark Office initially refused registration because it consisted primarily of a surname, but ultimately permitted registration of the complete phrase and design mark. JAF 10. Plaintiff also claims "common law rights in the BARKLEY & ASSOCIATES marks for [B&A's] goods and services." FAC ¶ 26.

**2. Quizlet**

Quizlet is an online service that provides study tools that students and educators use to help them learn and teach any field of study, including math, literature, languages, science, social science, arts and humanities, and many more. JAF 11. More than 60 million users interact with Quizlet. JAF 12.

Quizlet's users add the content they intend to study to Quizlet's site, and Quizlet does not dictate what they add. JAF 13 & 14. Quizlet's terms of service prohibit users from adding content that infringes third parties' copyrights, trademarks, and other rights. JAF 15. Quizlet does not add to or create study content on the service. JAF 14 & 78. Barkley's corporate representative admitted that students, not Quizlet, were responsible for copying Barkley's content and adding it

FENWICK & WEST LLP

to Quizlet's website. JAF 16. The content users add may include notes they type or paste into Quizlet's interface or documents users may upload. Users cannot add audio files. JAF 17 & 18. Once users add content, they may choose from a suite of Quizlet's study tools to present the content in ways that help them learn, including flashcards, study guides, and practice test tools. *Id*. Users have added more than 900 million study sets to Quizlet. JAF 21. Users may keep study material private to themselves or make it available to other users and visitors to Quizlet's website. JAF 22.

Quizlet does not add Plaintiff's content to its service, nor does it use content that Plaintiff has identified as infringing for its own products. JAF 23 & 79. Nor does Quizlet post its users' content to third party sites. JAF 24. Quizlet did not post Quizlet user content to a third-party site called "Study Pool" as Plaintiff has alleged, and there is no evidence that supports that allegation. JAF 25.

**a. Quizlet's AI-Enhanced Study Tools**

In addition to its core flashcard feature, Quizlet has released AI-enhanced study tools. These AI-enhanced tools include:

Learn and Test modes. These tools allow users to select a flashcard set they created or created by other users and then use the tool to study the content using various forms of study questions, such as multiple choice, true/false questions, matching questions, and written prompts. JAF 26. The Learn and Test modes may use [redacted]. JAF 27.

Practice Test mode. This tool allows students to create practice tests of questions and answers. Users must add content of their own or select content other users have added. JAF 28 & 80. At the user's direction, the content is extracted and multiple-choice questions and answers are generated from content [redacted]. JAF 29.

Q-Chat (discontinued). Quizlet formerly had a feature called "Q-Chat," which



FENWICK & WEST LLP

operated from approximately March 2023 through June 2025. JAF 30. Users could use Q-Chat, which was powered by ChatGPT, to quiz themselves on the material in a flashcard set they were studying. JAF 31. Quizlet stopped offering Q-Chat due to limited use. JAF 30.

B&A appears to mistakenly believe that Quizlet's "Match" and "Blast" game-style study tools use LLM-based AI. They do not. These games apply simple heuristics to present multiple flashcards in a set at once in an engaging way. JAF 32.

Quizlet does not build LLMs. JAF 36. Instead, it contracts with OpenAI (ChatGPT) and Google (Gemini) to support its AI-enhanced tools. JAF 35. Quizlet's agreements with those companies prohibit them from using content users submit through Quizlet to train their AI models for their general use. JAF 38. There is no evidence that Quizlet, OpenAI, or Google have used B&A content added to Quizlet to train or customize the models used for Quizlet's AI study tools.

**b. Quizlet's DMCA Compliance**

Quizlet follows policies and procedures that qualify for the DMCA's safe harbor under 17 U.S.C. § 512(c). JAF 40. Rightsholders may submit takedown notices through a designated email address or form on Quizlet's website. JAF 41. If the notification complies with Section 512(c)(3), Quizlet promptly removes the page(s) identified in the notice. JAF 42.

Quizlet has a policy for terminating repeat infringers. JAF 45. Quizlet [redacted]. JAF 46. [redacted]. JAF 47. Quizlet has terminated more than [redacted] users under its repeat infringer policy. JAF 48.

B&A has used Quizlet's DMCA notice and takedown process. JAF 49. At least as early as February 2020, B&A began emailing Quizlet requesting that it remove content from Quizlet's site. *Id.* B&A's notices were often defective. JAF 50. The initial requests asked Quizlet to remove any content from the site that used



FENWICK & WEST LLP

the word "Barkley" without providing information "reasonably sufficient to permit the [Quizlet] to locate the material" Plaintiff alleged was infringing. JAF 51. Plaintiff made this demand, despite admitting that Quizlet cannot determine whether content using the word "Barkley" is owned by Plaintiff. JAF 52. Even after Plaintiff began submitting takedown requests that identified user content on Quizlet by URL (JAF 55), the notices still failed to identify "the copyrighted work claimed to have been infringed." 17 U.S.C. § 512(c)(3)(A)(ii). Because B&A conducted only a cursory review of material on Quizlet using the word "Barkley," its notices included unrelated, non-infringing content. JAF 53, 54. And B&A did not review the content identified in its takedowns to consider whether it was fair use. JAF 58.

In 2023, Plaintiff's counsel in this case began submitting DMCA takedown requests to Quizlet. JAF 55. At the direction of Plaintiff's counsel, Plaintiff's Rule 30(b)(6) corporate representative refused to answer whether SoCal IP Law was authorized to submit DMCA request on Plaintiff's behalf and whether any consideration was given to whether content that it requested be taken down from Quizlet was fair use. JAF 56 & 57.

Quizlet keeps records of the takedown requests it has received from all rightsholders, including Plaintiff, as well as the actions it takes in response. JAF 59. Quizlet promptly removed accused content from its website when it received a proper and complete notification of claimed infringement. JAF 60. In discovery, Quizlet produced to Plaintiff a more than 16,000-page record of the sets identified in a single takedown request submitted by Plaintiff's counsel on October 29, 2024. JAF 61. As of the end of 2025, Quizlet had removed 3,881 unique study sets in response to Plaintiff's formal and informal takedown requests. JAF 62.

### 3. Plaintiff Failed to Identify Alleged Instances of Infringement and the Infringed Works.

Quizlet asked B&A to identify in interrogatory responses each instance of infringement B&A contends Quizlet committed and the specific copyrights, marks,



FENWICK & WEST LLP

trade dress, and content B&A contends were infringed in those instances. Dkt 119-1. Quizlet moved to compel when B&A merely pointed vaguely to documents. *Id.* Magistrate Judge Eick granted Quizlet's motion, finding that "[i]t is improper to answer an interrogatory with a non-specific reference to documents or records," and ordered Plaintiff to give a complete response. Dkt. 127. B&A's supplemental responses disregarded Magistrate Judge Eick's order and again stated only that it had produced and will produce documents. JAF 63, 64, 69-72. B&A failed to comply with Magistrate Judge Eick's order, and it has not identified the copyrights it claims Quizlet infringed or identified any instances of alleged infringement. *Id.*

Plaintiff also failed to identify in response to Quizlet's Interrogatory No. 11 the DMCA takedown requests it claims to have submitted to Quizlet. JAF 65. And it failed to identify in response to Quizlet's Interrogatory No. 12 the DMCA takedown requests (if any) Plaintiff claims Quizlet failed to act upon properly. JAF 66. Even though Magistrate Judge Eick ordered Plaintiff to supplement those responses without generally referring to documents, Plaintiff's supplemental response provided only non-responsive general references to "documents." Dkt. 127; JAF 67 & 68.

