TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
NICHOLAS A. SANTOS (CSB No. 335767)
nsantos@fenwick.com
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

DIANA C. BUCK (CSB No. 339314)
dbuck@fenwick.com
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendant
QUIZLET, INC.

FENWICK & WEST LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

BARKLEY & ASSOCIATES, INC.,

Plaintiff,

v.

QUIZLET, INC.,

Defendant.

Case No.: 2:24-cv-5964-WLH-E

**QUIZLET, INC.'S REPLY IN SUPPORT OF JOINT BRIEF ON QUIZLET, INC.'S MOTION FOR SUMMARY JUDGMENT**

Date: July 10, 2026
Time: 11:00 a.m.
Ctrm.: 9B, 9th Floor
Judge: Hon. Wesley L. Hsu

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. QUIZLET IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT ........ 1

A. Plaintiff cannot establish volitional conduct. ........ 1

B. The DMCA safe harbor protects Quizlet. ........ 3

C. Plaintiff's vicarious infringement claim fails as a matter of law. ........ 5

III. PLAINTIFF'S TRADEMARK AND RELATED CLAIMS FAIL ........ 6

A. Quizlet has not used Plaintiff's alleged Marks in commerce. ........ 7

B. *Dastar* forecloses Plaintiff's claims. ........ 9

IV. PLAINTIFF SHOULD BE BARRED FROM PRESENTING EVIDENCE OF INFRINGEMENT ........ 9

V. CONCLUSION ........ 10


FENWICK & WEST LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 3

*Briggs v. Blomkamp*,
70 F. Supp. 3d 1155 (N.D. Cal. 2014), *aff'd sub nom. Briggs v. Sony Pictures Ent., Inc.*, 714 F. App'x 712 (9th Cir. 2018) .......... 7, 9

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) .......... 8

*Capitol Records, LLC v. Vimeo LLC*,
826 F.3d 78 (2d Cir. 2016) .......... 4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) .......... 6, 9

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .......... 5

*F.T.C. v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997), *as amended* (Apr. 11, 1997) .......... 3, 8

*Jordan-Benel v. Universal City Studios, Inc.*,
859 F.3d 1184 (9th Cir. 2017) .......... 7

*Melwani v. Amazon.com, Inc.*,
No. C21-1329RSM, 2022 WL 670919 (W.D. Wash. Mar. 7, 2022) .......... 7

*Novalogic, Inc. v. Activision Blizzard*,
41 F. Supp. 3d 885 (C.D. Cal. 2013) .......... 8

*Perfect 10, Inc., v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) .......... 4

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 2, 5

*Perfect 10, Inc. v. Visa International Service Ass'n*,
494 F.3d 788 (9th Cir. 2007) .......... 6

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
845 F.3d 1246 (9th Cir. 2017) .......... 9

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,
163 F. Supp. 3d 755 (C.D. Cal. 2015) .......... 8

FENWICK & WEST LLP

## TABLE OF AUTHORITIES (CONTINUED)

Page(s)

*Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) .......... 6

**Statutes**

15 U.S.C. § 1065 .......... 8

17 U.S.C. § 512(i)(1)(A) .......... 5

Fenwick & West LLP

FENWICK & WEST LLP

## I. INTRODUCTION

Since Barkley & Associates, Inc. ("Plaintiff" or "B&A") brought this lawsuit nearly two years ago, Quizlet has produced an evidentiary record establishing that it is a content-neutral platform whose users—not Quizlet—upload content to Quizlet's website and use Quizlet's AI-enhanced study tools to modify that same content. It has also established its compliance with the DMCA's safe harbor, providing evidence of its prompt removal of thousands of pages in response to B&A's proper takedown requests and its process for terminating repeat infringers. It has further shown that it does not use Plaintiff's marks in commerce and that Plaintiff's misguided trademark claims are based solely on a user's inclusion of the word "Barkley" in the title of user-created study content. Quizlet now grounds its motion for summary judgment in a record of undisputed facts. Plaintiff, meanwhile, opposes summary judgment by relying on rhetorical characterization unsupported by admissible evidence, frequently citing nothing more than unproven allegations in its First Amended Complaint ("FAC"), which as a matter of law, cannot defeat summary judgment. Plaintiff also concedes the factual predicates to several of its claims and abandons entire theories of liability. The Court should grant summary judgment for Quizlet on all claims.

