UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05964-WLH-E | Date | July 14, 2026 |
|---|---|---|---|
| Title | ***Barkley and Associates, Inc. v. Quizlet, Inc.*** | | |

Present: The Honorable   WESLEY L. HSU, United States District Judge

| Evelyn Chun | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:   (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [146] [152]**

The Court is in receipt of Defendant's Motion for Summary Judgment.  (Mot., Dkt. Nos. 146, 152)[1].  The Court heard oral argument on July 10, 2026.  For the reasons explained herein, the Court **GRANTS** the Motion.

## I.   BACKGROUND

### 1. The Parties

Plaintiff Barkley & Associates ("Plaintiff" or "B&A") sued Defendant Quizlet Inc. ("Defendant" or "Quizlet") for (1) Trademark Infringement, 15 U.S.C. § 1114; (2) Copyright Infringement, 17 U.S.C. §§ 101 *et seq.*; (3) Lanham Act Unfair Competition 15 U.S.C. § 1125(a); (4) Common Law Trademark Infringement; (5) Unfair Business Practices under Cal. Bus. & Prof. Code § 17200 and (6) Vicarious Copyright Infringement under 17 U.S.C.A. § 106.  (*See generally* FAC).  Plaintiff is a continuing education publisher that provides test-preparation materials for graduate nursing students studying to become certified nurse practitioners.  (Joint Appendix of Facts ("JAF") Dkt. No. 152-1 ¶ 1) (citing FAC ¶¶ 1, 7).  Plaintiff's offerings include live courses,

---

[1] The Motion was filed as a joint brief pursuant to the Court's Standing Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

audiovisual courses, study manuals, practice questions, textbooks and other study materials.  (JAF ¶ 3).

Defendant is an online service that provides study tools that students and educators use to aid their education across various subjects, including math, literature, languages, science, social science arts and humanities.  (JAF ¶ 11; Declaration of Matthew Kosko ("Kosko Decl."), Dkt. No. 152-4 ¶¶ 5-6)[2].  More than 60 million users interact with Quizlet's service, most of whom use it for free.  (JAF ¶ 12; Kosko Decl. ¶ 5).  Users may upload typed material or documents, such as Word documents, slides or PDFs.  (JAF ¶ 17).  The content users add may include notes users type or paste into Quizlet's interface.  (JAF ¶ 18; Kosko Decl. ¶ 10).

"Quizlet does not encourage its users to add third-party copyrighted content or Plaintiff's published materials.  Quizlet expressly prohibits such behavior."  (Kosko Decl. ¶ 13).  Both parties agree that B&A's corporate representative admitted that students, not Quizlet, uploaded B&A content.  (JAF ¶ 16).  Quizlet states that it does not add or create study content that users utilize in its study tools to learn.  (*See* Deposition of Sean Marrer ("Marrer Dep."), Dkt. No. 152-2, Ex. 8 at 35:1-36:2) ("People -- Quizlet users, I use the words students and teachers, type -- can type information into the Quizlet website to create what we call a ·· ·flash card set."); (*Id*. at 152:24-154:6) ("Quizlet does not generate the content . . . other third parties do not create content based off Quizlet sets. The user creates the study guide themselves.  The user creates the study guide as a whole. Within the study guide there is a summary.").  Plaintiff alleges that Quizlet's AI tools reproduce and disseminate B&A's copyrighted and trademarked content without users initially inputting that content.  (*See generally* Declaration of Bianca Burks ("Burks

---

[2] Matthew Kosko is Defendant's Director of User Operations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Decl."), Dkt. No. 146-5 ¶ 3) ("Attached as Exhibit 1 to this declaration are screenshots my teammates and I took of Quizlet's AI chat feature spitting out Barkley materials.")).

### 2. *Quizlet Study Tools and Generative AI Usage*

Quizlet users may choose from various Quizlet study tools, including flashcards, study guides and practice test features. (JAF ¶ 20). "Quizlet's users add the content that they or other Quizlet users study. Quizlet does not add or create study content that users use these tools to learn, and it does not direct or constrain users to add content of any particular discipline or type." (Kosko Decl. ¶ 9).

Quizlet's "Learn" and "Test" modes allow users to select a flashcard set they created or select flashcard sets created by other users and then use the tool to study the content using various forms of study questions, such as multiple choice, true/false questions, matching questions and written prompts. (Declaration of S. Mooney ("Mooney Decl."), Dkt. No. 152-6 ¶ 11). Mooney, Quizlet's Principal Machine Learning Engineer, also explains, "[n]one of these tools performs a function unless the user submits user generated content of the user's choosing to generate the desired output. The user, and the user alone, inputs or selects content added to Quizlet by other users as input to the AI-enhanced tools to generate output from that content." (*Id*. ¶ 14).

Plaintiff, however, disputes that these are always user generated. (Joint Appendix of Evidence Volume 4 ("JAE Volume 4") Dkt. No. 146-6, Ex. 1). Sean Marrer, Defendant's Rule 30(b)(6) designee on its DMCA compliance process, testified that the platform's proprietary study guides and text summaries are not user-generated. (*Id*.). When asked if the summaries that Defendant displays when it presents a study guide are user generated, Marrer states, "[i]n a study guide, no. The summaries are not user generated." (*Id*. at 145:1-18). To further explain how the summaries are generated, Marrer states, "[m]y understanding is that the summaries are generated by AI . . . [i]t's a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

summary generated by AI, an AI powered summary.  Summaries and study guides are not user generated."  (*Id.*).

