Brian S. Tamsut, No. 322,780 btamsut@socalip.com

Michael D. Harris, No. 59,470 mharris@socalip.com

Jonathan P. Pearce, No. 245,776 jpearce@socalip.com

SoCal IP Law Group llp

310 N. Westlake Blvd., Suite 120

Westlake Village, CA 91362-3788

Phone: (805) 230-1350

Attorneys for Plaintiff Barkley & Associates, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Barkley & Associates, Inc.,<br><br>        Plaintiff,<br><br>            v<br><br>Quizlet, Inc.,<br><br>        Defendant. | No. 2:24-cv-5964 WLH(Ex)<br><br>Plaintiff Barkley's Notice of Motion and Motion for Reconsideration to Court's Grant of Defendant Quizlet's Summary Judgment Motion [Dkt. 155]<br><br>Date:    August 28, 2026<br>Time:    1:30 p.m.<br>Judge:   Hsu |

To defendant Quizlet, Inc.: plaintiff Barkley & Associates, Inc. notifies you that it will move for reconsideration under Local Rule 7-18 of the grant of summary judgment to Quizlet. The motion is scheduled to be heard on August 28, 2026, at Judge Hsu's courtroom 9B, at the United States Courthouse, 350 West 1st Street, Los Angeles, California, 90012.

July 28, 2026

/s/ Brian Tamsut
Brian Tamsut
SoCal IP Law Group llp

Attorney for Plaintiff Barkley & Associates, Inc.

## TABLE OF CONTENTS

A. Introduction ..................................................................................................1

B. Standards and Rules Governing Motions for Reconsideration ..............1

C. Argument ....................................................................................................2

    1. The Court improperly resolved the volitional-conduct dispute by weighing conflicting evidence. ..........................................2

    2. The Court drew improper inferences from AI-chat evidence. ...................................................................................4

    3. The Court improperly converted disputed evidence into "undisputed" findings. ..................................................................5

    4. The vicarious copyright-infringement analysis rested on improper weighing and inference drawing, the court also ignored evidence in the record. .......................................................6

    5. The court also discounted the genuine dispute of material fact as to Quizlet's financial benefit of co-branding with Barkley materials. ...............................................................10

    6. The order improperly resolved the "use in commerce" dispute by crediting defendant's evidence. ....................................11

    7. Without facts using the Sleekcraft factors, Quizlet's use of "Barkey" without "& Associates" cannot avoid likelihood of confusion. ...........................................................................12

D. Conclusion ...............................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023) ..........11

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341–49 (9th Cir. 1979) ..............13

*Anderson v. Liberty Lobby, Inc.*,    477 U.S. 242 (1986) ............................3

*Fox Broad. Co. v. Dish Network L.L.C.*,    747 F.3d 1060 (9th Cir. 2014) ..2

*Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190 (9th Cir. 2012) .. 13, 14

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723–32 (9th Cir. 2019)  ................ 2


**Other Authorities**

Local Rule 7-18 ........................................................................................ 1

Rule 30(b)(6) .................................................................................... 2, 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

On July 14, 2026, the Court granted Quizlet's summary judgment motion. Plaintiff moves for reconsideration under Local Rule 7-18 because the Order improperly resolved disputed material facts in Quizlet's favor and misapplied the summary judgment standard. The Order's copyright-infringement analysis overlooked evidence that Quizlet's AI systems autonomously generate derivative works, not merely passive user-directed tools. The trademark rulings similarly ignored platform-use evidence showing Quizlet's co-branding of Barkley materials.

Granting summary judgment requires "no genuine dispute as to any material fact" and entitlement to judgment as a matter of law. Courts must view evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in that party's favor, and avoid weighing conflicting evidence or making credibility determinations. The Order violated these principles by crediting Quizlet's evidence over Barkley's competing testimony and screenshots.

Rule 54(b) permits revision of orders adjudicating fewer than all claims before final judgment. Rule 59(e) allows amendment within 28 days to correct manifest error of law or fact. Reconsideration is justified here to correct clear error causing manifest injustice.

