Brian S. Tamsut, No. 322,780 btamsut@socalip.com
Michael D. Harris, No. 59,470 mharris@socalip.com
Jonathan P. Pearce, No. 245,776 jpearce@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350
Attorneys for Plaintiff Barkley & Associates, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| Barkley & Associates, Inc.,<br>Plaintiff,<br>v<br>Quizlet, Inc.,<br>Defendant. | No. 2:24-cv-5964 WLH(Ex)<br><br>Plaintiff Barkley's Opposition to Quizlet's Motion for Award of Attorneys' Fees and Costs<br><br>Prepared using AI<br><br>Date: December 18, 2026<br>Time: 1:30 p.m.<br>Courtroom: 9B, 9th Flr.<br>Judge: Hon Wesley L. Hsu |

## TABLE OF CONTENTS

A. Introduction ........ 1
B. Statement of Facts ........ 2
1. The parties and Barkley's rights ........ 2
2. Pre-litigation ........ 2
3. The motion to dismiss ........ 3
4. Summary judgment and the present motion ........ 3
C. Argument ........ 4
1. A fee award is discretionary, not a byproduct of prevailing ........ 4
2. Quizlet is not entitled to fees under the Copyright Act ........ 5
a. Barkley's positions were objectively reasonable ........ 5
b. The remaining *Fogerty* factors do not support an award ........ 8
3. This is not an "exceptional" case under the Lanham Act ........ 9
4. The amount requested is unreasonable and unsupported ........ 10
a. The rates are out-of-forum and unsupported by proper evidence ........ 10
b. The hours reflect duplication, ramp-up, and work Quizlet chose to incur ........ 12
c. The request is grossly disproportionate ........ 13
d. The claimed "expenses" are, by Quizlet's own description, non-taxable and not recoverable ........ 14
D. Conclusion ........ 14

## TABLE OF AUTHORITIES

### Cases

*Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp. LLC*, No. CV-17-01688-PHX-DWL, 2020 WL 2768699 (D. Ariz. May 28, 2020) .... 12

*Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956 (N.D. Cal. 2024) .... 7

*Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038 (N.D. Cal. 2025) .... 7

*Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002) .... 4, 5, 8

*BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269 (9th Cir. 2024) .... 1, 9

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) .... 10, 11

*Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131 (N.D. Cal. 2025) .... 7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 .... 9, 10

*Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993 (N.D. Cal. 2018) .... 12, 13

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .... 4, 8, 9

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) .... 13

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) .... 13

*Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000) .... 2, 5, 8, 9, 13

*Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025) .... 7

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016) .... 1, 4, 5, 8

*Max Minds, LLC v. Triangle Experience Grp., Inc.*, No. 1:24-CV-00779-JPH-MG, 2025 WL 593307 (S.D. Ind. Feb. 24, 2025) .... 10

*Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989) .... 13

*Nutrivita Lab'ys, Inc. v. VBS Distribution Inc.*, 160 F. Supp. 3d 1184 (C.D. Cal. 2016) .... 9

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) .... 7, 9

*Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 139 S. Ct. 873, 203 L. Ed. 2d 180 (2019) ........ 14

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ........ 1, 9

*The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829 (9th Cir. 2003) ........ 1-2

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 193 F.4th 271 (3d Cir. 2026) ........ 7

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016) ........ 5, 6

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ........ 11

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008 (9th Cir. 2018) ........ 10

*White v. City of Richmond*, 559 F. Supp. 127 (N.D. Cal. 1982) ........ 12, 13

**Other Authorities**

15 U.S.C. § 1117(a) ........ 4

17 U.S.C. § 505 ........ 4

28 U.S.C. §§ 1821 ........ 14

28 U.S.C. §§ 1920 ........ 14

DMCA § 1202(b) ........ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

Defendant Quizlet seeks more than $1.46 million in fees and costs from a small educational publisher because it litigated federal trademark and copyright claims. Though plaintiff Barkley lost, this Court allowed the case to proceed through discovery and the case resolved only on a full summary-judgment record.

Quizlet argues it should be awarded fees merely because it prevailed. However, both fee statutes are discretionary, and both forbid awarding fees as a matter of course. The Supreme Court has instructed that the touchstone under the Copyright Act is the objective reasonableness of the losing party's position, to which courts must give "substantial weight." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199–200 (2016). Plaintiff Barkley sued as the owner of five federal copyright registrations and two federal trademark registrations, pointing to its branded materials appearing on Quizlet's internet domain, and it advanced a genuinely novel theory about Quizlet's generative-AI tools. Those positions did not prevail, but they were not frivolous — and this Court's decision to deny dismissal and permit discovery confirms as much.