## II. BARKLEY & ASSOCIATES' STATEMENT OF FACTS

### A. The Parties and Barkley's Intellectual Property Catalog

Plaintiff Barkley is a premier national continuing education provider and the authoritative source for graduate nursing test preparation materials. Barkley specializes in Family Nurse Practitioner (FNP) and Adult-Gerontology Acute Care Nurse Practitioner (AGACNP) review curriculum. Over decades, Barkley has developed highly sought-after material including its flagship "3Ps FNP Study Guides" and comprehensive review courses. *See* FAC Dkt. 57-2.

To protect its investment in its intellectual property, Barkley maintains a strong federal intellectual property portfolio. This includes over 100 comprehensive copyright registrations covering its exhaustive syllabi, practice examinations, and



FENWICK & WEST LLP

specialized analytical textbooks.[1] JAF 82, Exhibit 3 Quizlet's argument that registrations made after publication misstates the law. "The owner of an original work has a copyright 'immediately upon the work's creation.'" *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056 (9th Cir. 2023)

Barkley also holds two soon to be incontestable federal trademark registrations: Reg. No. 6,270,781 (word mark BARKLEY & ASSOCIATES) and Reg. No. 6,272,223 (the logo mark). JAF 83. Barkley also has extensive common law trademark rights in its corporate name and identity, which are recognized throughout the national medical and nursing education sectors. JAF 88.

**B. Quizlet now is a copyright infringer because it became an autonomous AI publisher.**

Quizlet tries to frame its platform as an agnostic, passive storage receptacle shielded by the DMCA and *Cox Communications*, the evidence reveals a corporate intervention. Quizlet does not merely host raw text, it captures Barkley's user-uploaded materials, funnels them through internal computational mechanics, and synthesizes derivative works of Barkley's copyrighted materials. See 17 U.S.C. § 101 (defining "derivative work" as "a work based upon one or more preexisting works such as …")

The testimony of Sean Marrer, Quizlet's corporate representative, contradicts Quizlet's "content-agnostic" narrative. He admitted Quizlet's algorithmic intervention produced these materials:

> Q: How were they generated?
>
> A: My understanding is that the summaries are – are generated by AI.
>
> Q: What – what is – what does that mean it's 'generated by AI?'
>
> A: That's the extent of my knowledge. That's how the material is presented. It's a summary generated by – by – by AI, an AI powered summary. (145: 5-13)

[1] Barkley filed more copyright registrations since this lawsuit began.



FENWICK & WEST LLP

Mr. Marrer distinguished these features from typical, user-typed electronic flashcards:

Q: So it's not a user making the summary?

A: That's – that's accurate as I said before. Summaries and study guides are not user generated. (145: 14-18)

[...]

Q: The summary, unlike the flashcards, is not something that people type in at their computer; is that correct?

A: That's correct. (155: 5-11) JAF 81

This key admission proves Quizlet used artificial intelligence engines to extract, manipulate, and republish underlying text. By commanding its system to extract data blocks from Barkley's proprietary nursing guides and transform them into freestanding AI study features, Quizlet engages in direct, autonomous volitional conduct required for copyright infringement.

### C. Quizlet's Active Co-Branding, Monetization, and Interactive Exploitation

Quizlet's monetization structure uses Barkley's protected intellectual property for its business. Quizlet's Responses to Barkley's Second Set of Requests for Admission admitted it creates targeted user funnels built around Barkley's trademarks and generates and hosts these interactive websites using Barkley's trade identity:

https://quizlet.com/1060264495/barkley-associates-3ps-fnp-study-guide-overview-flash-cards/

https://quizlet.com/1060264495/test?funnelUUID=744cfbba-8ae5-4267-8905-c2a15ae0607c

https://quizlet.com/1114394599/barkley-review-cardiovascular-flash-cards/

https://quizlet.com/1114394599/print

JAF 84

FENWICK & WEST LLP

Quizlet admitted when an account holder navigates to these links, the platform displays custom headers bearing Barkley's protected product name: "Barkley & Associates 3Ps FNP Study Guide Overview." JAF 85 -87. Quizlet also admitted it wraps this display page in its own premium interactive features, deploying modes like "Flashcards," "Learn," "Test," "Blocks," "Blast," and "Match" to keep users inside its paid subscription ecosystem. JAF 85-86 *See* response to RFA 20.

Quizlet's explicit co-branding of downloadable materials destroys its trademark infringement defense. Quizlet admitted that when a user selects the "Print" option on these pages, Quizlet's software automatically generates an on-demand PDF packet bearing a combined co-branded header text:

Barkley & Associates 3Ps FNP Study Guide Overview

Study online at https://quizlet.com/_hj95bj

| | | |
|---|---|---|
| 1. | What are the key concepts covered in Advanced Pathophysiology for the Cardiovascular System? | Heart failure types, murmurs, EKG interpretation, hypertension pathophysiology. |
| 2. | What study strategy is recommended for understanding cardiac disorders in Advanced Pathophysiology? | Draw flow charts for each cardiac disorder; memorize murmur positions and sounds. |
| 3. | What key concepts are included in Advanced Pathophysiology for the Respiratory System? | Asthma vs COPD, ABG interpretation, respiratory failure. |
| 4. | What study strategy is suggested for interpreting ABGs in the Respiratory Sys- | Practice interpreting ABGs and comparing obstructive lung diseases. |

*See* JAF 85-86 and Tamsut Decl. Ex 6.

This is not a user posting standalone text; this is Quizlet's automated system creating downloadable, printed study products that attach the "Quizlet" brand identifier directly to Barkley's federally registered marks. This creates direct, tangible consumer confusion, misleading students into believing that Quizlet is Barkley's

authorized affiliate, publisher, or licensing partner.

**D. Quizlet's DMCA record does not cover every infringement of Barkley's intellectual property, and it still does not comply.**

Quizlet claims absolute immunity under the DMCA, but the data it produced shows regular failures to maintain an effective content control apparatus. Quizlet acknowledges that as of the end of 2025, it had to remove at least 3,881 unique study sets containing Barkley's protected content in response to continuous notices. But Quizlet regularly missed Barkley's materials to propagate via Quizlet's AI-enhanced features.

Quizlet's assertion that Barkley failed to comply with discovery orders is a complete inversion of the factual record. Barkley produced comprehensive lists of its copyrighted materials and provided thousands of matching URLs directly tying the infringement to Quizlet's interface. Quizlet's ongoing failure to block repeated uploads of identical, high-value curriculum—while simultaneously feeding those uploads into automated AI summary generators—proves severe, systemic breakdowns of its "repeat infringer policy."

The facts conclusively prove that Quizlet has moved far beyond the boundaries of an immune intermediary. It uses automated software to cross-contaminate Barkley's proprietary curriculum with its own branding, creates commercial lookalike marketing funnels, and prints co-branded PDFs to drive premium ad-free subscriptions. These acts establish triable issues of material fact that preclude summary judgment.

**THE SUMMARY JUDGMENT STANDARD**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material only if they "affect the outcome" of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A defendant can prevail on summary judgment by establishing the

FENWICK & WEST LLP

absence of evidence sufficient to support the plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the plaintiff to present evidence that creates a triable issue of material fact. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). When the party moving for summary judgment would bear the burden of proof at trial, it has the initial burden of establishing the "absence of a genuine issue of fact on each issue" material to its claim or defense. *Id.* (citation modified). When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## ANALYSIS

## QUIZLET'S ARGUMENT 1: QUIZLET IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT.

## I. QUIZLET DID NOT DIRECTLY INFRINGE B&A'S COPYRIGHTS.

### A. Quizlet did not engage in the volitional conduct required to prove direct infringement.

B&A cannot show that Quizlet directly infringed its copyrights. To establish a prima facie case of direct copyright infringement, B&A "(1) must show ownership of the allegedly infringed material and (2) [it] must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007). Additionally, it must prove that Quizlet engaged in volitional conduct that was the proximate cause of the infringement. *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074-76 (9th Cir. 2023).