## II. QUIZLET IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT

### A. Plaintiff cannot establish volitional conduct.

The undisputed facts establish that Quizlet provides content-agnostic software tools through which users—not Quizlet—upload content and direct Quizlet's software tools, including the third-party LLMs it uses, to create study aids from that content. Plaintiff has abandoned its earlier theory that Quizlet "trains" AI models on Plaintiff's content (JB at 25)[1] and instead argues that Quizlet's use of AI tools makes it "an active content publisher." (Joint Summary Judgment Brief ("JB") at 24). But

[1] Plaintiff cites a screenshot of a webpage for Coconote, a company Quizlet acquired (JAF 36), but the screenshot is silent on both B&A and AI model training, and Plaintiff offers no explanation of how it bears on its claims.

Plaintiff's support for this argument, which rests largely on allegations in its FAC and the mischaracterization of a few lines of testimony from an unqualified witness, falls far short of creating a dispute of fact.

First, Plaintiff's reliance on a few lines of deposition testimony from Quizlet employee, Sean Marrer, is misplaced. Marrer was a Rule 30(b)(6) representative on Quizlet's DMCA compliance, not AI-enhanced features. Plaintiff mischaracterizes his testimony as showing that Quizlet "actively commands artificial intelligence systems to generate new, derivative summaries," but he said nothing of the sort. *See* JB at 3, 24-25. Marrer—who was neither designated on nor qualified to testify regarding Quizlet's AI-enhanced features—stated that "[m]y understanding is that the summaries are . . . generated by AI," when asked about study guide summaries. JAE 38 at 144:20-145:13. When asked to elaborate, he responded, "[t]hat's the extent of my knowledge" and that summaries and study guides are not user-generated. *Id.* at 145:7-11. Marrer did not testify that Quizlet created study guides and clarified that "[s]ummaries are created as part of study guides when users enter information onto the Quizlet platform" and that "study guide material can be generated from that note that was input by [] the user themselves." JAE 9 at 155:14-21. Far from providing evidence that Quizlet creates infringing content, Marrer's testimony shows that users select and submit the content to AI-enhanced features to summarize it. This user-directed conduct cannot constitute direct infringement. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017).

Plaintiff's remaining efforts to create a disputed fact on volitional conduct rest on unsubstantiated allegations from its FAC and a conclusory declaration from Bianca Burks, a B&A employee. In its motion, Quizlet explained through documents and declarations that Quizlet uses OpenAI and Google LLMs (service providers with contractual limitations as to how they can use data and content, like any other) to support its AI-enhanced features and that users must supply the content to use with those features. (JAF 35-39). Plaintiff cites no facts contradicting this evidence. Nor

FENWICK & WEST LLP

does it support its argument that "Quizlet's platform actively uses these engines to customize, extract, and display localized outputs built directly from Barkley's protected materials." JB at 25.[2] It does not offer either documentary or testimonial evidence regarding how Quizlet's platform uses AI, or what it would mean for outputs to be "built directly from Barkley's protected materials." *Id.* Plaintiff's characterization of how Quizlet's AI tools operate is speculation insufficient to create a disputed fact in the face of evidence submitted by Quizlet. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Quizlet's users upload content, Quizlet's users trigger the use of AI tools, and thus Quizlet itself has not engaged in any volitional conduct. Finally, Burks' conclusory declaration claiming that screenshots show "Quizlet's AI chat feature spitting out Barkley materials," lacks any foundation. From all appearances, she prompted a chat feature to extract content "based on this Barkley flashcard set" that appears to be user-uploaded content. JAF 31; JAE 34. But Burks does not say what she did to create the screenshots, and her declaration is insufficient to create a disputed fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.")

### B. The DMCA safe harbor protects Quizlet.

Quizlet's motion established that it satisfies all the elements required for protection under the DMCA § 512(c) safe harbor. Following a common theme of its Opposition, Plaintiff relies solely on allegations, not evidence, to argue Quizlet does not qualify for the safe harbor. First, Plaintiff's argument that Quizlet's platform is

---

[2] Plaintiff's claim that it has not been provided discovery on Quizlet's use of Google and OpenAI LLMs or Quizlet's AI tools is false. JAF 35. Quizlet produced documents describing the design and function of its AI features, how users engage with those features, and Quizlet's contracts with providers of third-party LLMs, including the Google and OpenAI contracts, in December 2025 and March 2026. Quizlet explained this to Plaintiff's counsel multiple times, including in its opposition to Plaintiff's motion to compel. Dkt. 120-4 ¶¶ 8-9.



FENWICK & WEST LLP

not "indifferent" to the content users post is unsupported by the factual record. Plaintiff identifies no evidence that Quizlet's platform "scan[s] incoming text data" in the manner Plaintiff describes. *See* JB at 26. Unsupported characterizations cannot create a genuine dispute of material fact that defeats summary judgment. *See* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial).