The parties agreed that Quizlet's Practice Test mode allows students to create practice tests of questions and answers.  (JAF ¶ 28).  When using Quizlet's "Practice Test" mode, users must add content of their own or select content other Quizlet users have added and made available to them.  (Mooney Decl. ¶ 12).  Further, "[a]t the user's discretion, the content is extracted, and multiple-choice questions and answers are generated by a third-party AI model and selected from a reservoir of multiple questions." (*Id.*).  Plaintiff disputes this point because they allege that the only evidence proffered by Defendant as to this issue derives from Mooney, Quizlet's Principal Machine Learning Engineer, whom Plaintiff claims he was not given the opportunity to depose.  (JAF ¶ 29).

Additionally, Defendant does not build large language models ("LLMs") to support its AI-enhanced study tools.  (Mooney Decl. ¶ 5).  Instead, it uses third-party LLMs developed by OpenAI (ChatGPT) and Google (Gemini).  (*Id.*).  Quizlet's agreements with OpenAI and Google prohibits these companies from using the content users submit through Quizlet to train the OpenAI and Google AI models for their general use.  (*Id.* ¶ 6).  Users, according to Defendant, must supply the input content.  (*Id.* ¶ 19).  Plaintiff again disputes this claim by stating that Quizlet's AI-enhanced features can generate content based on AI generated content, and Plaintiff submits screenshots of a chat of a user requesting Barkley materials.  (JAE Volume 3, Dkt. No. 146-5, Ex. 35).

*3. Barkley and Associates' Asserted Copyrights*

B&A attached to the FAC twelve copyright registrations it claims it owns and alleges that Quizlet infringes upon.  (JAF ¶ 3).  Defendant asserts that Plaintiff has not provided evidence of how the eight sound recordings referenced in the FAC were infringed by Quizlet.  (JAF ¶ 7).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*4. Plaintiff's Trademarks*

Plaintiff owns two federal trademarks: (a) Reg. No. 6,270,781 "Barkley & Associates" work mark (JAE Volume 1, Dkt. No. 146-3, Ex. 3); and (b) Reg. No. 6,272,223 design mark with concentric ovals (*Id.*, Ex. 4).  Plaintiff applied for a trademark for "Barkley," and it was rejected.  (*Id.*, Ex. 5 at 2).  The USPTO initially refused registration of "Barkley" because it consisted primarily of a surname but allowed registration for the combined phrase "Barkley & Associates."  (JAF ¶ 10).  Plaintiff's only proffered evidence for the existence of a common law trademark in "Barkley" is a statement from a Barkley & Associate's employee who badly states that Plaintiff "has extensive common law trademark rights in its corporate name and identity, which are recognized throughout the national medical and nursing education sectors."  (Burks Decl., ¶ 2).  Outside of this, B&A has not provided evidence to demonstrate that a common law trademark right to the term "Barkley" exists.

On July 16, 2024, Plaintiff filed its initial Complaint.  (Compl., Dkt. No. 1).  On September 30, 2024, Defendant filed a Motion to Dismiss Plaintiff's Complaint.  (Motion to Dismiss, Dkt. No. 27).  The Court ultimately denied Defendant's Motion to Dismiss.  (Order re MTD, Dkt. No. 36).  The Court later granted Plaintiff's Motion for Leave to File a FAC.  (Order re Motion to File FAC, Dkt. No. 80).  Ultimately, Defendant moved for summary judgment with the parties filing a joint brief on May 29, 2026.  On June 5, 2026, Defendant filed its Reply.  (Reply, Dkt. No. 149).

**II.    DISCUSSION**

**A. <u>Legal Standard</u>**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The substantive law determines which facts are material; only disputes over facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248-49.  A party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party."  T.*W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

governing substantive law. *Id*. The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id*. at 630–31.

### B. Analysis

#### 1. *Copyright Infringement*

##### a. Direct Copyright Infringement

Defendant moves for summary judgment in part because of its argument that it did not directly infringe on Plaintiff's copyright through autonomous volitional conduct. (Mot. at 14). To state a claim for direct copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) copying of constituent original elements of the work. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Copying may be shown directly or circumstantially by alleging access and substantial similarity. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). A plaintiff must also allege that the defendant engaged in "volitional conduct," that is, conduct that can reasonably be described as the direct cause of the copying. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020).

Volitional conduct is required because copyright law does not impose strict liability; merely operating a system that responds automatically to user input is generally insufficient. *VHT Inc. v. Zillow Grp.*, Inc., 918 F.3d 723, 731-32 (9th Cir. 2019); *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014). Essentially, an opposing party must proffer evidence from which the finder of fact could find that the alleged infringer engaged in volitional conduct that was the proximate cause of the infringement. *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074-76 (9th Cir. 2023).