### B. STANDARDS AND RULES GOVERNING MOTIONS FOR RECONSIDERATION

Local Rule 7-18(c) authorizes reconsideration upon:

**Manifest failure to consider material facts** presented to the Court before the decision.

**Misapplication of law to the facts** (not a listed ground under L.R. 7-18, but sufficient to negate the Court's decision).

| Barkley's Motion for Reconsideration of Summary Judgment Grant | 1 | Barkley & Associates v. Quizlet No.: 2:24-cv-5964 WLH(Ex) |
|---|---|---|

Local Rule 7-18 prohibits repeating any oral or written assertion made in opposition to or in support of the original motion.

## C.  ARGUMENT

### 1. The Court improperly resolved the volitional-conduct dispute by weighing conflicting evidence.

The Order held that Quizlet lacked volitional conduct for direct copyright infringement, relying on *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019), and *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014). But the central issue was whether Quizlet's systems are passive, user-directed tools or whether Quizlet generates allegedly infringing AI outputs from Barkley materials.

Two of Quizlet's witnesses gave conflicting statements regarding how Quizlet uses AI to generate content. The Order acknowledged that Barkley offered contrary evidence: Quizlet's Rule 30(b)(6) witness Sean Marrer testified that Quizlet's proprietary study guides and summaries "are not user generated." "[S]ummaries are generated by AI," and "[s]ummaries and study guides are not user generated." (155: 5-11) JAF 81 (146-6 p. 69). A reasonable jury could infer from this testimony that Quizlet's own systems—not merely users—generated unlicensed Barkley summaries and study guides.

Yet the Order credited Mooney's declaration that users alone select and input content, and tools do not function unless users submit content. The Order then concluded Quizlet "cannot be held liable for direct copyright infringement" because outputs were generated in response to user submissions. This analysis ignored the genuine dispute of material fact: did Quizlet AI systems alone generate derivative Barkley summaries and study guides, or was it a user on the Quizlet platform making the study

guide and summary from Barkley material? The court's analysis improperly resolved the factual dispute rather than deny summary judgment.

Rule 56 does not allow choosing Mooney's explanation over Marrer's testimony. Courts may not resolve disputed factual issues on conflicting evidence at summary judgment, disbelieve the nonmoving party's testimony, or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.)

By treating Mooney's declaration as dispositive and discounting Marrer's testimony, the Order weighed evidence and drew inferences against Barkley.

The Order compounded this error by stating Marrer "could not explain what that meant specifically" and that his testimony "does not create a genuine issue of material fact." Yet, Marrer's testimony still contradicted Quizlet's assertion that outputs were entirely user generated. A jury should have viewed the evidence and determined credibility. At summary judgment, the Court had to credit Barkley's evidence and draw reasonable inferences in its favor, not discount evidence because a witness did not provide additional technical detail.

The existence of competing inferences is why the Court should have denied summary judgment. If the record permits conflicting reasonable inferences, the inference favorable to the nonmovant controls.

## 2. The Court drew improper inferences from AI-chat evidence.

The Court also drew inferences against Barkley from screenshots showing Quizlet's AI chat feature outputting Barkley-related material. Barkley submitted evidence that Quizlet's AI chat feature was "spitting out Barkley materials." The Order describes prompts asking for "new questions with an answer sheet based on this Barkley flashcard set" and held the screenshots were not enough because prompts asked for information based on user-submitted flashcard sets. *See* (Dkt. 155, p. 11).

This reasoning again chooses Quizlet's inference over Barkley's. One reasonable inference was that the user supplied material and the tool merely responded. But another reasonable inference—supported by Marrer's testimony—was that Quizlet's system transformed underlying Barkley content into new AI-generated questions, answers, summaries, or study materials through platform functionality. Choosing between competing inferences is improper for summary judgment.

The Court's conclusion, "The Court finds that these screenshots are insufficient to create a disputed fact because the prompt specifically requested information based on *user* submitted B&A flashcard sets," also violates the summary judgment standard. (Dkt. 155, p. 11). A jury could find, considering Quizlet's 30(b)(6) witness testimony, that the user prompt supplied the topic while Quizlet's AI system generated the accused content. The court improperly assumed that Quizlet's chat feature used a user submitted flashcard set, when conflicting testimony suggested Quizlet's AI systems generated content without the input of a user. The Court should have drawn that inference in Barkley's favor.