Quizlet's Lanham Act theory also fails. A case is "exceptional" only if it "stands out from others. Winning does not make a case exceptional. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–1181 (9th Cir. 2016); *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1278–1279 (9th Cir. 2024).

Quizlet's fallback demand for every dollar of fees across all six claims also ignores the settled rule that a prevailing party must apportion its time among fee-bearing and non-fee-bearing claims. *The Traditional*

*Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833–834 (9th Cir. 2003); *Gracie v. Gracie*, 217 F.3d 1060, 1069–1070 (9th Cir. 2000).

Finally, even if some award were warranted, the amount is indefensible. Quizlet seeks Bay Area rates in a Los Angeles forum: a $1,220-per-hour partner and associates at $901 to $991. Its only support is counsel's own declaration and press coverage of the country's highest-billing firms. Quizlet's own billing records show that its experienced insurer-panel counsel litigated this case at $383 per hour, and that Quizlet's voluntary switch to Fenwick produced duplicated ramp-up and summary-judgment work at roughly three times that rate. Quizlet also seeks $14,032.41 in expenses that its own declarant labels "non-taxable," and which the Supreme Court has held the Copyright Act does not permit. The motion should be denied in its entirety or, in the alternative, the award should be reduced dramatically.

## B. Statement of Facts

### 1. The parties and Barkley's rights.

Barkley is a continuing-education publisher of nurse-practitioner test-preparation materials. Defendant Quizlet, Inc.'s Notice Of Motion And Motion For Award Of Attorneys' Fees And Costs ("Dkt. 176") at 9. It owns a portfolio of federal copyright registrations — including the five identified in its pre-suit correspondence — and two federal trademark registrations for BARKLEY & ASSOCIATES (Reg. Nos. 6,270,781 and 6,272,223). Dkt. 176-2 at 1-2, 9-10. Quizlet operates a study-tools platform with more than 60 million users. Dkt. 176 at 9.

### 2. Pre-litigation.

In May 2024, Barkley notified Quizlet that its copyrighted materials and marks were appearing on Quizlet's service and demanded that the infringement stop, opening with a settlement figure of $240,000. Dkt. 176-2

at 7. The parties exchanged correspondence over the following two months. Dkt. 176-4. Barkley identified specific quizlet.com URLs hosting "Barkley" study sets — not merely third-party links. Dkt. 176-4 at 3. It flagged that a PDF appearing through Quizlet "plaster[ed] the Quizlet domain name" on Barkley content and "direct[ed] users to visit the Quizlet website." Dkt. 176-4 at 2. And it raised whether Barkley's materials had been used to train or operate Quizlet's generative-AI tools. Dkt. 176-4 at 3.

**3. The motion to dismiss.**

Quizlet moved to dismiss on DMCA safe-harbor grounds. The Court declined to dismiss and instead ordered limited discovery on the safe-harbor question because Barkley had alleged that Quizlet itself created the infringing copies. Motion at 11. At the hearing, the Court observed that it was "concern[ed]" the suit "may not actually have any legs," but immediately added: "I just can't decide that at the motion to dismiss stage," and "I wouldn't want you to be without any discovery." Dkt. 176-5 at 6.

**4. Summary judgment and the present motion.**

Following discovery, the Court granted summary judgment to Quizlet on all claims, found Quizlet entitled to the DMCA safe harbor (noting Quizlet had removed 3,881 unique study sets in response to takedown notices), and later denied reconsideration. Dkt. 176 at 8, 13. Quizlet now seeks $1,461,598.20 in fees and $14,032.41 in costs. Dkt. 176 at 30. Of the fees, $932,290.50 is for 973.7 hours by Fenwick & West — a blended rate of roughly $957 per hour — and $529,307.70 is for prior counsel Wilson Elser. 176-1 at 8-9. Wilson Elser, a national defense and coverage firm, billed this case at $383 per hour for its partner and of-counsel attorneys and $156 to $291 for associates, law clerks, and paralegals. Its attorneys traveled from New York to Los Angeles for hearings and

depositions. Dkt. 176-11 at 2-4; Dkt. 176-14. Fenwick's first entry is dated September 2025, and its timekeepers billed 54.5 hours ($57,498.10) to "Pre-Discovery Case Assessment, Strategy and Development" more than a year into the case, and 343.4 hours ($323,458.90) to summary-judgment briefing, which Wilson Elser had already begun drafting. Dkt. 176-8; 176-12. Quizlet also seeks $14,032.41 in expenses, which its declarant describes as "Non-Taxable Costs," and it has separately applied to the Clerk for $4,813.90 in taxable costs. Dkt 176-11 at 6; Dkt. 177.