There is no evidence that Quizlet engaged in volitional conduct that could support a direct infringement claim. The volitional conduct requirement for direct infringement requires proof that the alleged direct infringer proximately caused the infringement. *Hunley*, 73 F.4th at 1074-76 (9th Cir. 2023). Thus, "*direct* liability



FENWICK & WEST LLP

must be premised on conduct that can reasonably be described as the *direct cause* of the infringement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (emphasis in original) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)) (citation modified). For that reason, the Ninth Circuit has held that the "automatic copying, storage, and transmission of copyrighted materials, when *instigated* by others, does not render an [Internet service provider] strictly liable for copyright infringement." *Giganews, Inc.*, 847 F.3d at 670 (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004)) (emphasis added) (citation modified). Courts have consistently found that operating an online service through which others post, exchange, and manipulate materials is not direct copyright infringement. *See, e.g.*, *VHT, Inc.*, 918 F.3d at 731-32; *Giganews, Inc.*, 847 F.3d at 669-70; *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550-51 (4th Cir. 2004).

*Giganews* is instructive. There, the plaintiff alleged the defendant had directly infringed its copyrights by hosting a Usenet newsgroup that allowed users to upload and copy photos, including the plaintiff's alleged copyrighted photos. The Ninth Circuit affirmed the district court's order granting the defendant's summary judgment motion on direct infringement, because there was "no evidence showing Giganews exercised control (other than by general operation of a Usenet service); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution" of Plaintiff's copyrighted works. *Giganews, Inc.*, 847 F.3d at 670.

As in *Giganews*, *VHT, Inc.*, and *CoStar Group*, there is no evidence that Quizlet is the proximate cause of any alleged infringement. Quizlet users, not Quizlet, uploaded content and generated study aids using content that B&A alleges infringes its copyrights. JAF 13 & 14. Users upload content and then use the content-neutral software tools Quizlet provides to create study aids like flash cards, practice tests, and study guides. JAF 17, 18, 20, & 34.

That Quizlet makes both non-AI and AI-enhanced software tools available to



FENWICK & WEST LLP

users does not change this conclusion. There is no evidence that Quizlet generates infringing copies of Plaintiff's works on its own. The user must input content—whether it is content they added to Quizlet or content another user added—and then submit the content to Quizlet's study tools (AI enhanced or not) in order for those tools to create an output. JAF 33. The input of the content, whether typed notes, mathematical formulas, term definitions, or long form prose, does not matter. JAF 17 & 18. Quizlet's service was "totally indifferent to the material's content." *CoStar Grp., Inc.*, 373 F.3d at 550-51; JAF 33.

In this respect, Quizlet's AI tools are technically neutral tools that are capable of substantial non-infringing uses. *Cf. Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 439 (1984) (provider of technology with substantial non-infringing uses not liable for contributory infringement). And as the Supreme Court recently affirmed in *Cox Commc'ns*, an online service provider that "neither induced its users' infringement nor provided a service tailored to infringement," is not liable for contributory copyright infringement. *Cox Commc'ns*, 146 S. Ct. at 968. A service is "tailored to infringement only if it is 'not capable of substantial or commercially significant noninfringing uses.'" *Id.* at 967 (internal quotations omitted). Plaintiff has not accused Quizlet of contributory infringement, nor is there any evidence to support the elements of such a claim. But if a service provider that provides software tools that are capable of substantial non-infringing uses, as Quizlet's AI tools are, cannot be liable for contributory infringement, then they also cannot be liable for direct infringement, which requires a higher standard of culpability.

### B. There is no evidence that Quizlet trained AI models using Plaintiff's copyrighted works.

Plaintiff premised its direct copyright infringement theory in the First Amended Complaint on the allegation that Quizlet trains AI models on Plaintiff's copyrighted works. FAC ¶ 114. And that allegation was a significant basis for this Court's order denying Quizlet's motion to dismiss the FAC. Dkt. 104 at 7-8. There



FENWICK & WEST LLP

is no factual support for that theory, and it is contrary to the evidence. Quizlet does not build its own LLMs. JAF 36. Instead, Quizlet uses OpenAI and Google AI models to support the AI-enhanced study tools it offers. JAF 35. Quizlet's contract with each of those companies prohibits those companies from training their AI models on information submitted by Quizlet. JAF 38. And there is no evidence that Quizlet, OpenAI, or Google have used B&A content submitted through Quizlet to customize those LLMs for Quizlet's AI-enhanced tools. JAF 75. Accordingly, there are no facts supporting Plaintiff's AI model training allegation, and summary judgment should be entered in Quizlet's favor. *Compare Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 864 (N.D. Cal. 2023) (plaintiff sufficiently alleged AI output infringement based on allegations the defendant scraped copyrighted images and stored them as compressed copies used to train its model).

## II. SECTION 512(C) SHIELDS QUIZLET FROM LIABILITY.

Apart from the lack of evidence to support Plaintiff's claims, Quizlet is entitled to summary judgment because it qualifies for the DMCA § 512(c) safe harbor. "Although Congress was aware that the services provided by companies like [defendant] are capable of being misused to facilitate copyright infringement, it was loath to permit the specter of liability to chill innovation that could also serve substantial socially beneficial functions." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1030 (9th Cir. 2011). Congress enacted the Section 512 safe harbors to "ensure[] that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand" by "limiting the liability of service providers." *Viacom Int'l, Inc. v. YouTube, Inc.,* 718 F. Supp. 2d 514, 519 (S.D.N.Y. 2010) (remanded for factual determination, 676 F.3d 19 (2d Cir. 2012)) (citing Senate Committee on the Judiciary Report, S. Rep. No. 105-190, at 8 (1998)).

The Section 512(c) safe harbor protects service providers against liability "by reason of the storage at the direction of a user of material that resides on a system or



FENWICK & WEST LLP

network controlled or operated by or for the service provider." 17 U.S.C. § 512(c)(1). The safe harbor also protects service providers from other actions that naturally accompany storage, including creation, streaming, and downloading of files. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1016-20 (9th Cir. 2013) (section 512(c) encompasses automatic processes undertaken to facilitate public access to user-uploaded videos, like "the creation of chunked and Flash files and the streaming and downloading of videos"). As described above, the evidence is undisputed that the relevant content here is uploaded, stored and manipulated at the direction of Quizlet's users. Quizlet therefore qualifies as a service provider engaging in activities within the scope of section 512(c).

To qualify for the safe harbor, a service provider must designate an agent to receive notifications of claimed infringement. 17 U.S.C. § 512(c)(2). It also must show that (1) it complied with § 512(i)'s notice and takedown procedure; (2) "it lacked actual or red flag knowledge of the infringing material" and, if it did gain such knowledge, "act[ed] expeditiously to remove, or disable access to, the material"; and (3) "it did not receive a 'financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity.'" *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017).

Quizlet has an effective process and policy for receiving takedown requests from rightsholders. JAF 40. Copyright owners may submit requests through an easy-to-find and use form on Quizlet's website as well as through email. JAF 41. Quizlet promptly removes content after receiving proper and complete DMCA takedown notice from any party, including Plaintiff. JAF 42 & 60. Plaintiff has used Quizlet's DMCA takedown process. JAF 49. When Plaintiff submitted DMCA-compliant takedown requests through this process, Quizlet promptly removed thousands of links. It also removed links when Plaintiff did not fully comply. JAF 50 & 62.