Plaintiff also fails to provide any evidence that Quizlet had "red flag" awareness of infringement. Plaintiff bases its argument on the fact that Quizlet removed 3,881 study sets (JAF 62), but taking down content in response to DMCA notices is what the statute commands, not evidence of "red flag" knowledge that other content is infringing. Moreover, Plaintiff's defective takedown notices undercut its argument as they do not qualify as "red flags." JB at 19.[3] Plaintiff's own witness admitted that Plaintiff's employees did not always check takedown links before submitting them. JAE 3 at 286:13-21. And Plaintiff does not dispute that it submitted takedown notices targeting materials that did not contain copies of its copyrighted works. JAF 53 (partially disputing the fact only on a separate basis). When a rightsholder's takedown practices are this unreliable, its notices cannot impute "red flag" awareness to a service provider. *See Perfect 10, Inc., v. CCBill LLC*, 488 F.3d 1102, 1114 (9th Cir. 2007).

B&A's reliance on *Capitol Records, LLC v. Vimeo LLC* is misplaced. 826 F.3d 78 (2d Cir. 2016). That court rejected the argument that awareness of facts "suggesting a likelihood of infringement" creates a duty to investigate, holding such a position would "largely undo the value of 512(m)." *Id.* at 98-100. Acting on takedown notices is what the DMCA requires, and what the evidence shows Quizlet does. Tellingly, B&A identifies no specific instance in which Quizlet knew of a

---

[3] For example, one third party told Quizlet that her own original study set had been incorrectly reported by Plaintiff, and Quizlet's investigation confirmed the error. *See* JAE 15 at 194; JAE 3 at 284:12-293:11.



FENWICK & WEST LLP

specific infringement and failed to act promptly.

Finally, Quizlet complied with its repeat infringer policy. JAF 40, 42, & 48. The DMCA does not dictate the details of the policy or specific termination threshold; it requires only that the provider "adopted and reasonably implemented" a policy for terminating repeat infringers "in appropriate circumstances." 17 U.S.C. § 512(i)(1)(A). Plaintiff does not point to *any* testimonial or documentary evidence that Quizlet lacked a repeat infringement policy or failed to follow it – it relies only on supposition. In contrast, Quizlet's termination of thousands of users is unrebutted evidence of its reasonable implementation of a repeat infringer policy. JAF 48. As such, Plaintiff has failed to raise any genuine dispute of material fact.

### C. Plaintiff's vicarious infringement claim fails as a matter of law.

The undisputed facts support granting Quizlet's motion on B&A's vicarious infringement claim. First, Plaintiff fails to present evidence that Quizlet received a direct financial benefit from third parties' alleged infringement of Barkley copyrighted works. At most, Plaintiff contends that "Barkley's test preparation guides command a massive, highly motivated commercial consumer base of graduate nursing students. Quizlet uses these materials as an active commercial draw." JB at 27. This is unsupported argument, not evidence. The Ninth Circuit requires *evidence* that a service "attracted or retained subscriptions because of the infringement or lost subscriptions because of [defendant]'s eventual obstruction of the infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *see also Giganews*, 847 F.3d at 674 (denying vicarious infringement where plaintiff failed to provide "evidence indicating that anyone subscribed to [defendant's service] because of [plaintiff's] infringing material"). Argument cannot create a dispute of fact, and Plaintiff identifies no evidence supporting these arguments.

Quizlet, on the other hand, provided uncontroverted evidence that users with paid subscriptions do not gain access to content that free users do not. A user need not purchase a premium subscription to see content on Quizlet. JAF 44. All user-

FENWICK & WEST LLP

added content is available to all users regardless of account type. *Id.* The premium subscription is unrelated to Plaintiff's content, and revenue from those subscriptions cannot, as a matter of law, be directly related to its alleged infringement.

Second, Plaintiff fails to identify a disputed fact that Quizlet lacks the right and ability to supervise infringing conduct. Plaintiff's argument that Quizlet has "exclusive programmatic power" over its AI tools conflates the mere ability to operate a platform with the legal standard for supervisory control over infringing activity. JB at 28. Under Plaintiff's theory, any digital platform operator would automatically satisfy this prong simply by owning and maintaining its technology. The Ninth Circuit has squarely rejected this argument. *See Perfect 10, Inc. v. Visa International Service Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007) (vicarious infringement requires more than the right to refuse services). Vicarious liability demands evidence that Quizlet exerted substantial influence over what users uploaded or how they used the platform's tools. *Id.* at 803-04. Plaintiff has come forward with no such evidence. Plaintiff's reliance on *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) is also misplaced. There, the Ninth Circuit held that a website operator did *not* have the ability to control users' uploads of infringing content, despite the operator personally screening 30,000 to 40,000 uploads per day. *Id.* at 601, 613. Quizlet's activities are no more "active" than those *Motherless* found insufficient, and the decisive factor remains the same: users, not the platform, decide what content to create and share. *Id.* at 608.