Defendant contends that there is no evidence that it is the proximate cause of any alleged infringement and that its AI tools are neutral tools that are capable of substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

non-infringing uses.  (Mot. at 15-16).  In support, Defendant cites *VHT*, where the Ninth Circuit held that the defendant's passive storage and display of real estate photos—submitted by third parties through licensed intermediaries—was insufficiently volitional. (*Id*. at 15) (citing *VHT*, 918 F.3d at 732, 737).

Plaintiff, however, attempts to provide evidence that distinguishes Defendant's conduct from the passive conduct in *VHT*.  (Mot. at 24-25).  For example, Defendant's Rule 30(b)(6) designee on the DMCA compliance process, Marrer, testified that the platform's proprietary study guides and text summaries are not user generated.  (*See generally* JAE Volume 4, Ex. 1).  When asked if the summaries that Defendant displays when it presents a study guide, Marrer states, "[i]n a study guide, no. The summaries are not user generated."  (*Id*. at 145:1-18).  To further explain how the summaries are generated, Marrer states, "[m]y understanding is that the summaries are generated by AI . . . [i]t's a summary generated by AI, an AI powered summary.  Summaries and study guides are not user generated."  (*Id*.).  Accordingly, Plaintiff provides this deposition testimony to support its position that when a user inputs raw text, Defendant does not passively host it.

The critical question, however, under Ninth Circuit precedent is *who* caused the derivative work or infringing reproduction.  In *Fox Broad. Co.*, the Court found that "operating a system used to make copies at the user's command does *not* mean that the system operator, rather than the user, caused copies to be made."  747 F.3d at 1067 (emphasis added).  In this case, the Ninth Circuit found that the lower court "did not err in concluding that the user, not Dish, makes the copy."  *Id*.  Similarly, the Court in *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 670 (9th Cir. 2017), did not find volitional conduct where the plaintiff was unable to provide evidence "showing Giganews exercised control (other than by general operation of a Usenet service);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution."

The dissent in *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014), is instructive. That dissent considers the relationship between volitional conduct and an "an automated-service provider's direct liability for copyright infringement." *Id*. The dissent went on to explain that while "most direct-infringement cases" do not present this issue "it comes right to the fore when a direct-infringement claim is lodged against a defendant who does nothing more than operate an automated, user-controlled system." *Id*. at 454. "Most of the time that issue will come down to who selects the copyrighted content: the defendant or its customers." There is no material dispute of fact here that the AI tools on Defendant's website are user supported and employed, and so it is the user, not Quizlet, that engages in volitional conduct.

Defendant correctly contends that merely operating an online service through which users post materials does not give rise to liability for direct copyright infringement. *See Giganews, Inc*., 847 F.3d at 670 (*quoting CoStar Grp., Inc. v. LoopNet, Inc*., 373 F.3d 544, 555 (4th Cir. 2004)) ("As the Fourth Circuit held, agreeing with the reasoning of *Netcom*, 'automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an [Internet service provider] strictly liable for copyright infringement.'"). Defendant proffers undisputed evidence that contradicts Plaintiff's arguments. Defendant provides testimony by Defendant's Principal Machine Learning Engineer, Mooney, who asserts, "Quizlet does not select or dictate the content that users submit to Quizlet's AI study tools. Users alone select and input the content to Quizlet's AI tools." (Mooney Decl. ¶ 9). This representative also explains, "[n]one of these tools performs a function unless the user submits user generated content of the user's choosing to generate the desired output. The user alone inputs or selects content

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

added to Quizlet by other users as input to the AI-enhanced tools to generate output from that content." (*Id*. ¶ 14). "For example, to create an AI-enhanced study guide, a user must add content of their own. They must then direct the tool to create a study guide. The user must supply the content and then use Quizlet's AI-enhanced tools on that content." (*Id*. ¶ 15).[3]

Defendant cannot be held liable for direct copyright infringement because the allegedly infringing output is generated in response to a user's submission of B&A's content and the user's request that Quizlet's AI tools process it into study guides and summaries. The Court also does not find Burks' statement that Quizlet's AI chat feature to be sufficient to hold Defendant liable. Burks states, "[a]ttached as Exhibit 1 [reproduced below] to this declaration are screenshots my teammates and I took of Quizlet's AI chat feature spitting out Barkley materials." (Burks Decl. ¶ 3).

---

[3] Defendant also alleges the lack of credibility of Marrer's statements as Marrer "was neither designated on nor qualified to testify regarding Quizlet's AI-enhanced features." (Reply at 2). At the summary judgment stage, this Court may not make determinations regarding credibility, and what Marrer stated does not create a genuine issue of material fact. Marrer testified only that the summaries and study guides are "AI generated"; he could not explain what that meant specifically, (JAE Volume 4, Ex. 1 at 145:9-13). The statement does not create a genuine issue of material fact as to whether Quizlet, rather than a user employing Quizlet's tool, engaged in volitional conduct. Marrer's testimony is fully consistent with a user employing Quizlet's AI tools to generate the study guides and summaries. Put another way, Marrer and Mooney's testimony is consistent and does nothing to create a genuine issue of material fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**