### 3. The Court improperly converted disputed evidence into "undisputed" findings.

The Order repeatedly characterized Quizlet's evidence as undisputed though Barkley presented disputed, material facts. The Order states there was "no material dispute of fact" that Quizlet's AI tools are user supported and employed, and "the user, not Quizlet, that engages in volitional conduct." (Dkt. 155, p. 9). Later, the Court stated "based on the undisputed evidence that Quizlet's users select or dictate the content that users submit to Quizlet's AI study tools, the requisite volitional conduct rests with the user. (Dkt. 155, p. 12).

These statements overlooked Barkley's contrary evidence. Barkley disputed Quizlet's claim that outputs were always user generated, relying on Marrer's testimony that platform's proprietary study guides and summaries are not user generated but are generated by Quizlet's AI. For example, Barkley's opposition stated, "This is not a user posting standalone text; this is Quizlet's automated system creating downloadable, printed study products that attach the "Quizlet" brand identifier directly to Barkley's federally registered marks." (Dkt. 146-1 p.12). Barkley also stated, "This key admission shatters Quizlet's assertion that it operates as a content-blind utility. When a user inputs raw text, Quizlet does not merely host it; Quizlet's proprietary system actively extracts the text, feeds it into downstream artificial intelligence tools." (Dkt. 146-1 p. 25).

Barkley disputed Quizlet's claim that users always must supply input, citing screenshots of a user asking for Barkley materials from AI-enhanced features. (*See* Dkt. 146-5 (Burks Decl., Ex. 1)). Barkley's opposition showed Quizlet's AI-powered summaries were "not user-generated." by introducing testimony from Quizlet's own 30(b)(6) witness that stated the summaries and study guides were not user generated. (JAF 81)

Quizlet used AI to generate derivative summaries and study guides, so Quizlet was not a passive host.

### 4. The vicarious copyright-infringement analysis rested on improper weighing and inference drawing, the court also ignored evidence in the record.

The same Rule 56 error affected the vicarious-infringement ruling. The Order held that Barkley's evidence did not show Quizlet's right and ability to supervise infringing conduct or direct financial interest in infringing activity. But the Court concluded this by discounting Barkley's evidence and crediting Quizlet's contrary explanation of how its tools worked.

Barkley pointed to evidence that Quizlet did more than host content: screenshots of the Quizlet site showed Quizlet enticed users to create unlicensed derivative works of Barkley materials by running Barkley tests through a "Flashcards," "Learn," "Test," "Blocks," "Blast," and "Match" functions on the Quizlet website (*See* screenshot from requests for admission below and exhibit 9 to Tamsut Dec., 146-6 p. 426 - 459). Barkley pointed to this evidence in its opposition, it referred not only to the complaint.

The Court states "In opposition, Plaintiff asserts that Defendant "urg[es] users to 'combine' multiple study sets specifically mentioning the term 'Barkley,'" but cites only its FAC, not record evidence." (Dkt. 155, p. 20). But Barkley also included a screenshot of this conduct in its exhibits and referred to it directly in its opposition. For example Barkley stated, "Quizlet also admitted it wraps this display page in its own premium interactive features, deploying modes like "Flashcards," "Learn," "Test," "Blocks," "Blast," and "Match" to keep users inside its paid subscription ecosystem. JAF 85-86. *See* response to RFA 20." (Dkt. 146-1 page 12 lines

3-6). A screenshot of Request for Admission 20 and other screenshots including the admissions showing Quizlet's additional AI features is produced below:



(Screenshot from RFA 20 146-6 p. 432)

Barkley also submitted evidence through Quizlet's responses to requests for admission that it added features to Barkley tests allowing Quizlet to "make a copy," "print," "combine," and "embed" Barkley content. Part of the requests for admission showing these features are reproduced on the next page:

(RFA 34 146-6 p. 447)

(RFA 35 146-6 p. 449)



(RFA 29 146-6 p. 442)

The admissions and screenshots supported Barkley's position that Quizlet organized, presented, transformed, and distributed Barkley-related materials through Quizlet-controlled study modes. A jury seeing Quizlet's admission could find that Quizlet's Internet site was not merely a passive database of questions.