## C. Argument

### 1. A fee award is discretionary, not a byproduct of prevailing.

Quizlet's motion assumes that a defense victory compels a fee award. No statute supports that premise.

The Copyright Act provides that a court "*may*" award a reasonable fee to the prevailing party. 17 U.S.C. § 505. The Supreme Court has held that the 1976 Act changed the rule "from a mandatory one to one of discretion," so that "district courts are to use their discretion in awarding attorney's fees and costs to the prevailing party." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994). A court "may not 'award[] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment," and must treat prevailing plaintiffs and defendants alike. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). The "pivotal criterion" is whether an award would further the purposes of the Copyright Act. *Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002).

The Lanham Act only authorizes fees only "in exceptional cases," 15 U.S.C. § 1117(a), and commits the decision to the Court's discretion. A party seeking fees under that provision "faces an uphill battle" and bears "a heavy burden," because "the remedy is available only in 'exceptional

cases,'" the statute provides that the court "'may'" award fees, and the decision is "commend[ed] . . . to the discretion of the [trial] court." *Gracie v. Gracie*, 217 F.3d 1060, 1071–1072 (9th Cir. 2000).

**2. Quizlet is not entitled to fees under the Copyright Act**

**a. Barkley's positions were objectively reasonable.**

Quizlet never squarely addresses the most important consideration for this motion.: the objective reasonableness of Barkley's litigating position. The Supreme Court has held that courts "should give substantial weight to the objective reasonableness of the losing party's position," because fee-shifting is designed to deter unreasonable litigants, not those who advance reasonable but ultimately unsuccessful positions. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199–200(2016). Barkley's positions were objectively reasonable for at least four independent reasons.

First, this Court, an objective party, allowed the case to proceed. It denied Quizlet's motion to dismiss and ordered discovery on the safe-harbor defense. Dkt. 176 at 11. A claim that survives dismissal and is resolved only on a developed summary-judgment record is not objectively unreasonable. As the Ninth Circuit held in affirming the denial of a prevailing defendant's fees, a plaintiff who "presented a valid copyright claim" and "lost on summary judgment" has not thereby litigated unreasonably. *Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002). Where a claim turns on disputed facts, "that claim necessarily is reasonable." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (vacating and remanding award of attorney fees after summary judgment).

Second, Quizlet mischaracterizes the Court's own words, twice. The motion quotes the Court's observation at the November 2024 hearing that the suit "may not actually have any legs" (176-5 at 6) as if it were a find-

ing of meritlessness. In the same breath, the Court said it "just can't decide that at the motion to dismiss stage" and that it "wouldn't want [Barkley] to be without any discovery." (176-5 at 6) The motion then cites the April 11, 2025, amendment hearing (Ex. 5 at 17:24-18:4) for the proposition that the Court found Barkley's theory "not good." That passage says the opposite about the theory Barkley actually pursued. The Court explained that Barkley "realized that he might have a theory of the case which I don't think is as bad," and that "[a]t this point all I can say is it appears plausible." *Id.* at 18:4-9. Earlier at the same hearing, the Court rejected Quizlet's charge of bad faith, reasoning that even assuming counsel was negligent in not pleading the claim earlier, "there's no bad faith." Dkt. 176-5 at 16:7. Tentative remarks made concurrently with orders permitting discovery and amendment are the opposite of findings that Barkley's claims were baseless.

Third, Barkley's claims had concrete factual and legal foundations. Barkley owned registered copyrights and trademarks. Dkt. 176-2 at 2-3. It identified Barkley-branded study sets on Quizlet's own domain, not merely on third-party sites. Dkt. 176-4 at 3. Quizlet's own evidence confirmed that Barkley's content was present on the platform: it removed 3,881 unique study sets. Dkt. 176 at 13. The dispute concerned who bore legal responsibility for that content — a question of volition and control — not whether a factual basis existed at all.