There is no evidence Quizlet had actual or "red flag" knowledge of



FENWICK & WEST LLP

infringement of Plaintiff's content. "Red flag" awareness is a high standard. A provider has no duty of "monitoring its service or affirmatively seeking facts indicating infringing activity" to qualify for the safe harbor. 17 U.S.C. § 512(m)(1). B&A must show that Quizlet "acquired knowledge of the infringement, or of facts and circumstances from which infringing activity was obvious, and failed to promptly take down the infringing matter." *Capitol Recs., LLC v. Vimeo, LLC,* 826 F.3d 78, 95 (2d Cir. 2016) (evidence that service provider employees saw some user-uploaded videos with recognizable music was not sufficient) (cited with approval in *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 617 (9th Cir. 2018)). The DMCA does not require service providers to determine whether activity is illegal. *See Perfect 10, Inc., v. CCBill LLC*, 488 F.3d 1102, 1114 (9th Cir. 2007). Instead, "[t]he DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." *Id.* at 1113. Defective notifications of claimed infringement under section 512(c)(3) do not qualify as "red flags." *Id.* (citing 17 U.S.C. § 512(c)(3)). There is no evidence that Quizlet employees had knowledge of information that was an obvious indicator of infringement. JAF 43. Quizlet therefore meets that safe harbor condition.

Finally, Quizlet has maintained and carried out a policy to terminate repeat infringers. JAF 45-48. Employing this policy, Quizlet has removed thousands of users from its service. JAF 48. Quizlet's policy easily clears the bar for a repeat infringer termination policy set by the Ninth Circuit in *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 617 (9th Cir. 2018). There, the court found that a website reasonably implemented a repeat infringer policy where a single individual relied on memory and judgment and terminated between 1,320 and 1,980 users. *Id.* Quizlet has a far more rigorous process, [redacted]. JAF 46 & 47.



FENWICK & WEST LLP

As explained below, Quizlet did not receive any direct financial benefit from its users' alleged infringements of Plaintiff's works, which is an element of vicarious copyright infringement. Quizlet therefore satisfies DMCA Section 512(c)'s requirements for the safe harbor, and it is entitled to summary judgment on B&A's direct copyright infringement claims.

## III. QUIZLET DID NOT VICARIOUSLY INFRINGE B&A'S COPYRIGHTS.

"The Copyright Act does not expressly render anyone liable for infringement committed by another." *Sony*, 464 U.S. at 434. Courts use "agency principles of *respondeat superior*" to assess vicarious copyright infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). To prevail on its vicarious infringement claim, B&A must prove that Quizlet (1) profits directly from the infringement and (2) has a right and ability to supervise the direct infringer. *Id.*; *Perfect 10, Inc.*, 508 F.3d at 1169. Both elements are required, and there is no evidence supporting either one.

### A. Quizlet does not receive a direct financial benefit from any alleged infringement.

"[T]he crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant." *Sony Music Ent. v. Cox Commc'ns*, 93 F.4th 222, 231-32 (4th Cir. 2024), *cert. granted*, 145 S. Ct. 2841, 222 L. Ed. 2d 1128 (2025), and *cert. denied*, 145 S. Ct. 2844, 222 L. Ed. 2d 1130 (2025), and *rev'd and remanded*, 146 S. Ct. 959 (2026). "[I]n every case, the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability." *Id.* at 232; *see also Giganews*, 847 F.3d at 674 (denying vicarious infringement claim where plaintiff failed to provide evidence indicating anyone subscribed to defendant's service because of plaintiff's material). Evidence that the defendant offers a paid subscription service, or otherwise receives revenue through the operation of its service is insufficient, on its own, to satisfy the direct financial benefit element. *See Ellison v. Robertson*, 357 F.3d 1072,



FENWICK & WEST LLP

1079 (9th Cir. 2004) (affirming dismissal of vicarious copyright infringement claim where plaintiff failed to provide evidence that defendant "attracted or retained subscriptions because of the infringement or lost subscriptions because [defendant]'s eventual obstruction of the infringement"). Instead, the plaintiff must present evidence showing that the service attracted or retained paying subscribers because of the infringement or lost subscriptions because it curtailed infringement. *Id.* In both *Ellison* and *Giganews*, the Ninth Circuit affirmed summary judgment for defendants on vicarious liability claims where the plaintiffs failed to present evidence that access to the plaintiffs' infringing content was the primary draw to use the service. *Id.*; *Giganews*, 847 F.3d at 674. The record compels the same result here.

Plaintiff alleged that Quizlet "charges users a monthly subscription for Quizlet+ accounts that give users access to Barkley materials and Quizlet AI features that use Barkley materials," but has failed to develop any evidence supporting that allegation. FAC ¶ 137. And this allegation is factually wrong; paying subscribers do not gain any greater access to content on Quizlet than non-paying users. JAF 44. Users who pay for Quizlet Plus subscriptions gain more frequent usage of software tools, which can be used with any content. That access is not directly related to infringements of Plaintiff's content or access to Plaintiff's content. There are no *facts* showing a causal connection between access to alleged infringements of Plaintiff's works and Quizlet's revenue from paid subscriptions. *See, e.g.*, *Giganews*, 847 F.3d at 674 (no direct financial interest from service provider whose subscribers shared infringing photographs). The availability of B&A content thus has no causal bearing on whether users subscribe to Quizlet Plus, and there is no *evidence* tying a financial benefit Quizlet receives from subscriptions to infringement of Plaintiff's content.

**B. Quizlet does not have the right or ability to supervise its users' content.**

To have the right and ability to control infringing conduct, a service provider must be able to exert "substantial influence" on its users' activities. *Motherless, Inc.*,



FENWICK & WEST LLP

885 F.3d at 613. The "'[r]ight and ability to control' involves 'something more than the ability to remove or block access to materials posted on a service provider's website.'" *Id.* (quoting *LiveJournal, Inc.*, 873 F.3d at 1058). The mere ability to reduce infringing conduct on the service is not enough to establish the right or ability to supervise infringing activity. *Visa Int'l*, 494 F.3d at 803. Even if the service can "control its own index, search results, and webpages," those facts do not give it "the right to control the infringing acts of third parties." *Id.* (citing *Perfect 10, Inc. v. Amazon.com*, 487 F.3d 701, 730-32 (9th Cir. 2007)). Nor does the "'right' to refuse their services, and hence the literal power to 'stop or limit' the infringement," constitute the right and ability to control the infringing activity. *Id.* at 806.

Quizlet's software study tools, including the AI-enhanced tools it offers, are content-agnostic and operate the same, regardless of the type of content a user inputs. JAF 34. While a user must create a Quizlet account (free or paid) to add content of *any* kind to Quizlet and use Quizlet's software study tools, there is no evidence that Quizlet exerted substantial influence over *what* its users chose to upload or modify using Quizlet's study tools. JAF 33 & 34. To the contrary, the undisputed evidence is that users can feed any written content into Quizlet's study tools. JAF 17-20, 33 & 34.

The absence of evidence that Quizlet exerted influence over users' uploading of, or access to, B&A content on its platform is dispositive. *Motherless, Inc.* is instructive. There, the absence of evidence that the defendant website operator "told its users what to upload[,]. . . curate uploaded content in any meaningful way, nor did it reject unpopular groups or content" was dispositive. *Motherless, Inc.*, 885 F.3d at 613. The same logic applies here. There is no evidence that Quizlet encouraged users to upload B&A content or that it curated allegedly infringing B&A content in any way. JAF 14-16, 78.

Because Plaintiff cannot establish either a direct financial benefit or the right and ability to supervise, Quizlet is entitled to summary judgment on Plaintiff's



FENWICK & WEST LLP

vicarious copyright infringement claim.