Plaintiff's vicarious infringement claim should be dismissed.

## III. PLAINTIFF'S TRADEMARK AND RELATED CLAIMS FAIL

The Court should enter summary judgment for Quizlet on B&A's trademark, trade dress (the "Marks"), and unfair competition claims because there is no evidence that Quizlet used the Marks in commerce. Further, they are barred by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Finally, Plaintiff did not meaningfully oppose Quizlet's motion on the grounds that Section 301 of the

FENWICK & WEST LLP

Copyright Act preempts the common law trademark and unfair competition claims, summary judgment should be entered for Quizlet on those claims.[4]

**A. Quizlet has not used Plaintiff's alleged Marks in commerce.**

Plaintiff fails to create a genuine issue of material fact on whether Quizlet uses Plaintiff's alleged Marks in commerce. Plaintiff argues that Quizlet is not a "passive intermediary whose users alone are responsible for the display of [Plaintiff's] marks," and points to three categories of alleged affirmative conduct. None is supported by record evidence. JB at 34-36. First, Plaintiff asserts that Quizlet "urg[es] users to 'combine' multiple study sets specifically mentioning the term 'Barkley,'" but cites only its FAC, not record evidence. *Id.* at 35. "[A]llegations in a complaint are not evidence that can be used to support or oppose summary judgment." *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014), *aff'd sub nom. Briggs v. Sony Pictures Ent., Inc.*, 714 F. App'x 712 (9th Cir. 2018) (citation omitted).

Second, Plaintiff argues that Quizlet incorporates "the 'protected trademark 'Barkley' directly into its corporate domain URLs alongside its own proprietary brand formatting and trademarked 'Q' logo." JB at 35. But the appearance of "Barkley" in a Quizlet.com URL "merely shows how the website's data is organized and/or the search term entered by the consumer, and that this does not violate trademark law." *Melwani v. Amazon.com, Inc.*, No. C21-1329RSM, 2022 WL 670919, at *4 (W.D. Wash. Mar. 7, 2022).

Additionally, Plaintiff has not introduced evidence that it has any rights in the term "Barkley." JB at 31. Plaintiff submitted the declaration of its employee, Bianca Burks, baldly asserting that Plaintiff "has extensive common law trademark rights in its corporate name and identity, which are recognized throughout the national medical and nursing education sectors." JAE 34. This is a legal conclusion without

---

[4] Plaintiff addresses this argument in one sentence and cites only an anti-SLAPP opinion, *Jordan-Benel v. Universal City Studios, Inc.*, that does not address preemption. 859 F.3d 1184, 1191 (9th Cir. 2017).



FENWICK & WEST LLP

foundation from a lay witness who was not disclosed or qualified as an expert and should be disregarded. *See* Dkt. 146-7 at 2-3 (Joint Appendix of Objections); *Publ'g Clearing House, Inc.*, 104 F.3d at 1171; *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 897 (C.D. Cal. 2013) (finding CEO's declaration was "inadmissible anecdotal evidence in an effort to demonstrate [] actual confusion" and "improper opinion testimony by a lay witness"). Plaintiff also argues it has trademark rights because it "filed declarations . . . under 15 U.S.C. § 1065." JB at 36-37. But federal incontestability of "Barkley & Associates," even if it was filed as evidence, does not create trademark rights in the standalone term "Barkley," which Plaintiff concedes it does not have registration for. *See* JAF 8-9. Similarly, Plaintiff has not identified any protectible trade dress, despite being ordered to. *See* Dkt. 127; JAE 18 at 210 (Interrogatory No. 14).

Plaintiff further argues that Quizlet "cobrands" the phrase "Barkley & Associates" with content on Quizlet's website. JB at 35. As explained in Quizlet's MSJ, Plaintiff's asserted Marks appear in content Quizlet *users* add to Quizlet. JB at 30-31. This does not support use in commerce to find trademark infringement.

Third, Plaintiff argues that Quizlet engages in use in commerce by "us[ing] artificial intelligence tools to synthesize and author 'study guide summaries.'" JB at 36. As discussed above, Plaintiff's asserted marks appear only in content uploaded by Quizlet's users and use of the AI-enhanced study tools on Quizlet's website is also at the direction of Quizlet users.