In the screenshot, the prompts, which led to the results provided by the AI tool, specifically state, "can you give me new questions with an answer sheet based on this barkley flashcard set," and "can you gave [sic] me 5 new questions and answers based on this barkley flashcard set." (*Id.*). The Court finds that these screenshots are insufficient to create a disputed fact because the prompt specifically requested information based on *user* submitted B&A flashcard sets. (*See* Mooney Decl. ¶ 11) ("None of these tools performs a function unless the user submits user generated content of the user's choosing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

to generate the desired output.  The user, and the user alone, inputs or selects content added to Quizlet by other users as input to the AI-enhanced tools to generate output from that content."; (Kosko Decl. ¶ 9) ("Quizlet's users add the content that they or other Quizlet users study.  Quizlet does not add or create study content that users use these tools to learn, and it does not direct or constrain users to add content of any particular discipline or type.").  As the Ninth Circuit has confirmed, a defendant operating a system used to make copies at the user's command does *not* mean that the system operator caused copies to be made.  *Fox Broad. Co.*, 747 F.3d at 1067.

Based on the undisputed evidence that Quizlet's users select or dictate the content that users submit to Quizlet's AI study tools, the requisite volitional conduct rests with the user, not Defendant.  Accordingly, Defendant has satisfied its burden to demonstrate the absence of a genuine dispute of material fact regarding direct copyright infringement.  Thus, Defendant's Motion is as to this issue.

### b.  *Vicarious Copyright Infringement*

Defendant moves for summary judgment as to Plaintiff's vicarious copyright infringement claim.  (Mot. at 20).  To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant "has the right and ability to supervise the infringing conduct" and "a direct financial interest in the infringing activity."  *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 757, 777 (N.D. Cal. 2024) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1169 (9th Cir. 2007)).  To have the right and ability to control, a service provider must be able to exert "substantial influence" on its users' activities.  *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th Cir. 2018).  The "[r]ight and ability to control involves something more than the ability to remove or block access to materials posted on a service provider's website."  *Id.*  The Ninth Circuit concluded that even if the service can "control its own index, search results, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

webpages," those facts do not give it "the right to control the infringing acts of third parties." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007). "Financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *A&M Recs., Inc. v. Napster, Inc.,* 239 F.3d 1004, 1023 (9th Cir. 2001) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)). The court in *Fonovisa* found that financial benefit may be shown "where infringing performances enhance the attractiveness of a venue." *Fonovisa,* 76 F.3d at 263-64.

To prove that Defendant exerts substantial influence on its users' activities, Plaintiff solely points to Marrer's testimony, stated previously, regarding the fact that Defendant's study guides and summaries are not user generated. As discussed above, this is not an inference that can be drawn from Marrer's testimony. Plaintiff nevertheless states, "[b]ecause Quizlet has the exclusive programmatic power to toggle its AI summary mechanisms on or off, edit indexing protocols, and generate co-branded PDFs, it maintains the practical and legal ability to supervise and stop the ongoing exploitation of Barkley's materials" (Mot. at 28), but does not provide evidence to support this statement. To prove the second prong of vicarious liability that Defendant financially benefits from its alleged infringing material, Plaintiff states, "Quizlet routinely hosts indexed public URLs using Barkley's name and product identity to capture search-engine traffic." (Mot. at 27). To support this statement, Plaintiff provides a screenshot, reproduced below, that shows a downloadable PDF study pack, presumably provided by Defendant, that features "Barkley & Associates 3Ps FNP Study Guide Overview Quizlet." (JAE Volume 4, Ex. C at 467).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

12/29/25, 12:37 PM                    Barkley & Associates 3Ps FNP Study Guide Overview | Quizlet

Name: _____                                            Score: _____

**18 Multiple choice questions**

Term                                                                        1 of 18
What key concepts are covered in Advanced Pharmacology regarding Autonomic Nervous System Drugs?

○ Sympathetic vs parasympathetic effects, common drug classes (e.g., BBs, ACEIs).

○ Endocrine system effects, common drug classes (e.g., thyroid hormones, insulin analogs).

○ Central nervous system effects, common drug classes (e.g., Antidepressants, Sedatives).

○ Adrenergic vs cholinergic effects, common drug classes (e.g., Diuretics, Vasodilators).

Term                                                                        2 of 18
What key concepts are included in Advanced Physical Assessment for Differentiating Normal vs. Abnormal Findings?

○ Key red flags, age-related variations, differential diagnosis support.

○ Normal growth patterns, routine screening procedures, preventive care measures.

○ Expected developmental milestones, typical imaging results, standard diagnostic tests.

○ Common symptoms, typical lab values, standard treatment protocols.

At this stage, however, the Court requires *evidence* that a service "attracted or retained subscriptions because of the infringement or lost subscriptions because of [defendant]'s eventual obstruction of the infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *see also Giganews*, 847 F.3d at 674 (denying vicarious infringement where plaintiff failed to provide "evidence indicating that anyone subscribed to [defendant's service] because of [plaintiff's] infringing material."). For example, the Ninth Circuit in *Napster* found that Napster increased its userbase by providing its customers with access to pirated copies of protected works and that "[a]mple evidence support[ed] the district court's finding that Napster's future revenue[was] directly dependent upon increases in userbase." *Napster*, 239 F.3d at 1023. The screenshot provided is not enough to prove that any users subscribed to Defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

service *because* of Plaintiff's material.  Similar to the Court's finding in *Giganews*, Plaintiff "does not proffer evidence showing that [Quizlet] attracted subscriptions because of the infringing [B&A] material."  *Giganews*, 847 F.3d at 674.