The Order still held that Barkley relied only on Marrer's testimony and that the inference Barkley requested could not be drawn from that testimony. Barkley's evidence was not limited to conclusory assertions; it included testimony, admissions, and screenshots about AI summaries, study guides, test modes, print functionality, and platform-generated presentations of Barkley-titled materials. Whether these features were meaningful control was a factual question on which the Court had to view favorably to Barkley.

**5.** **The court also discounted the genuine dispute of material fact as to Quizlet's financial benefit of co-branding with Barkley materials.**

Barkley argued that Quizlet hosted indexed public URLs using Barkley's name and product identity and pointed to a downloadable PDF study pack bearing "Barkley & Associates 3Ps FNP Study Guide Overview Quizlet." Quizlet admitted that a logged-in user selecting "Print" would be directed to a PDF including "Barkley & Associates 3Ps FNP Study Guide Overview | Quizlet."

The Order held this evidence insufficient because Quizlet submitted evidence that paid users receive no greater access to content than free users, and paid subscriptions provide greater use of study tools rather than greater content access. That analysis weighed competing evidence and drew the dispositive inference in Quizlet's favor. Barkley asserted that Quizlet used Barkley-related content as a draw into Quizlet's interactive study ecosystem, including AI-enhanced study tools.

Barkley's evidence about Quizlet pdfs stating "study online at Quizlet.com" was presented on page 14 of the requests for admission, not only in the complaint (*See* 146-6 p. 439).

Quizlet's evidence that paid and free users may access the same underlying content did not negate Barkley's contrary inference that Barkley content increased the attractiveness or use of Quizlet's paid tools. At summary judgment, the Court chose to credit Barkley's evidence and draw reasonable inferences in Barkley's favor. And Barkley never waived this argument; it explicitly made it in the joint brief:

> "However, Quizlet does exercise influence over third party uploads when Quizlet makes copies of Barkley study materials and plasters the Quizlet name on them ***and entices users to***

*visit the Quizlet site instead of Barkley's*. (Dkt. 57-2 FAC ¶ 12 showing screenshot that says "study online at Quizlet.com" on a copy of Barkley live questions)."

(Summary judgment opposition, p. 28: 9-14 emphasis added)

### 6. The order improperly resolved the "use in commerce" dispute by crediting defendant's evidence.

The Order granted summary judgment on trademark claims because it concluded there is no evidence that Defendant has used Plaintiff's marks in commerce to promote its services. (*See* Dkt. 155, pp. 18-23) "When an alleged infringing mark is used on the internet, the use is clearly a 'use in commerce' " *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 432 (2023) (Jackson, J., concurring).

The Order reasoned that Plaintiff's marks appeared only in user-uploaded content and that "Barkley" in Quizlet URLs reflected user-created titles or website organization, not actionable use by Quizlet. A screenshot of Barkley's evidence is produced below: (146-6 p. 439)

**Barkley & Associates 3Ps FNP Study Guide Overview**
Study online at https://quizlet.com/_hj95bj

1. What are the key concepts covered in Advanced Pathophysiology for the Cardiovascular System? — Heart failure types, murmurs, EKG interpretation, hypertension pathophysiology.

2. What study strategy is recommended for understanding cardiac disorders in Advanced Pathophysiology? — Draw flow charts for each cardiac disorder; memorize murmur positions and sounds.

3. What key concepts are included in Advanced Pathophysiology for the Respiratory System? — Asthma vs COPD, ABG interpretation, respiratory failure.

4. What study strategy is suggested for interpreting ABGs in the Respiratory Sys- — Practice interpreting ABGs and comparing obstructive lung diseases.