Fourth, Barkley's theory that Quizlet's generative-AI tools directly and vicariously infringed was novel, not frivolous. Dkt. 176 at 11. Barkley raised the AI issue before filing suit. Dkt. 176-4 at 3. The Ninth Circuit has held it "plainly is reasonable to bring a claim founded on" developing law, "whether or not our circuit ultimately agrees with that precedent." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (finding

claim reasonable when another circuit supported plaintiff's theory but a treatise and district courts criticized that holding).[1] Liability for AI-based copying is a still developing area of law. Losing a novel claim on an unsettled question of law does not support a fee award.

The Ninth Circuit incorporates into this factor the degree of success, the purposes of the Act, and "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff," and these factors "need not all be met." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017). Measured against that framework, Barkley's reasonable positions weigh decisively against an award.

---

[1] *See, e.g.*, *Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1140–1141 (N.D. Cal. 2025) (denying preliminary injunction because "it is an open question whether training generative AI models with copyrighted material is infringement or fair use", and observing that "emerging technologies often test the bounds and principles of copyright law"); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1036-37 (N.D. Cal. 2025) (granting summary judgment on fair use for LLM training, but emphasizing that the ruling "does not stand for the proposition that Meta's use of copyrighted" materials to train its models is lawful, but only that those plaintiffs failed to develop the necessary record); *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1063 (N.D. Cal. 2025) (certifying class in AI training suit and noting that the defendant "now sits under a cloud of copyright liability" and that AI companies, authors, and the public would benefit from the "clarity only a robustly litigated class action could provide"; *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 970–971 (N.D. Cal. 2024) (recognizing that this issue is unsettled in dismissing DMCA § 1202(b) claim against AI image generator, where courts disagree whether an identical copy is required); *see also Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 193 F.4th 271 (3d Cir. 2026) (affirming judgment against non-generative AI developer while distinguishing generative AI training cases and noting that the Department of Justice is "tracking these issues" in pending generative AI litigation.).

**b. The remaining *Fogerty* factors do not support an award.**

*Degree of success.* Quizlet emphasizes its "complete merits victory" (Dkt. 176 at 9), but degree of success is one non-dispositive factor, and a defendant may win completely yet be denied fees where the plaintiff's position was reasonable. *Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002).

*Motivation.* Quizlet's assertion of improper motive is inference stacked on inference: it infers bad faith from the loss and from discovery disputes. But bad-faith motivation requires record proof, and "conclusory statements" about an opponent's bad faith, unsupported by "specific record evidence," do not suffice. *Gracie v. Gracie*, 217 F.3d 1060, 1071–1072 (9th Cir. 2000). The record refutes the inference. Indeed, Quizlet has already presented this theory to the Court. At the April 2025 amendment hearing, its counsel argued that there was “intense bad faith here” and “a pattern” of delay. The Court stated that, even assuming counsel had been negligent, “there’s no bad faith,” and allowed the amendment. Dkt. 176-6 at 4. Barkley used Quizlet's DMCA takedown process (Quizlet removed 3,881 sets), held registered rights, engaged in months of pre-suit correspondence, and opened with a modest $240,000 demand. Dkt 176 at 13; 176-2 at 2; Dkt. 176-4; Dkt. 176-2 at 7) That is the conduct of a rightsholder pursuing perceived infringement. The Supreme Court has made clear that a court may shift fees against a reasonable litigant only in special circumstances — such as genuine litigation misconduct or deterrence of repeated overaggressive filings — none of which is present here. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208–209 (2016).

*Compensation and deterrence.* The Ninth Circuit folds into this factor "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Perfect 10,* 847 F.3d at 675 (9th Cir. 2017). Section 505 must be applied even-handedly, not to punish a plaintiff for losing a reasonable claim. *Fogerty*, 510 U.S. 517, at 533–535. Imposing a seven-figure award on a niche educational publisher for bringing reasonable claims would chill legitimate copyright enforcement, not serve the Act's purposes.

**3. This is not an "exceptional" case under the Lanham Act.**

Quizlet's Lanham Act theory fails because this case does not "stand out from others" in either the strength of Barkley's position or the manner of litigation. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–1181 (9th Cir. 2016). The standard is demanding and is construed "rather narrowly." *Gracie v. Gracie*, 217 F.3d 1060, 1071–1072 (9th Cir. 2000).