## IV. PLAINTIFF SHOULD BE PROHIBITED FROM PRESENTING EVIDENCE OF INFRINGEMENT DUE TO ITS VIOLATION OF A COURT ORDER.

Plaintiff's failure to answer interrogatories identifying each instance of alleged infringement and the copyrighted work, mark, and trade dress B&A claims Quizlet infringed after being ordered to do so by Magistrate Judge Eick should bar it from presenting evidence of infringement. Plaintiff's "supplemental" responses doubled down on what Magistrate Judge Eick's order found was non-responsive by making general references to documents. Because B&A has failed to comply with a Court order, the Court should prohibit it from introducing evidence of copyright, trademark and trade dress infringement. Fed. R. Civ. P. 37(b)(2)(A)(ii).

Any sanction under Rule 37(b)(2) first "must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001). Courts are to consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). In deciding whether to grant a motion for sanctions, "properly consider all of a party's discovery misconduct ... including conduct which has been the subject of earlier sanctions." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

These factors warrant a sanction prohibiting B&A from entering evidence of infringement. An evidentiary prohibition sanction is tied directly to the violation. B&A's failure to comply with Magistrate Judge Eick's order to respond to Quizlet's infringement interrogatories is prejudicial, interfering with the ability of Quizlet and the fact finder to conduct a substantial similarity and likelihood of confusion analysis. Moreover, because B&A's defective "supplemental" interrogatory responses came

FENWICK & WEST LLP

on the last day of merits fact discovery, there is no opportunity to cure without further delaying the case. And as this Court is aware, Plaintiff's discovery misconduct in this case has already resulted in a monetary evidentiary sanction that required additional motion practice to enforce. Dkts. 79, 115, 125, 126.

**BARKLEY & ASSOCIATES' RESPONSE**

## I. QUIZLET DIRECTLY INFRINGED BARKLEY'S COPYRIGHTS THROUGH AUTONOMOUS VOLITIONAL CONDUCT

Quizlet rests its entire defense to direct copyright infringement on an outdated, pre-AI legal framework. Quizlet claims it only acts as a passive Internet conduit immune under *VHT, Inc. v. Zillow Group, Inc.*, 69 F.4th 983 (9th Cir. 2023) and *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017). But Quizlet's autonomous operational architecture distinguishes it from traditional, content-neutral hosts. While an Internet service provider escapes direct liability for the "automatic copying, storage, and transmission of copyrighted materials, *when instigated by others*," *Giganews*, 847 F.3d at 670, a platform becomes a direct infringer when its proprietary mechanisms independently execute the creation and dissemination of unauthorized derivative works.

The undisputed evidence compiled in this case shows Quizlet crosses the line from an automatic data repository into an active content publisher. For example, Quizlet automatically creates AI generated content such as study guide summaries when content is uploaded. JAE 31 -32. Quizlet also creates Quizlet Q branded PDFs with Barkley's trademarks. JAF 85. Quizlet's chat feature also spits out Barkley content when asked to. JAF 89. To satisfy the volitional conduct requirement, direct liability is premised on "conduct that can reasonably be described as the direct cause of the infringement." *VHT*, 918 F.3d at 731. Quizlet's corporate representative Sean Marrer testified that the platform's proprietary "Study Guides" and text summaries are **not** user-generated. When asked who writes the summaries displayed on the platform, he testified, Summaries and study guides are not user generated. JAF 81



FENWICK & WEST LLP

145:17-18. Summaries are created as part of study guides when users enter information onto the Quizlet platform JAF 81 155: 14-16.

This key admission shatters Quizlet's assertion that it operates as a content-blind utility. When a user inputs raw text, Quizlet does not merely host it; Quizlet's proprietary system actively extracts the text, feeds it into downstream artificial intelligence tools with custom instructions, and creates an unauthorized summary product. The product is what it publishes on its interface. This affirmative, automated restructuring of Barkley's specialized nursing curriculum into a stand-alone educational feature is what Quizlet displays on its site. Because Quizlet operates the programmatic catalyst that synthesizes these materials, its conduct is volitional.

## II. QUIZLET GENERATIVE AI EXPLOITATION OF BARKLEY'S WORKS INFRINGES.

Quizlet tries to sidestep direct liability by arguing its contracts with third parties like OpenAI and Google instead of building its own large language models (LLMs) avoid liability for AI-driven copyright infringement. Its argument is irrelevant to the core legal issue. Barkley need not prove that Quizlet built a multi-billion-dollar base LLM from scratch. Barkley proved Quizlet integrates and controls an enterprise-level generative application that uses Barkley's proprietary data to generate infringing output.

Quizlet's reliance on its third-party service contracts misses the mark. Even if the core foundational models are not trained for public consumption, Quizlet's platform actively uses these engines to *customize, extract, and display* localized outputs built directly from Barkley's protected materials. By structuring commercial tools like "Practice Test" and "Learn" mode around web sites containing Barkley's marks and content, Quizlet uses commercial AI to create substitute study products. This use of Barkley's copyrighted works to generate dynamic, competitive derivatives on an enterprise web interface represents direct copyright infringement.



FENWICK & WEST LLP

## III. THE DMCA SAFE HARBOR DOES NOT PROTECT QUIZLET'S AI PUBLISHER MODEL

Quizlet claims absolute immunity under the safe harbor of the DMCA, but this defense fails because Quizlet's infringing operations extend far beyond mere "storage at the direction of a user." Though the court noted in *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013), that safe harbor extends to functions that "naturally accompany storage" to help with public web access—such as format conversion or automated streaming—the court never immunized a platform that programmatically modifies stored text to manufacture and publish its own separate editorial features.

By using generative AI to engineer platform-authored summaries, Quizlet transformed itself into a co-publisher. Safe harbor applies only when the platform is entirely "indifferent to the material's content," *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550-51 (4th Cir 2004). Quizlet is anything but indifferent; it relies on its system to scan incoming text data and assemble co-branded, downloadable PDF study packets that bind Quizlet's brand directly to Barkley's protected marks (e.g., *"Barkley & Associates 3Ps FNP Study Guide Overview | Quizlet"*). JAF 86 *See* Exhibit C.

Quizlet also fails the critical prerequisites of the DMCA safe harbor

1. **Red Flag Knowledge:** Quizlet had overwhelming "red flag" knowledge of widespread, ongoing infringement. By its own admission, Quizlet was forced to remove a staggering **3,881 unique study sets** containing Barkley content JAF 62. A platform cannot process thousands of explicit infringement notifications regarding a specialized, high-value curriculum, continue to feed that identical material into automated AI summaries to drive search traffic, and still claim it lacked awareness of obvious infringing activity under *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 93 (2d Cir. 2016).
2. **Failure to Implement a Repeat Infringer Policy:** While Quizlet asserts it

maintains an automated [redacted] repeat infringer policy, its actual implementation does not comply. Even after thousands of URLs were flagged and deleted, identical blocks of Barkley's FNP and AGACNP review guides repeatedly reappeared. This shows Quizlet did not adopt the required "reasonably implemented" policy to block or deter known repeat offenders. "Even if a website deletes infringing material as soon as it learns about it, the safe harbor is unavailable unless the site has a policy of excluding repeat infringers. *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018)

## IV. QUIZLET IS VICARIOUSLY LIABLE FOR PROFITING FROM AND CONTROLLING THE INFRINGEMENT.

To prevail on a claim of vicarious liability for copyright infringement, a plaintiff must establish that the defendant has "(1) the right and ability to supervise the infringing conduct, and (2) a direct financial interest in the infringing activity." *VHT*, 918 F.3d at 746. Quizlet meets both prongs.

### A. Quizlet generates a direct financial benefit via Barkley's commercial draw.

Quizlet argues that because user-uploaded content can be viewed by both free and paid accounts, it derives no direct financial advantage from Barkley's materials. This argument misconstrues Ninth Circuit precedent. The financial benefit element is satisfied if a platform attracts or retains paying subscribers because of the presence of infringing material. *Ellison v. Robertson*, 357 F.3d 1072 (2004).