Plaintiff's cases are also inapposite.[5] *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 759 (C.D. Cal. 2015), and *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1041 (9th Cir. 1999), were both challenges to the pleadings not summary judgment. And unlike *Spy Optic*, B&A asserts no argument

---

[5] Plaintiff cites *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of N. California*, 410 F.3d 535, 538 (9th Cir. 2005). JB at 37. Quizlet found no record of a case with this name and case reporter number in Westlaw.



FENWICK & WEST LLP

or evidence that Quizlet has used Plaintiff's Marks in its website metadata.

Because Plaintiff has failed to present any evidence that Quizlet has used Plaintiff's asserted Marks in commerce, Quizlet is entitled to summary judgment on Plaintiff's federal and state trademark, trade dress, and unfair competition claims.

**B. *Dastar* forecloses Plaintiff's claims.**

Like the rest of its Opposition, Plaintiff relies on unsupported argument, not evidence, in response to Quizlet's argument that *Dastar* bars Plaintiff's Lanham Act and unfair competition claims. Specifically, Plaintiff argues that "Quizlet's proprietary AI engine . . . ingests Barkley's trademarked and trade-dress-protected materials, dynamically manipulates the inputs, and outputs automated study guides hosted within Quizlet's branded ecosystem." JB at 38. Once again, Plaintiff points only to allegations in the FAC, not evidence, in support of this argument, which cannot create a disputed fact. *See* JB at 37 (citing FAC ¶ 96); *Briggs*, 70 F. Supp. 3d at 1166. More importantly, the Ninth Circuit has applied *Dastar* to bar trademark claims based on the display of copyrighted content bearing trademarks, regardless of the method of reproduction. *See Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248-50 (9th Cir. 2017). Whether Quizlet hosts a static copy or processes content through AI tools, the *Dastar* analysis is the same: B&A's asserted marks are embedded in Quizlet users' content itself, and Plaintiff's trademark claims are merely repackaged copyright claims.

## IV. PLAINTIFF SHOULD BE BARRED FROM PRESENTING EVIDENCE OF INFRINGEMENT

Plaintiff should be prohibited from presenting evidence of copyright or trademark infringement for failing to comply with Judge Eick's order requiring Plaintiff to identify each instance of alleged infringement and the copyrighted work, mark, and trade dress allegedly infringed in response to Quizlet's interrogatories. Dkt. 127. Judge Eick explicitly stated that "[i]t is improper to answer an interrogatory with a non-specific reference to documents or records." *Id.*

FENWICK & WEST LLP

Plaintiff contends it "produced comprehensive lists of its copyrighted materials and provided thousands of matching URLs directly tying the infringement to Quizlet's interface." JB at 13, 28. Even if true, this does not remedy Plaintiff's improper interrogatory responses which, even after Judge Eick's order, consist of the same non-response: "Barkley has produced and will continue to produce documents responsive to this request." *See* JAE 18 at 208-211. Plaintiff argues that because Quizlet removed 3,881 study sets in response to takedown requests identifying specific URLs, *see* JAF 62, this somehow shows Quizlet can independently determine which screenshots Plaintiff produced correspond to the copyright registrations Plaintiff claims to own, and which content on those screenshots allegedly infringes Plaintiff's works. It cannot, which is why Quizlet asked Plaintiff to identify both its registered works and the specific instances of infringement, as Judge Eick ordered. JAE 18 at 208 (Interrogatory No. 10); Dkt. 127.

Plaintiff further argues that it should not be precluded from presenting evidence because there has not been a bad faith refusal to cooperate. JB at 29. The opposite is true. This Court previously sanctioned Plaintiff for failing to prepare a Rule 30(b)(6) witness, and Plaintiff's noncompliance with Judge Eick's order shows a reckless disregard for the discovery process. Plaintiff even argues that "discovery and the infringement here are ongoing" and that it "continues to produce documents as they become available." *Id.* at 28. This is nonsensical; discovery closed April 9, 2026. *See* Dkt. 112 at 22. Likewise, Plaintiff attempts to dispute key facts by stating "Barkley produced thousands of documents in accordance with the court order See record as a whole." *See* JAF 63-68, 70-72. Plaintiff's invocation of "the record as a whole" shows its pattern of nonanswers, and the Court should bar Plaintiff from presenting evidence of infringement.

## V. CONCLUSION

For all the above reasons, Quizlet respectfully requests that the Court grant its motion for summary judgment and dismiss this case, in its entirety.

FENWICK & WEST LLP

Dated: June 5, 2026

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant
QUIZLET, INC.

FENWICK & WEST LLP