Defendant, on the other hand, submits evidence that Quizlet users who pay for a subscription do not gain greater access to content on Quizlet than non-paying users.  (JAF ¶ 44).  Specifically, Defendant's Director of User Operations, Kosko, states,

> Quizlet does not charge for access to content that users add or create on the site.  Quizlet's paid subscription tiers, known as Quizlet Plus and Quizlet Plus Unlimited, give users the ability to use certain study tools, including AI-enhanced study tools, to work with user-added content with greater frequency each month, but they do not give any greater access to content than free users have.

(Kosko Decl. ¶ 12).  Because paying and non-paying Quizlet users have access to the same content, Plaintiff has not created a genuine dispute of material fact that the availability of its content on Quizlet's website has any causal bearing on whether users subscribe to Quizlet Plus, Quizlet Plus Unlimited or Quizlet generally.  Accordingly, Plaintiff has not provided evidence tying a financial benefit that Defendant receives from subscriptions to infringement of Plaintiff's content.  Accordingly, because Plaintiff did not properly refute, with evidence, that Defendant may have the right and ability to supervise the infringing conduct *and* receive a direct financial interest in the infringing activity, Defendant has established an absence of genuine dispute of material fact on this issue, so the Motion is **GRANTED** as to this issue.

c.  Section 512(c) Immunity

Defendant also asserts that it is entitled to summary judgment because it qualifies for safe harbor protections under 17 U.S.C.A. § 512.  (Mot. at 17).  There are several requirements that must be met for a service provider to receive Section 512(c) safe harbor protection.  *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

15 (9th Cir. 2013).  To qualify for the safe harbor, a service provider must designate an agent to receive notifications of claimed infringement.  17 U.S.C. § 512(c)(2).  It also must show that (1) it complied with Section 512(i)'s notice and takedown procedure; (2) "it lacked actual or red flag knowledge of the infringing material" and, if it did gain such knowledge, "act[ed] expeditiously to remove, or disable access to, the material"; and (3) "it did not receive a 'financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity.'"  *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017).

Here, Quizlet has demonstrated that it has an effective process and policy for receiving takedown requests from rightsholders.  (Kosko Decl. ¶ 16).  Under the policy, copyright owners may submit requests through a form on Quizlet's website as well as through email.  (*Id*. ¶ 18).  Quizlet removes content after receiving proper and complete DMCA takedown notice from any party, including Plaintiff.  (*Id*. ¶ 23).  For example, both parties agree that Plaintiff has used Quizlet's DMCA takedown process.  (JAF ¶ 49).  As of the end of 2025, Quizlet had removed 3,881 unique Set IDs of study sets in response to takedown notices and some informal notices submitted by Plaintiff.  (*Id*. ¶ 62).

Plaintiff, in contrast, does not provide evidence that Quizlet failed to act when it gained knowledge of alleged infringement of Plaintiff's content.  As this Court noted at the outside of this litigation, to succeed on this claim, B&A must show that Quizlet "acquired knowledge of the infringement, or of facts and circumstances from which infringing activity was obvious, and failed to promptly take down the infringing matter."  *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 95 (2d Cir. 2016).  Instead, Quizlet promptly removed 3,881 unique Set IDs of study sets in response to takedown notices.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(JAF ¶ 62).  Lastly, Quizlet maintains that it did not receive any direct financial benefit from its users' alleged infringements of Plaintiff's works.  (Kosko Decl. ¶ 12).

In opposition, Plaintiff does not provide sufficient evidence to refute Defendant's claim that it is entitled to safe harbor protection under Section 512.  The only "evidence" Plaintiff cites is Defendant's admission that it removed 3,881 unique Set IDs of study sets in response to takedown notices.  (JAF ¶ 62).  This admission, however, only satisfies the requirement under Section 512 that if an entity does receive notice of allegedly infringing activity, it must act promptly.

At oral argument, Plaintiff's counsel argued for the first time that summary judgment is improper because Plaintiff filed multiple DMCA subpoenas under Section 512 of the DMCA and that Quizlet was unable to identify certain users.  Plaintiff posits that Defendant could not verify if the users were "a real person of [sic]who those user accounts belong to."  Plaintiff avers that Defendant's inability to identify the users forecloses the Court from granting summary judgment on the issue of DMCA compliance and volitional conduct, presumably because those "users" might in fact be Quizlet. Plaintiff, however, did not raise this argument in its Opposition to Defendant's Motion. As the argument was not timely raised, the Court deems it waived and declines to consider it.[4]