The court's analysis ignored Barkley's showing of co-branded exams (a Quizlet Q next to BARKLEY & ASSOCIATES) and improperly drew inferences for Quizlet. Barkley presented evidence that Quizlet did not limit its use to passive user uploads. The opposition identified Quizlet pages displaying "Barkley & Associates 3Ps FNP Study Guide Overview," attached Quizlet's own platform environment to that display, and surrounded it with Quizlet interactive modes including "Flashcards," "Learn," "Test," "Blocks," "Blast," and "Match." JAF 85-86 *See* response to RFA 20." (Dkt. 146-1, p. 12: 3–6). Barkley also argued that Quizlet's automated print function generated downloadable materials bearing Quizlet branding with Barkley's mark along with the phrase "study online" and a link to the infringing content.

Viewed in the light most favorable to Barkley, that evidence supports a reasonable inference that Quizlet used Barkley's registered and common-law trademark to entice potential Barkley customers to use Quizlet's platform instead of Barkley's. Rather than draw that inference for Barkley, the Order accepted Defendant's competing explanation that the mark appeared because a user titled the material and that the URL merely reflected website organization. Rule 56 did not allow the Court to choose between those competing factual inferences.

### 7. Without facts using the Sleekcraft factors, Quizlet's use of "Barkey" without "& Associates" cannot avoid likelihood of confusion.

The Court held that Quizlet's use of "Barkley" without "& Associates" neither infringes the trademark registration or common law rights of the mark BARKLEY & ASSOCIATES or this logo . To prevail on non-infringement, Quizlet must show no material facts support likelihood of confusion, trademark infringement's principal issue.

These factors determine likelihood of confusion under the Ninth Circuit's *Sleekcraft* case. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979): 1. The strength of the trademark, 2. The similarity of the marks; 3. The proximity or relatedness of the goods or services, 4. Defendant's intent in selecting the marks, 5. Evidence of actual confusion, 6. The marketing channels used, 7. The likelihood of expansion of product lines; and, 8. Care consumers are likely to exercise. *Id.*

The Court here did not go through any *Sleekcraft* factors. Instead, it compared Quizlet's use of "Barkley" without "& Associates" with the registered "Barkley & Associates" registered and common law marks and held the missing "& Associates" avoided infringement. That is error. A court cannot find non-infringement without considering the *Sleekcraft* factors.

*Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012), had a similar issue of a defendant using one word of a two-word registered trademark. Plaintiff's mark was "REARDEN STUDIOS." Like this case, "Rearden" is a surname. The Court held the single word "rearden" could  be confused with the registered REARDEN STUDIOS mark. *Id.* at 1211–12

Because of the factual nature of likelihood of confusion, usually the key issue in trademark infringement, few cases can be resolved on summary judgment. "[I]n cases where the evidence is clear and tilts heavily in favor of a likelihood of confusion, we have not hesitated to affirm summary judgment on this point." But "[w]e have cautioned that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Rearden Id.* (citations omitted). Barkley submitted evidence that Quizlet had to remove 3,881 set IDs that used some version of the mark "Barkley"

| Barkley's Motion for Reconsideration of Summary Judgment Grant | 13 | Barkley & Associates v. Quizlet No.: 2:24-cv-5964 WLH(Ex) |
|---|---|---|

in the title. This evidence suggests nursing students understand the term "Barkley" to be associated with "Barkely&Associates" nurse test preparation materials.

## D.  CONCLUSION

Barkley showed the times the Court found for Quizlet though disputed issues of fact should have required denial of summary judgment. And the Court did not view the evidence in the light most favorable to the nonmoving party, Barkley.

Barkley requests that the court reconsider its Order and deny summary judgment.

July 28, 2026

/s/ Brian Tamsut
Brian Tamsut
SOCAL IP LAW GROUP LLP

Attorney for Plaintiff Barkley & Associates, Inc.

### *Declaration under Local Rule  7-3 re Conference of Counsel.*

I, Brian Tamset, state under penalty of perjury of the United States that on July 20, 2026, I met by telephone with Tyler Newby, and we discussed Barkley moving for reconsideration. Counsel could not reach a resolution. The conference occurred less than the seven days Local Rule  7-3 provided because time limits on motions for reconsideration did not allow for the full seven days.

July 28, 2026

/s/ Brian Tamsut
Brian Tamsut