Winning is not enough. The Ninth Circuit affirmed denying of a prevailing defendant's Lanham Act fees even though the defendant won at trial, holding that "a positive result does not transform a trademark claim into an 'exceptional case,'" and that the dismissal of a claim at summary judgment "does not render a case exceptional." *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1278–1279 (9th Cir. 2024). The key question is whether the plaintiff "raised 'debatable issues' and had a legitimate reason for bringing the lawsuit." *Nutrivita Lab'ys, Inc. v. VBS Distribution Inc.*, 160 F. Supp. 3d 1184, 1191–1193 (C.D. Cal. 2016). Barkley's registered marks and the evidence that Quizlet's own branding appeared on Barkley's materials supplied exactly that legitimate reason.

Quizlet's assertion that *Dastar* foreclosed Barkley's claims "for over two decades" (Dkt. 176 at 23) overstates a genuinely contested boundary.

*Dastar* holds that the "origin of goods" means the producer of the tangible product, not the originator of ideas or communications. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31–32. But the Supreme Court also said a claim "would undoubtedly be sustained" where a defendant repackages and passes off another's goods as its own. *Id.* at 31. The Ninth Circuit enforces that line in both directions, sustaining a claim where the defendant "did not simply copy …intellectual property but passed off genuine …products as his own." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1012–1013 (9th Cir. 2018). Courts have held that *Dastar* "does not clearly foreclose" a product-based claim where a defendant markets a product with the originator's mark removed or its own mark affixed. *Max Minds, LLC v. Triangle Experience Grp., Inc.*, No. 1:24-CV-00779-JPH-MG, 2025 WL 593307 (S.D. Ind. Feb. 24, 2025). Barkley's theory — that Quizlet affixed its own domain and branding to Barkley's materials and directed users to Quizlet — fell on the debatable side of that line. Dkt. 176-4 at 2. A claim that implicates a genuinely debatable application of Supreme Court precedent is not "exceptional."

**4. The amount requested is unreasonable and unsupported.**

Even if the Court were to find some entitlement, the requested amount cannot stand.

**a. The rates are out-of-forum and unsupported by proper evidence.**

The reasonable hourly rate is set by “the forum in which the district court sits,” here the Central District of California. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Out-of-forum rates may be

used only if local counsel was unavailable, either because they are unwilling or unable for lack of the required experience or specialization. Fenwick is a Bay Area firm, and Quizlet makes no showing that qualified Los Angeles intellectual-property counsel was unavailable.

Quizlet's own evidence points the other way. For more than a year, this case was litigated by insurer-panel counsel whose partner, the co-chair of a national IP practice with nearly 35 years of experience, billed $383 per hour. Quizlet's declarant attests that those rates are "reasonable for their respective levels of expertise." Dkt. 176-11 at 2-5. Quizlet then voluntarily replaced that counsel with non-panel Fenwick, whose $1,220 partner rate is more than three times as high. Dkt. 176-8 at 2. Nothing about the case's complexity changed in September 2025 except Quizlet's choice of counsel.

A reasonable rate is also not measured by what the firm actually charges; an inflated rate is not recoverable. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). Fenwick's blended rate of approximately $957 per hour, including a $1,220 partner rate, is far above prevailing Central District rates. Dkt. 176-8 at 2-5. And the applicant must supply "satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980–981 (9th Cir. 2008). Quizlet offers only counsel's declaration and a compilation of national press articles about the rates charged by "the country's largest law firms," including a Wall Street Journal piece headlined "Be Prepared to Pay $3,400 an Hour." Those articles concern elite national firms and individual celebrity practitioners, not Central District IP litigation. One commentator quoted in them describes such rates as, "[a]t a certain point,

for some firms, . . . a publicity stunt," and the same article reports "a reckoning" for fees on routine work. Dkt. 176-7 at 3. Press accounts of the market's ceiling are not evidence of prevailing rates in this forum, and reliance on out-of-forum benchmarks is error.

**b. The hours reflect duplication, ramp-up, and work Quizlet chose to incur.**

The movant bears the burden of showing that its hours were reasonably expended, and a court should not uncritically accept the applicant's representations. Quizlet's own time records show at least four categories that Barkley should not have to pay.

*Ramp-up from the voluntary change of counsel.* Fenwick's first entries, in September 2025, are for "[c]onsider[ing] case file" to position the case for summary judgment. Dkt. 176-8 at 6. Fenwick then billed 54.5 hours ($57,498.10) to "Pre-Discovery Case Assessment, Strategy and Development," even though the case had been in discovery for about a year. Dkt. 176-8 at 4) Time spent bringing replacement counsel up to speed results from Quizlet's choice, not from anything Barkley did. *See Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp. LLC*, No. CV-17-01688-PHX-DWL, 2020 WL 2768699 (D. Ariz. May 28, 2020).