Barkley's test preparation guides command a massive, highly motivated commercial consumer base of graduate nursing students. Quizlet uses these materials as an active commercial draw. Quizlet routinely hosts indexed public URLs using Barkley's name and product identity to capture search-engine traffic. JAF 87. Once users land on these pages, Quizlet asks users to purchase a premium subscription after giving access to specialized interactive study modes (such as "Learn," "Test," and "Match"). FAC 120 – 133. Quizlet's financial benefit flows directly from using



FENWICK & WEST LLP

Barkley's high-value curriculum to funnel users into a metered, paid subscription environment.

**B. Quizlet has the practical right and ability to supervise platform content.**

Citing *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017), Quizlet claims it cannot exercise substantial influence over third-party uploads. However, Quizlet does exercise influence over third party uploads when Quizlet makes copies of Barkley study materials and plasters the Quizlet name on them and entices users to visit the Quizlet site instead of Barkley's. (Dkt 57-2 FAC ¶ 12 showing screenshot that says "study online at Quizlet.com" on a copy of Barkley live questions). Unlike the passive host in *Motherless,* which did not curate or change user submissions in any meaningful way, Quizlet actively subjects raw user notes to its own automated AI content restructuring filters. JAF 81. Because Quizlet has the exclusive programmatic power to toggle its AI summary mechanisms on or off, edit indexing protocols, and generate co-branded PDFs, it maintains the practical and legal ability to supervise and stop the ongoing exploitation of Barkley's materials.

## V. SANCTIONS PRECLUDING BARKLEY'S EVIDENCE UNDER RULE 37 ARE FACTUALLY AND LEGALLY UNWARRANTED

Finally, Quizlet's request that Barkley be entirely barred from presenting evidence of infringement under FED. R. CIV. P. 37(b) is an extraordinary and groundless distortion of the discovery record. Quizlet argues that Barkley disregarded Magistrate Judge Eick's discovery orders by providing non-responsive references to documents in its supplemental interrogatory responses.

Discovery and the infringement here are ongoing. Since filing this lawsuit, Barkley has obtained over 100 copyright registrations. Barkley continues to produce documents as they become available. Barkley has fully and continues to in good faith identify its copyright registrations, its comprehensive trademark registrations, and has provided extensive, meticulously compiled lists of specific infringing Quizlet



FENWICK & WEST LLP

URLs. Quizlet’s own discovery admissions confirm that it could fully parse Barkley’s responses, as shown by its ability to identify and pull down 3,881 unique study sets matching Barkley's intellectual property.

A terminating or severe evidentiary sanction under Rule 37 must be strictly "just" and specifically tailored to a clear, bad-faith refusal to cooperate. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 2007 (9th Cir. 2007). No such bad faith exists here. Barkley’s discovery responses and document production showed evidence of the extensive overlap between its medical curriculum and Quizlet’s commercial interface. Quizlet suffers no prejudice in its ability to conduct a "substantial similarity" or "likelihood of confusion" analysis, as the underlying infringing copies live entirely within its own computer servers and database architecture.

Because Barkley has shown that multiple triable issues of material fact exist regarding Quizlet's volitional AI publishing actions, its direct financial profit model, and its failure to adhere to the DMCA's strict safe harbor boundaries, Quizlet's Motion for Summary Judgment must be denied in its entirety.

## QUIZLET’S ARGUMENT 2: QUIZLET IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF’S FEDERAL AND STATE TRADEMARK, TRADE DRESS AND UNFAIR COMPETITION CLAIMS

### I. THERE IS NO EVIDENCE THAT QUIZLET USED PLAINTIFF’S MARKS OR TRADE DRESS IN COMMERCE.

Because there is no evidence showing that Quizlet has used Plaintiff’s marks in commerce to promote its services, it is entitled to summary judgment on Plaintiff’s federal and state trademark and trade dress claims. To prove direct trademark infringement, plaintiff must prove “(1) that it has a protectible ownership interest in the mark; and (2) that the defendant’s use of the mark is likely to cause consumer confusion.” *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation modified). When a defendant offers services instead of tangible goods, like Quizlet, “use in commerce” is established only where a mark

is "used or displayed in the sale or advertising" of those *services*. 15 U.S.C. § 1127.

Courts have repeatedly recognized that online services are not liable for direct trademark infringement for use of marks by their users. *See, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021) ("[A] party that merely facilitates or assists others' use cannot be liable for direct infringement."), *aff'd in part, appeal dismissed in part*, No. 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023); *Gibralter, LLC v. DMS Flowers, LLC*, No. 1:24-cv-00174-CDB, 2025 WL 2623293, at *2, *5-7 (E.D. Cal. Sept. 11, 2025) (holding that operator of online platform for vendors to sell floral arrangements could not be held directly liable for trademark infringement where it did not itself "use" the plaintiff's mark in commerce); *Lopez v. Bonanza.com, Inc.,* No. 1:17-cv-08493-LAP, 2019 WL 5199431, at *13 (S.D.N.Y. Sept. 30, 2019) (rejecting direct trademark infringement claims against various online platforms based on third-party uses of those services to sell allegedly infringing goods). Instead, to prove direct trademark infringement, a plaintiff must prove that "the defendant itself 'use' the mark; it is insufficient for direct infringement purposes to allege that a defendant allows third parties to use the mark." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017). In *Giganews, Inc.*, for example, the plaintiff's allegations that Internet newsgroup users posted photos bearing the plaintiff's trademarks failed to allege direct trademark infringement against the service provider that hosted the marks, because *it* did not use the marks in commerce. *Id.*

Quizlet does not use Plaintiff's marks in the sale and advertisement of its services, and uncontroverted deposition testimony affirmed that Plaintiff's marks appear only in content uploaded by Quizlet's users. JAF 16 & 74. At most, Plaintiff's marks appear in content users add to Quizlet. JAF 16-20. Even the FAC shows this. The FAC describes the process by which a Quizlet user can take a flashcard set that they or someone else created, named "Barkley PNP DRT 2," and



FENWICK & WEST LLP

turn it into a practice test. FAC ¶¶ 120-124. The term "Barkley" appears only because a user named their flashcard set using the term. JAF 16-20. Other allegations in the FAC reflect this same situation. FAC ¶ 132 (screen capture prompting user to combine multiple flashcard sets with the term "Barkley); ¶ 133 (screen capture showing a flashcard set "barkley must knows for ethical and legal principles" created "by krista_scott8"); Dkt. 57-3, Ex. A (screen captures for flashcard sets, each stating at the bottom they were "created by" various Quizlet users).

Plaintiff alleges that the presence of Quizlet's name in a URL and the Q logo on printouts of study material users create is evidence of use in commerce. They are not. As Quizlet's corporate representative testified, when a Quizlet user chooses to print study materials they or other users have created, the printout includes both Quizlet's name and URL and the user-titled study material, regardless of what is in the content. JAF 76. The URL is present to help the user locate the page in the future. JAF 77. At most, that only shows Quizlet's use of its own mark in commerce.

Additionally, Plaintiff does not have trademark rights in the standalone term "Barkley." The Trademark Office registered only the "Barkley & Associates" mark because Barkley is a common surname. Plaintiff's trademark registrations disclaim any exclusive right to use the phrase "& ASSOCIATES" "apart from the mark as shown" in the registration certificates. JAF 8 & 9. Nor has Plaintiff produced any evidence that it has common law trademark rights in the standalone term "Barkley."

As such, summary judgment on Plaintiff's state and federal trademark claims (Causes of action 1 and 4) and Unfair Competition Law claim (Cause of Action 5) are appropriate. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.")