---

[4] Had this argument been raised in its opposition, not only would Plaintiff have been able to point the Court to the specific evidence supporting this argument, *see Gross v. Cicero*, 619 F.3d 697, 702 (2010) ("[j]udges are not like pigs, hunting for truffles buried [in the record]") (internal quotation marks omitted), but also Defendant would have had an opportunity to respond with explanations of that evidence.  Plaintiff's oral argument provided neither.  Likewise, Plaintiff waited until oral argument to assert, for the first time, that a "tiny URL, [that] says study online and directs users to go directly to the Quizlet website robbing my client of a potential sale and customer."  Plaintiff averred that Defendant actively created a message essentially stating "study online here" and paired it with a short form URL. The Court construes Plaintiff's argument to be that, by pairing the phrase with the short form URL (which differs from the full URL for which Plaintiff sent take down notices), Quizlet, according to Plaintiff, encouraged users to alternate access the copyrighted material and thereby engaged in an infringing act.  Again, Plaintiff waived this argument as it failed to raise it in its opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

"The parties are not entitled to a hearing, and, even if they were, the court need not consider arguments made for the first time at hearing." Cobarrubia v. Edwards, 2021 WL 4846948, at *2 (N.D. Cal. June 4, 2021) (collecting cases finding arguments raised for the first time at oral argument waived); *see also* Sloan v. Gen. Motors LLC, 2020 WL 5517244, at *5 (N.D. Cal. Sept. 14, 2020) (similar); McCalla v. Nord, 2023 WL 7440225, at *2 n.1 (N.D. Cal. Nov. 8, 2023) (declining to consider arguments first raised at a hearing).

*Sempra v. Assoc. Elec. and Gas Ins. Srvs. Ltd.*, 2025 WL 3022287 at *5 (C.D. Cal. Oct. 1, 2025).[5]

Here, the Court finds that Defendant has satisfied its burden of demonstrating the absence of a genuine dispute of material fact as to this threshold requirement. For this reason, the Court **GRANTS** the Motion as to this issue.

> 2. *Plaintiff's federal and state trademark infringement, trade dress and UCL claims*

Moreover, Defendant avers that it is entitled to summary judgment on Plaintiff's federal and state trademark, trade dress and unfair competition claims because there is no evidence showing that Defendant has used Plaintiff's marks in commerce to promote its services. (Mot. at 29). To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege (1) ownership of a valid, protectable mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). To prove trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125, and by extension, the related unfair business practices and common law infringement claims, "a plaintiff must prove the defendant's use of the same or similar

---

[5] During oral argument, Plaintiff also alleged various issues regarding the discovery orders entered by Magistrate Judge Charles F. Eick. The Court declines to consider this argument at the motion for summary judgment stage. Speculation about what further discovery might, or might not, have produced do not create a genuine issue of material fact, and Plaintiff made no request, much less a showing justifying further discovery under Federal Rule of Civil Procedure 56(f).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

mark would create a likelihood of consumer confusion." 15 U.S.C. § 1114(1)(a); *see M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) ("[T]o succeed on each of its other federal, state, and common-law based claims, [the plaintiff] must establish a likelihood of confusion.").  Likelihood of confusion is typically analyzed under the eight-factor test from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), which includes: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care; (7) defendant's intent; and (8) likelihood of expansion.

"Direct infringement requires that the defendant itself 'use' the mark; it is insufficient for direct infringement purposes to allege that a defendant allows third parties to use the mark." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013), aff'd, 847 F.3d 657 (9th Cir. 2017).  In *Perfect 10*, the court found that the defendants did not "use" the plaintiff's marks in a commercial transaction "by merely offering a search function that allows third parties to search for images using Plaintiff's marks as search terms."  *Id*.

The record indicates that Defendant does not use Plaintiff's marks in the sale and advertisement of its services as Plaintiff's marks appear only in content uploaded by Quizlet's users.  For example, both parties agree that "B&A's corporate representative admitted that students, not Quizlet, uploaded B&A content."  (JAF ¶ 16).  Additionally, in response to questioning as to why a URL contained "Barkley PMHP exam review trauma informed care flashcards," Marrer testified that "it [the URL] contains the title of the set as created by the *user*, as input by the user."  (Declaration of T. Newby ("Newby Decl."), Dkt. No. 152-2 at 168:8-25) (emphasis added).  Further, when asked if he has "any idea why a user would put in the name 'Barkley' in the title of the work," Marrer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

stated, "I can't speak to why a *user* would put the word Barkley, or anything else, in the title of the work."  (*Id*. at 201:13-20) (emphasis added).

In opposition, Plaintiff asserts that Defendant "urg[es] users to 'combine' multiple study sets specifically mentioning the term 'Barkley,'" but cites only its FAC, not record evidence.  (Mot. at 35).  "[A]llegations in a complaint are not evidence that can be used to support or oppose summary judgment."  *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014), aff'd sub nom. *Briggs v. Sony Pictures Ent., Inc*., 714 F. App'x 712 (9th Cir. 2018).  Plaintiff also argues that Defendant incorporates "the 'protected trademark 'Barkley' directly into its corporate domain URLs alongside its own proprietary brand formatting and trademarked 'Q' logo."  (Mot. at 35).  The appearance of "Barkley" in a Quizlet.com URL, however, "merely shows how the website's data is organized and/or the search term entered by the consumer, and that this does not violate trademark law."  *See Melwani v. Amazon.com, Inc*., No. C21-1329RSM, 2022 WL 670919, at *4 (W.D. Wash. Mar. 7, 2022) (finding trademark infringement as to "Mr. Melwani's claim that, once searched, Royal Silk will appear in the URL for the search page.").