*Duplicated summary-judgment work.* Wilson Elser billed 124.5 hours ($38,612.10) to the summary-judgment motion, including drafting "approximately 60% of the planned motion." Dkt. 176-12 at 68. Fenwick then billed another 343.4 hours ($323,458.90) to summary-judgment briefing. That is nearly 470 hours, and more than $360,000, for one motion. *White v. City of Richmond*, 559 F. Supp. 127, 134–135 (N.D. Cal. 1982); *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993, 1004–1005 (N.D. Cal. 2018).

*Non-attorney work at attorney rates.* Fenwick billed associate time at $901 per hour for tasks such as revising a filing checklist and "supervis[ing] filing." Dkt. 176-8; *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989). No evidence supports a rate over $900 per hour for any work  let alone work on a filing checklist and "supervis[ing] filing.

*Excessive fees on fees and on the reconsideration opposition.* Fenwick already seeks 46.7 hours ($44,302.10) for preparing this motion (Dkt. 176-8), and the proposed order would let Quizlet submit still more (Dkt. 176-15). It also seeks 37.2 hours ($34,281.40) to oppose a single reconsideration motion. Dkt. 176-8. *White v. City of Richmond*, 559 F. Supp. 127, 134–135 (N.D. Cal. 1982); *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993, 1004–1005 (N.D. Cal. 2018).

The Court should exclude these categories or, given the size of the application, impose a substantial across-the-board reduction. A court may do so on a "massive fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

**c. The request is grossly disproportionate.**

While a fee award is not per se unreasonable merely because it exceeds the client's recovery, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013), proportionality remains a relevant check, and the Ninth Circuit has flagged for scrutiny a fee award "almost six times the size of the damages." *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000).  Quizlet's $1.46 million request is approximately six times Barkley's original $240,000 demand. Dkt. 176-2 7. That disproportion underscores why the Court should scrutinize both entitlement and amount with care.

**d. The claimed "expenses" are, by Quizlet's own description, non-taxable and not recoverable.**

Quizlet seeks $14,032.41 in expenses through this motion: $2,196.41 for Fenwick and $11,836.00 for Wilson Elser. Its declarant presents the Wilson Elser amount under the heading "Non-Taxable Costs." Fenwick's portion consists of travel, Lexis research charges, and a hearing transcript. Wilson Elser's consists largely of airfare, car rentals, lodging, and meals for New York-based attorneys, together with PACER, e-filing, and research charges. The Supreme Court has held that the Copyright Act's authorization of "full costs" in § 505 covers only the six categories of taxable costs specified in 28 U.S.C. §§ 1920 and 1821. *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 336–337, 139 S. Ct. 873, 875–876, 203 L. Ed. 2d 180 (2019) "Full" is a term of quantity that does not expand the categories of recoverable expense, and expenses outside those categories cannot be awarded absent explicit statutory authority, which the Copyright Act lacks. *Id.* Quizlet has separately applied to the Clerk for $4,813.90 in taxable costs, so it is already pursuing whatever taxable costs it believes it has. Dkt. 177. The $14,032.41 in non-taxable expenses should be denied in full.

## D. CONCLUSION

For these reasons, Barkley respectfully requests that the Court deny Quizlet's motion for attorneys' fees and costs in its entirety. In the alternative, if the Court finds any entitlement, Barkley requests that the Court require apportionment among the claims, reduce the hourly rates to prevailing Central District rates, exclude the duplicative, ramp-up, clerical, travel, and fees-on-fees time identified above, impose an appropriate across-the-board reduction, and deny the $14,032.41 in non-taxable expenses.

November 25, 2026

/s/ Brian Tamsut
Brian Tamsut
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350

Attorneys for Plaintiff Barkley & Associates, Inc.

## CERTIFICATE OF COMPLIANCE

I, Brian Tamsut, hereby certify, in accordance with Local Rule 11-6.2, that the foregoing Plaintiff Barkley & Associates, Inc.'s Opposition to Quizlet's Motion for an award of Attorney Fees ("Opposition") complies with Local Rule 11-6.1. According to the word count of the word-processing system used to prepare the Opposition, the Opposition contains 3,802 words, excluding the portions exempted by Local Rule 11-6.1. The Opposition therefore does not exceed the 7,000-word limit.

November 25, 2026

/s/ Brian Tamsut
Brian Tamsut