FENWICK & WEST LLP

## II. *DASTAR* PRECLUDES PLAINTIFF'S LANHAM ACT, STATE COMMON LAW INFRINGEMENT, AND STATE UNFAIR COMPETITION CLAIMS.

Summary judgment should be granted for Quizlet on Plaintiff's Lanham Act and state unfair competition claims for the additional reason that those claims are inseparable from its copyright infringement claims and thus are precluded by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Plaintiff's third cause of action alleges that Quizlet violates 15 U.S.C. § 1125(a) ("Section 43(a)") because Quizlet's "use in commerce of Barkley's trademarks, trade dress and copyrights constitutes use of a false designation of origin and unfair competition." FAC ¶ 64. Discovery has yielded no evidence that Quizlet itself used Plaintiff's marks in commerce. Because Plaintiff bases its Lanham Act § 43(a) claims only on the availability of its alleged copyrighted works on Quizlet, *Dastar* precludes them.

In *Dastar*, the Supreme Court held that a copyright owner cannot bring a Lanham Act false designation of origin claim under 15 U.S.C. § 1125(a) merely because its mark appears on (or is removed from) a copy of the work. *Dastar*, 539 U.S. at 37. Otherwise, a trademark owner could skirt the statutory time limitations on copyright ownership by asserting a false designation of origin claim. *Id.* The Court therefore construed the phrase "origin of goods," as it appears in the Lanham Act to "refer[] to the producer of the *tangible* goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* (emphasis added); *see also* 2 McCarthy on Trademarks and Unfair Competition § 10:26 (5th ed. 2024) ("The Court held that 'origin' in this statutory context denotes only the producer of the physical goods and not the creator of the intellectual property embodied in those goods."). Applying this interpretation to the facts before it, the Court held that the original creator of a television series could not assert a Section 43(a) claim against a business that had copied, edited, and sold tapes of that series under its own name. *Dastar*, 539 U.S. at 27-28, 37.

The same logic bars Plaintiff's Section 43(a) and unfair competition claims.



FENWICK & WEST LLP

Plaintiff has identified no physical goods that Quizlet has allegedly passed off as its own. JAF 73. At bottom, the entirety of Plaintiff's false designation of origin and unfair competition claim is that Plaintiff's copyrighted works appeared on Quizlet's website, thereby creating the impression that Quizlet created them. *Dastar* makes clear that the claim cannot survive summary judgment. Similarly, where unfair competition claims are "based on the very acts . . . that form the factual underpinning of [plaintiff's] copyright claims," they "fail as a matter of law." *Freeplay Music Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263-64 (S.D.N.Y. 2005). That is precisely the case here. Plaintiff expressly alleges that "Quizlet consciously designed Quizlet's product to imitate and copy Barkley's copyright protected digital and print media to create a likelihood of confusion." FAC ¶ 96. As a result, this claim also cannot survive summary judgment under *Dastar*.

*Dastar* is also fatal to Plaintiff's trademark infringement claims. "When an alleged Lanham Act claim over a trademark embedded in a product is more appropriately the subject of a copyright claim, we have held that the copyright infringement claim is superseding and exhaustive." *Evox Prods., LLC v. Verizon Media, Inc.*, No. 21-56046, 2022 WL 17430309, at *2 (9th Cir. Dec. 6, 2022) (*Dastar* precludes trademark infringement claim based on display of plaintiff's trademarks in copyrighted images defendant continued to display on its website after license expired). Cases following *Dastar* have made clear that identifying the source of a document or other copyrightable work with its trademark—even if the work was allegedly copied in violation of *copyright* law—is not trademark infringement. *See, e.g.*, *Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248-50 (9th Cir. 2017) (affirming dismissal of Lanham Act trademark infringement and false designation of origin claims alleging copying of digital audio tracks from trademarked CDs and subsequent performance of the tracks); *Hudson v. Universal Studios, Inc.*, No. 04-CV-6997 (GEL), 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008) ("Since *Dastar*, Lanham Act claims arising from the alleged copying



FENWICK & WEST LLP

of creative work have been 'clearly foreclosed.'"). In *Slep-Tone*, the plaintiff argued that consumers would be confused about the origin of karaoke tracks that the defendant had copied from CDs. *Slep-Tone*, 845 F.3d at 1249. Observing that plaintiff did not base its claim on alleged consumer confusion over a physical good, but over "possible confusion over the source of content," the Court found *Dastar* precluded the claim. *Id.*

Here the evidence is undisputed that Plaintiff's trademark claims are based entirely on the alleged copying of its copyrighted content that happened to contain the presence of its "BARKLEY & ASSOCIATES" and its stylized mark within it. JAF 74. Because those marks are inseparable from the copyright claims, *Dastar* precludes them.

Because *Dastar* forecloses the use of the Lanham Act and unfair competition laws, Quizlet is entitled to summary judgment on Plaintiff's non-copyright claims.

FENWICK & WEST LLP

## BARKLEY & ASSOCIATES' RESPONSE

### I. TRIABLE ISSUES OF FACT EXIST REGARDING QUIZLET'S OWN AFFIRMATIVELY VOLITIONAL USE OF BARKLEY'S MARKS AND TRADE DRESS IN COMMERCE

Quizlet's contention that it acts as a purely passive intermediary whose users alone are responsible for the display of Barkley's marks completely mischaracterizes the operational reality of its platform. While online services are not liable for direct infringement when they merely host user-generated text, a platform loses this insulation when it steps out of its passive storage role and engages in affirmative, volitional conduct that displays or uses a plaintiff's marks to promote its own services.

In *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755 (C.D. Cal. 2015) the court held embedding a plaintiff's trademark in website metadata to direct search engines to infringing products were affirmative use of the mark, creating a likelihood of consumer confusion. This conduct went beyond passive hosting and was considered actionable under trademark law. *Brookfield Communs., Inc. v. W. Coast*

*Entm't Corp.*, 174 F.3d 1036 (1999), held that the use of a plaintiff's trademark in website metatags to create "initial interest confusion" constituted trademark infringement because it affirmatively directed consumers to the defendant's website.

Discovery has revealed that Quizlet does not merely host the term “Barkley.” Rather, Quizlet’s proprietary, platform-driven architectures systematically co-opt Barkley’s protected marks to commercialize its services:

1. **Automated Interactivity and Platform-Authored Prompts:** Quizlet’s interface does not passively list user data; it affirmatively monitors user behavior and generates algorithmic, system-level prompts urging users to “combine” multiple study sets specifically mentioning the term “Barkley.” (FAC ¶ 132). These call-to-action prompts are authored and served directly by Quizlet’s interface code to keep users engaged and upsell its digital platform features.
2. **System-Generated URLs and Platform Branding:** Quizlet incorporates the protected trademark “Barkley” directly into its corporate domain URLs alongside its own proprietary brand formatting and trademarked "Q" logo JAF 85. When automated study sets are compiled, printed, or exported, Quizlet programmatically embeds its corporate name and URL directly onto the face of the materials containing the infringing marks. JAF 86. This persistent co-branding such as "Barkley & Associates 3Ps FNP Study Guide Overview | Quizlet" and "ANCC AGACNP Barkley Review Flashcards | Quizlet" directly ties the premium utility of Quizlet's commercial website to Barkley's established market goodwill.

3. **Affirmative AI Generation of Content:** Crucially, uncontroverted deposition testimony from Quizlet's corporate representative, Sean Marrer, shows that Quizlet uses artificial intelligence tools to synthesize and author "study guide summaries." JAF 81 *See* Marrer Depo. 144:11–146:4. These summaries are *not* user-typed or keyboard-entered. JAF 82. *See* Marrer Depo. 150:18–152:9. Quizlet's own backend generative models ingest underlying study sets containing Barkley's proprietary curriculum, process that text, and algorithmically spit out brand-new platform-authored study guides under the Quizlet banner.