Plaintiff has additionally failed to introduce evidence that it has any rights in the term "Barkley."  Plaintiff submitted the declaration of its employee, Bianca Burks, who baldly asserted that Plaintiff "has extensive common law trademark rights in its corporate name and identity, which are recognized throughout the national medical and nursing education sectors."  (Burks Decl., ¶ 2).  This is a legal conclusion without foundation from a lay witness who was not disclosed or qualified as an expert.  *See generally Novalogic, Inc.*, 41 F. Supp. 3d at 897 (finding CEO's declaration to be "inadmissible anecdotal evidence in an effort to demonstrate [] actual confusion" and "improper opinion testimony by a lay witness.").  Plaintiff also argues it has trademark rights

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

because it "filed declarations . . . under 15 U.S.C. § 1065." (Mot. at 36-37). But those declarations, which notably have not been submitted as evidence, related to the "Barkley & Associates" mark, not the "Barkley" mark. Federal incontestability of "Barkley & Associates," even if it were filed as evidence, does not create trademark rights in the standalone term "Barkley."

Separately, Defendant moves for summary judgment on Plaintiff's Lanham Act and state unfair competition claims as these claims are inseparable from its copyright infringement claims and are thus precluded by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). (Mot. at 32). In *Dastar*, the Supreme Court found that a copyright owner was precluded from bringing a Lanham Act false designation of origin claim under 15 U.S.C. § 1125(a) merely because its mark appears on a copy of the work. *Dastar*, 539 U.S. at 37. In *Dastar*, the respondents acquired the exclusive rights to distribute a television series on video. *Id*. at 26. The petitioner, Dastar, purchased "eight beta cam tapes of the original version of the Crusade television series, which is in the public domain, copied them, and then edited the series." *Id*. Dastar then manufactured and sold the relevant video set as its own product. *Id*. at 27. The respondents then brought suit against the petitioner, alleging that Dastar's sale of the relevant video set infringes Doubleday's copyright in General Eisenhower's book, which the television series was based on, and, thus, their exclusive television rights in the book. *Id*.

The Court ultimately held that the original creator of a television series could not assert a Section 43(a) claim against a business that had copied, edited and sold tapes of that series under its own name. *Id*. at 27-28, 37. The Court therefore construed the phrase "origin of goods," as it appears in the Lanham Act to "refer[] to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id*. at 37. The Court stated, "[b]ecause we

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

conclude that Dastar was the 'origin' of the products it sold as its own, respondents cannot prevail on their Lanham Act claim." *Id*. at 38.  Alternatively, if petitioner, as the producer of the video, substantially copied the television series were, in advertising or promotion, giving "purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action . . .  for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B)." *Id*.  "For merely saying it is the producer of the video, however, no Lanham Act liability attaches to Dastar." *Id*.

Here, Plaintiff's third cause of action alleges that Quizlet violates 15 U.S.C. § 1125(a) ("Section 43(a)") because Defendant's "use in commerce of Barkley's trademarks, trade dress and copyrights constitutes use of a false designation of origin and unfair competition."  (FAC ¶ 64).  Plaintiff alleges that "Quizlet consciously designed Quizlet's product to imitate and copy Barkley's copyright protected digital and print media to create a likelihood of confusion."  (*Id*. ¶ 96).  Plaintiff, however, has not identified any physical goods that Defendant has passed off as its own.

Although Plaintiff argues that Defendant's study aids can be printed, the Court does not find printed pdfs to be the type of tangible goods contemplated by *Dastar*.  *See Dastar*, 539 U.S. at 24 (finding that physical goods relate to "tangible product[s] sold in the marketplace.").  Plaintiff also does not provide authority to support its claim that the printed pdfs constitute physical goods in this context.  The decision in *Dastar* thus bars Plaintiff's Section 43(a) and unfair competition claims as Plaintiff has not identified physical goods that Defendant has allegedly passed off as its own.

During oral argument, in support of Plaintiff's physical goods argument, Plaintiff asserted that, due to the instructional nature of its works, student users typically print the downloadable PDF materials.  Plaintiff's reliance on what Defendant's users do with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

digital content provided by Defendant's website is foreclosed by *Dastar*'s holding that digital contents are not physical goods or "tangible product[s] sold in the marketplace." *See Dastar*, 539 U.S. at 24.

The Court also finds that *Dastar* precludes Plaintiff's trademark claim. *See Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (quoting *Dastar*, 539 U.S. at 32-33) ("Defendants make allegedly unauthorized use of the content of Plaintiff's karaoke tracks, which *Dastar* precludes as a trademark claim. As the Supreme Court explained, '[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers.'"). An instructive case on this point is *Evox Prods., LLC v. Verizon Media, Inc.*, No. 21-56046, 2022 WL 17430309 (9th Cir. Dec. 6, 2022). In *Evox Prods., LLC*, the trademark claim was "specifically grounded on Evox's allegations that Verizon continued to display photographs bearing Evox's registered mark on Yahoo websites after the termination of the license, creating associational confusion forbidden by the Lanham Act." *Id*. at *2. The Court found that the trademark infringement claim was precluded as "[c]ongruence with its copyright claim, however, sounds the death knell for Evox's trademark infringement claim." *Id*. The Court also asserted, "[w]hen an alleged Lanham Act claim over a trademark embedded in a product is more appropriately the subject of a copyright claim, we have held that the copyright infringement claim is superseding and exhaustive." *Id*. Here, Plaintiff's trademark claims are congruent with its claims of Defendant's alleged copying of Plaintiff's copyrighted content. As *Dastar* forecloses the use of the Lanham Act and unfair competition laws under these circumstances, Defendant is entitled to summary judgment on Plaintiff's trademark, trade