Quizlet's reliance on passive-hosting cases like *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089 (N.D. Cal. 2021) and *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) is misplaced. There, the defendants did not use algorithms to reconstruct, summarize, or cross-promote the trademarked search terms using proprietary artificial intelligence. Quizlet's technical infrastructure crosses the line from passive facilitation to active market exploitation.

Quizlet's defense that Barkley does not have rights in the standalone term "Barkley" because it is a common surname ignores basic tenets of trademark law. A mark including a surname is fully protectable upon showing secondary meaning. The marks are registered on the principal register. Under 15 U.S.C. § 1057

> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

Registration No. 6,270,781 was granted February 16, 2021, and Registration No. 6,272,223 issued on the same day. Barkley has filed declarations for both



FENWICK & WEST LLP

registration under 15 U.S.C. § 1065, and as soon as the USPTO processes them, Quizlet's surname defense will disappear.

*See Yellow Cab Co. of Sacramento v. Yellow Cab Co. of N. California*, 410 F.3d 535, 538 (9th Cir. 2005). In the specialized niche of Family Nurse Practitioner (FNP) test preparation, the standalone term "Barkley" enjoys overwhelming market recognition and secondary meaning because of Barkley & Associates' long-standing, exclusive educational curriculum. Whether Quizlet's programmatic and AI-driven use of "Barkley" creates a likelihood of consumer confusion is a classic, fact-intensive inquiry that must be preserved for the trier of fact.

## II. DASTAR DOES NOT PRECLUDE BARKLEY'S TRADEMARK AND UNFAIR COMPETITION CLAIMS BECAUSE QUIZLET'S AI-DRIVEN CONDUCT EXTENDS FAR BEYOND MERELY COPYING FACTUAL CONTENT

Quizlet argues under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), Barkley's trademark and unfair competition claims are precluded as a repackaged copyright dispute. This defense rests on an overbroad reading of *Dastar* that courts in the Ninth Circuit have rejected. *Dastar* holds that the Lanham Act cannot be used to sue a defendant for "passing off" the intangible, creative ideas inside a physical product that has entered the public domain. It does *not* hold that a defendant is immunized from trademark liability if it uses an operating trademark to trick consumers into believing there is a corporate affiliation, sponsorship, or endorsement between the parties. *See Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017).

Barkley's Lanham Act and Unfair Competition Law (UCL) claims do not merely assert that Quizlet copied its text; they allege that Quizlet structured its online environment, algorithmic prompts, and programmatically compiled URL structures to deceive nursing students into believing that Quizlet's AI-generated study guides are officially endorsed, sponsored by, or affiliated with Barkley & Associates. (FAC ¶ 96). Consumer confusion regarding corporate affiliation and source-sponsorship

FENWICK & WEST LLP

remains actionable under Section 43(a)(1)(A) post-*Dastar*.

The emerging operational architecture of generative AI creates a clear line of demarcation from *Dastar* and its progeny, such as *Slep-Tone*. In *Slep-Tone*, the defendant merely played exact, static digital copies of karaoke tracks that had trademarks embedded inside them. *Slep-Tone*, 845 F.3d at 1248. Here, Quizlet's proprietary AI engine does not just host or copy a static document; it ingests Barkley's trademarked and trade-dress-protected materials, dynamically manipulates the inputs, and outputs automated study guides hosted within Quizlet's branded ecosystem.

Because Quizlet uses the market power of Barkley's name to drive user traffic, and then uses its proprietary software backend to synthesize summary products wrapped in Quizlet's corporate branding, its conduct is an independent trademark and unfair competition violation. This manipulation goes far beyond the mere mechanical reproduction of text targeted by *Dastar*. Because these distinct claims turn on highly complex questions of algorithmic interaction and consumer perception, preclusion is inappropriate, and summary judgment must be denied.

**QUIZLET'S ARGUMENT 3: THE COPYRIGHT ACT PREEMPTS PLAINTIFF'S COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION LAW CLAIMS.**

Section 301(a) of the Copyright Act preempts Plaintiff's claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code 17200 ("UCL"). Courts in the Ninth Circuit employ a two-part test to determine whether Section 301 preempts a state law claim. First, the court determines whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); *see also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (granting summary judgment on grounds UCL claim was preempted by copyright law). Next, the court determines whether the rights "asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106." *Id.*; 17 U.S.C. § 301(a).



FENWICK & WEST LLP

There is no dispute that the works at issue here are within the subject matter of copyright protection under 17 U.S.C. § 102(a). Both Plaintiff's copyrighted works and the material that it alleges appears on Quizlet are literary works, which are works of authorship recognized by 17 U.S.C. § 102(a)(1). Indeed, that is the very basis of Plaintiff's copyright infringement claims.

Second, the rights B&A asserts under the UCL are equivalent to those protected by copyright, namely, the rights of reproduction, distribution, and to create derivative works. 17 U.S.C. § 106. The FAC says as much, alleging in the fifth claim for relief: "Quizlet consciously designed Quizlet's product to imitate and copy Barkley's copyright protected digital and print media to create a likelihood of confusion and to blur the distinction between Quizlet's products and Barkley's well-known company and famed nurse test prep materials." FAC ¶ 96. To survive preemption, the non-copyright claim must have an extra element that changes the nature of the action. *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006) (citation modified). Plaintiffs have not alleged, and there is no evidence to show an extra element that distinguishes its copyright claim from its UCL claim. They seek to vindicate the same rights, and the UCL claim is therefore preempted.

*Kodadek* is instructive. There, the plaintiff brought a UCL claim against the defendant that incorporated by reference its copyright infringement claims. *Kodadek*, 152 F.3d at 1212. Plaintiff does the same here. FAC ¶ 94. And in *Kodadek*, the plaintiff alleged the defendant had been selling products that included plaintiff's copyrighted works, causing injury to the plaintiff. *Kodadek*, 152 F.3d at 1212-13. B&A's claims are indistinguishable. FAC ¶¶ 94-107. Because, like *Kodadek*, B&A expressly bases its UCL claims on copyright infringement, it should meet the same fate; the court should enter summary judgment for Quizlet.

**QUIZLET'S CONCLUSION**

For the reasons stated above, Quizlet requests that the Court enter summary judgment in its favor on all of Plaintiff's claims.

FENWICK & WEST LLP

## BARKLEY & ASSOCIATES' CONCLUSION

Genuine issues of material fact exist that preclude summary judgment on Plaintiff Barkley. This case sits at the intersection of traditional intellectual property protections and generative AI technology. As an emerging and technologically complex tool, integrating proprietary downstream LLM processes, prompt engineering, and automated platform-authored summaries represent a new technology the courts must grapple with. Determining whether these processes are volitional conduct under Ninth Circuit law, or whether they fall outside the passive storage protections of DMCA Section 512(c), inherently depends on highly technical factual inquiries that require expert witnesses and a jury.

Because generative AI is an emerging technology, evaluating how these technical processes ingest, manipulate, and display copyrighted works requires thorough discovery, expert testimony, and a rigorous analysis of the underlying code and algorithmic behavior. Resolution of these issues without the benefit of comprehensive expert opinion is inappropriate at the summary judgment stage. Because Quizlet has failed to meet its burden of showing that no triable issues of fact remain, Barkley respectfully requests that this Court deny Quizlet's summary judgment motion.

Dated: May 29, 2026

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant
QUIZLET, INC.

Dated: May 29, 2026

SOCAL IP LAW GROUP LLP

By: */s/ Brian Tamsut*
Brian Tamsut

Attorneys for Plaintiff
BARKLEY AND ASSOCIATES, INC.

**ATTESTATION**

I, Tyler G. Newby, hereby attest that all other signatories listed above, and on behalf of whom this filing is submitted, concur in the content of this filing and have authorized me to file on their behalf.

Dated: May 29, 2026

*/s/ Tyler G. Newby*
Tyler G. Newby