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

dress and unfair competition claims.  The Motion is therefore **GRANTED** as to these issues.[6]

### 3.  Copyright Act Preemption

Defendant moves for summary judgment as to Plaintiff's UCL claim under the argument that Section 301(a) of the Copyright Act preempts Plaintiff's UCL claim. (Mot. at 38).  "The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) (citing 17 U.S.C. § 106).  Section 301 of the Act seeks "to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works," as long as the rights fall "within the scope of the Federal copyright law." *Maloney*, 853 F.3d at 1010 (quoting H.R. Rep. No. 94-1476, at 130 (1976)).

To determine whether a state law claim is preempted by the Act, the Ninth Circuit has adopted a two-part test.  *Id*.  First, "we decide 'whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.'" *L. v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006).  Second, assuming it does, the courts must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id*. at 1138.  To survive preemption, "the state cause of action must protect rights which are qualitatively different from the copyright rights." *Id*. at 1143.  Essentially, "the state claim must have an extra element which changes the nature of the action." *Id*.

---

[6] With respect to these issues, Plaintiff failed to provide any evidence to refute Defendant's argument and relied instead on allegations from the FAC and arguments pertaining to case precedent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

The two-part preemption test is satisfied here.  First, there is no dispute that the works at issue are within the subject matter of copyright protection under 17 U.S.C. § 102(a).  Both Plaintiff's copyrighted works and the material that it alleges appears on Quizlet are literary works, which are works of authorship recognized by 17 U.S.C. § 102(a)(1).  Second, the rights Plaintiff asserts under the UCL are equivalent to those protected by copyright, namely, the rights of reproduction, distribution and to create derivative works under Section 106.  (*See* FAC ¶ 96) ("Quizlet consciously designed Quizlet's product to imitate and copy Barkley's copyright protected digital and print media to create a likelihood of confusion and to blur the distinction between Quizlet's products and Barkley's well-known company and famed nurse test prep materials.").  Plaintiff also has neither alleged nor provided evidence to show an extra element that distinguishes its copyright claim from its UCL claim.

*Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998) is instructive here.  In *Kodadek*, the complaint alleged that defendants "have been publishing and placing on the market for sale products bearing the images subject to the copyright ownership of the plaintiff and has thereby been engaging in unfair trade practices and unfair competition against plaintiffs [sic] and to plaintiffs' [sic] irreparable damage."  152 F.3d at 1212.  The Court found that the "unfair competition claim incorporates by reference paragraphs from the copyright infringement claim."  *Id*.  As the party "expressly base[d] his unfair competition claim on rights granted by the Copyright Act," the Court found that both prongs of the two-part preemption test were met and that the unfair competition claim was preempted.  *Id*.  Similarly, as previously mentioned, Plaintiff unfair competition claim incorporates by references its allegations from the copyright infringement claim.  (*See* FAC ¶ 96) ("Quizlet consciously designed Quizlet's product to imitate and copy Barkley's copyright protected digital and print media to create a likelihood of confusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

and to blur the distinction between Quizlet's products and Barkley's well-known company and famed nurse test prep materials.")  Both Plaintiff's claims of copyright infringement and unfair competition seek to vindicate the same rights, and the UCL claim is therefore preempted.

In opposition, Plaintiff summarily asserts, within the span of three sentences and without meaningful analysis, that its UCL claim is not preempted.  (Mot. at 4).  The evidence Plaintiff presents is Defendant's objections and responses to Plaintiff's second set of requests for admission.  (JAE Volume 4, Ex. 6 at 4-5).  There, Defendant "admits that, as of the date of this response, navigating to https://quizlet.com/1060264495/barkley-associates-3ps-fnp-study-guide-overviewflash-cards/?funnelUUID=7339b7f7-e94f-4621-80a2-15730f8bacf7 displays a webpage bearing the title 'Barkley & Associates 3Ps FNP Study Guide Overview.'"  (*Id*.).  Plaintiff misrepresents this in its argument and states that Defendant "admitted that it generates co-branded downloadable PDF study packets that place Barkley's registered trademarks side-by-side with Quizlet's own brand name (e.g., "Barkley & Associates 3Ps FNP Study Guide Overview | Quizlet.").  This misrepresentation is material as Defendant did not in fact admit to generating downloadable materials that featured Plaintiff's registered trademarks alongside Defendant's own branding.  Defendant's discovery response does not, therefore, create a genuine issue of material fact on this point.  Consequently, Plaintiff fails to establish a genuine dispute of material fact.  The Court, therefore, **GRANTS** the Motion as to this issue.

III.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motion in its entirety.

**IT IS SO ORDERED.**